Mark A. Ozzello (SBN 116595)
Mark.Ozzello@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.Monesi@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:    (310) 943-0396

Russell D. Paul
rpaul@bm.net
Amey J. Park
apark@bm.net
BERGER MONTAGUE P.C.
1818 Market Street, Suite 3600
Philadelphia, PA  19103
Telephone:   (215) 875-3000
Facsimile:    (215) 875-4604

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIQUE PARRISH and EVAN WOOD, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC. a Delaware limited liability company,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1)   Violations of California's Consumers Legal Remedies Act<br>(2)   Violations of Unfair Competition Law<br>(3)   Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act<br>(4)   Breach of Express Warranty<br>(5)   Breach of Implied Warranty under the Magnuson-Moss Warranty Act<br>(6)   Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law<br>(7)   Unjust Enrichment |

1
2
3
4
5
6
7
8

**DEMAND FOR JURY TRIAL**

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1.      Plaintiffs Dominique Parrish ("Parrish") and Evan Wood ("Wood") (collectively "Plaintiffs") bring this action for themselves and on behalf of all persons in the United States who purchased or leased any 2019-present Seventh Generation (A7) Volkswagen Jetta vehicle equipped with an Aisin AWF8F35 8-Speed Automatic Transmission ("Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and/or serviced by Volkswagen Group of America, Inc. ("VWGoA" or "Defendant"). Plaintiffs allege as follows:

## INTRODUCTION

2.      This is a consumer class action concerning a failure to disclose material facts and a safety concern to consumers.

3.      Volkswagen Group of America, Inc. manufactured, marketed, distributed, and sold the Class Vehicles without disclosing that the Class Vehicles' Aisin AWF8F35 8-Speed Automatic Transmission ("Transmission") was defective.

4.      The all-new 2019 Volkswagen Jetta made its global debut at the 2018 North American International Auto Show in Detroit Michigan. VWGoA CEO of North American Region touted that it "expect[ed] that this all-new car will continue to resonate with buyers in the compact sedan class. With its combination of great technology, fuel-efficient drivetrains, sporty styling, upscale interior and amenities, and fun-to-drive nature, we expect the Jetta will make a huge splash in the compact sedan market when it goes on sale."[1] While the Jetta has made a splash, the splash is caused by the Transmission leaking oil.

5.      Dr. Matthias Erb, Volkswagen Chief Engineering Officer, North American Region, said that VWGoA "knew [] buyers demand good value, and our innovations will prove their value in everyday use." One of those innovations

_____

[1] "All-New 2019 Volkswagen Jetta Makes Global Debut at the North American International Auto Show," Volkswagen Press Release, https://media.vw/com/en-us/releases/973.

was the Transmission, which Defendant said was a "major boost…. which provides a wide band of drive ratios that allow more efficient running at higher speeds."[2] However, in everyday use, the Class Vehicles have proven to be unreliable, far from an efficiently running vehicle, and a safety hazard to its drivers and others.

6.      Indeed, the Transmission is defective in that it grates, scuffs, scrapes, grinds, and ultimately suffers broken seals and oil leaks, resulting in catastrophic failure (the "Transmission Defect.") On information and belief, the Transmission Defect arises from the torque converter.

7.      The Transmission Defect is inherent in each Class Vehicle and was present at the time of sale.

8.      VWGoA undertook affirmative measures to conceal the Transmission Defect and other malfunctions through, among other things, "Technical Tips" issued to its authorized repair facilities. These Technical Tips confirmed VWGoA's knowledge of the Transmission Defect, but disregarded its importance and cited it as "normal operating characteristics".

9.      Although VWGoA was sufficiently aware of the Transmission Defect from pre-production testing, design failure mode analysis, calls to its customer service hotline, and customer complaints made to dealers.  However, this knowledge and information was exclusively in the possession of VWGoA and its network of dealers and, therefore, unavailable to consumers.

10.      The Transmission Defect is material because it poses a serious safety concern. As attested by Class Members in scores of complaints to the National Highway Traffic Safety Administration ("NHTSA"), and other online forums, the Transmission Defect can impair any driver's ability to control his or

---

[2] "All-New 2019 Volkswagen Jetta Uses Advanced, Affordable Technology to Improve Fuel Economy," Volkswagen Press Release, https://media.vw.com/en-us/releases/994.

1   her vehicle and greatly increase the risk of collision.

2       11.    The Transmission Defect is also material because consumers incur

3   significant and unexpected repair costs. VWGoA's failure to disclose, at the time

4   of purchase, the Transmission's marked tendency to fail is material because no

5   reasonable consumer expects to spend hundreds, if not thousands, of dollars to

6   repair or replace essential transmission components.

7       12.    Had VWGoA disclosed the Transmission Defect, Plaintiffs and

8   Class Members would not have purchased the Class Vehicles or would have paid

9   less for them.

10   **THE PARTIES**

11   **Plaintiff Dominique Parrish**

12       13.    Plaintiff Parrish is a California citizen who resides in Irvine,

13   California.

14       14.    On or around May 18, 2018, Plaintiff Parrish purchased a new 2019

15   Volkswagen Jetta equipped with the Transmission from Norm Reeves

16   Volkswagen Superstore, an authorized VWGoA dealer in Irvine, California.

17       15.    Plaintiff Parrish purchased his vehicle primarily for personal,

18   family, or household use.

19       16.    Passenger safety and reliability were important factors in Plaintiff

20   Parrish's decision to purchase his vehicle. Before making his purchase, Plaintiff

21   Parrish did an online search for the vehicle, including on "Google" and

22   "Youtube" videos, watched television ads, visited Defendant's website to

23   research the 2019 Jetta, and test drove his vehicle with a dealership salesperson

24   who made no reference to the Transmission Defect. Plaintiff Parrish believed

25   that the Jetta would be a safe and reliable vehicle. Plaintiff Parrish also reviewed

26   the vehicle's Monroney Sticker or "window sticker" which listed official

27   information about the vehicle, which also made no reference to the Transmission

28   Defect.

17.     VWGoA's omissions were material to Plaintiff Parrish. Had VWGoA disclosed its knowledge of the Transmission Defect before he purchased his vehicle, Plaintiff Parrish would have seen and been aware of the disclosures. Furthermore, had he known of the Transmission Defect, Plaintiff Parrish would not have purchased his vehicle, or would have paid less for it.

18.     Specifically, on or around August 15, 2018, with approximately 2,418 miles on the odometer of his VW Jetta, Plaintiff Parrish delivered his vehicle to Norm Reeves Volkswagen complaining of "coffee grinder noise from engine or transmission…." The technician test drove the vehicle and determined that it was "normal as designed due to transmission in lower gear no correction" and returned the vehicle to Plaintiff Parrish without performing or attempting to perform any transmission repairs.

19.     Accordingly, Plaintiff Parrish vehicle continues to exhibit the Transmission Defect, continues to grind and has never been repaired by Defendant.

20.     At all times, Plaintiff Parrish, like all Class Members, has driven his vehicle in a manner both foreseeable and in which it was intended to be used.

**Plaintiff Evan Wood**

21.     Plaintiff Wood is a Pennsylvania resident who resides in Allentown, Pennsylvania.

22.     On or around January 1, 2019, Plaintiff Wood purchased a new 2019 Volkswagen Jetta equipped with the Transmission from Young Volkswagen, Inc., an authorized VWGoA dealer in Easton, California.

23.     Plaintiff Wood purchased his vehicle primarily for personal, family, or household use.

24.     Passenger safety and reliability were important factors in Plaintiff Wood's decision to purchase his vehicle. Before making his purchase, Plaintiff Wood watched television ads, visited Defendant's website to research the 2019

Jetta, and test drove his vehicle with a dealership salesperson who made no reference to the Transmission Defect. Plaintiff Wood believed that the Jetta would be a safe and reliable vehicle and even spoke with the service manager of Young Volkswagen, Inc. who recommended the vehicle to Plaintiff Wood. Plaintiff Wood also reviewed the vehicle's Monroney Sticker or "window sticker" which listed official information about the vehicle, which also made no reference to the Transmission Defect.

25.     VWGoA's omissions were material to Plaintiff Wood. Had VWGoA disclosed its knowledge of the Transmission Defect before he purchased his vehicle, Plaintiff Wood would have seen and been aware of the disclosures. Furthermore, had he known of the Transmission Defect, Plaintiff Wood would not have purchased his vehicle, or would have paid less for it.

26.     Specifically, on April 20, 2019 and with 4,049 miles on the odometer, Plaintiff Wood delivered his vehicle to Ciocca Volkswagen of Allentown complaining that "there is a growl noise heard when driving less than 25 MPH, around 200 RPMS in 4th gear upshifting to 5th gear make (sip) the noise, see TSB 32-18-01TT customer found." The assigned technician "confirmed noise, called tech line about eh noise. no faults found in system. tech line referred to noise as torque cover. noise is normal in the vehicle. no repair needed at this time." The vehicle was returned to Plaintiff Wood with no repairs performed.

27.     Unsatisfied, Plaintiff Wood delivered his vehicle to Young Volkswagen, Inc. two days later on May 2, 2019 and with 4,110 miles on the odometer. Plaintiff Wood complained that "Customer states noise coming from trans Growl/rumble/scrape." The assigned technician determined the "cause" was "normal operation as per tech tip 32-018-01TT" and that "NO CORRECTION WORKING AS PER DESIGNED AND SAME AS ALL 2019 JETTA." The vehicle was thereafter again returned to Plaintiff Wood with no

repairs performed.

28.     Plaintiff Wood would deliver his vehicle to North Penn Volkswagen on May 7, 2019 and with 4,250 miles on the odometer, continuing to complain of the Transmission Defect. Plaintiff Wood complained that "Customer states there is a grinding noise around 25 MPH when holding speed. Customer has also experienced the transmission up shifting into too high of a gear and you have to put he foot to the floor to make the car accelerate." The assigned technician found the cause to be "vehicle found to be operating normally when compared to same or similar type vehicle." The vehicle was returned to Plaintiff Wood a third time without any repairs being performed and continuing the exhibit the Transmission Defect.

29.     Accordingly, Plaintiff Wood vehicle continues to exhibit the Transmission Defect, continues to grind and has never been repaired by Defendant.

30.     At all times, Plaintiff Wood, like all Class Members, has driven his vehicle in a manner both foreseeable and in which it was intended to be used.

**Defendant**

31.     Defendant VWGoA is a Limited Liability Company organized and in existence under the laws of the State of New Jersey and registered to do business in the State of California and Pennsylvania. VWGoA's Corporate Headquarters are located at 3800 Hamlin Rd., Auburn Hills, Michigan 48326. VWGoA designs, manufactures, markets, distributes, services, repairs, sells, and leases passenger vehicles, including the Class Vehicles, nationwide, and in California and Pennsylvania. VWGoA is the warrantor and distributor of the Class Vehicles in the United States.

32.     At all relevant times, VWGoA was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and/or selling automobiles and motor vehicle components in Los Angeles

County and throughout the United States of America.

## JURISDICTION

33.    This is a class action.

34.    Members of the proposed Class are citizens of states different from the home state of Defendant.

35.    On information and belief, the aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

36.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

## VENUE

37.    VWGoA, through its business of distributing, selling, and leasing the Class Vehicles, has established sufficient contacts in this district such that personal jurisdiction is appropriate.  Defendant is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

38.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiff Parrish resides in the County of Orange, California. In addition, Plaintiff Parrish's Declaration, as required under California Civil Code section 1780(d) but not pursuant to *Erie* and federal procedural rules, reflects that a substantial part of the events or omissions giving rise to the claims alleged herein occurred, or a substantial part of property that is the subject of this action, is situated in Orange County, California.  It is attached as Exhibit 1.

## FACTUAL ALLEGATIONS

39.    Since Summer 2018, VWGoA has designed, manufactured, distributed, sold, and leased the Class Vehicles. VWGoA has sold, directly or indirectly, through dealers and other retail outlets, thousands of Class Vehicles in California, Pennsylvania and nationwide. VWGoA warrants and services the Class Vehicles through its nationwide network of authorized dealers and service providers.

40.    The Transmission in the Class Vehicles is a "Medium Torque

Capacity FWD 8-Speed Automatic Transmission". It has wide gear ratios and substantially lower torque loss which should enable enhanced engine performance and fuel efficiency. Further, the Transmission is made compact through a two-stage clutch structure.[3]  It is touted as the world's first 8 speed automatic transmission designed for use in transverse engine applications. Aisin designed the transmission to package in the same space as preceding 6 speed designs, while increasing the total gear spread and reducing gear spacing.[4]

41.    The illustration below depicts the Transmission as a cut-out.



42.    The Transmission has proven to be nothing but problematic. Since its release, the Defective Transmission has been inundated with many customers complaints of grating, scuffing, scraping, grinding, and cracking seals resulting in oil leaks. All of these ultimately cause the catastrophic failure of the Transmission. As such, many customers have had to completely replace their

[3] https://www.aisin-aw.co.jp/en/products/drivetrain/lineup/at.html
[4] https://en.wikipedia.org/wiki/AWF8F35

1    transmissions.

2              **The Transmission Defect Poses a Serious Safety Concern**

3         43.    The Transmission Defect is material to consumers because it

4    presents a serious safety concern. Class Members have repeatedly reported

5    disturbing failures to the National Highway Traffic Safety Administration

6    ("NHTSA"). The following are complaints reflecting the safety risk posed:

7         44.    On NHTSA's website where consumer complaints about 2019 Jettas

8    are posted,[5] the following incident dated December 5, 2018 was reported on

9    October 27, 2018:

10
11                    WELL AGAIN MY I HAD TO TAKE MY 2019 JETTA
                      BACK TO LUNDE'S IN PEORIA, AZ. AFTER THE
12                    TRANSMISSION LEAK WAS FIXED IN AUGUST, I
                      NOTICED ABOUT A MONTH LATER THE CAR
13                    WAS JERKING A LOT AND NOT ACCELERATING
                      WHEN I HAD MY FOOT ON THE GAS PEDAL. (
14                    LIKE WHEN YOU PUSH ON THE GAS, BUT
                      DISCOVER YOUR CAR IS NEUTRAL AND NOT
15                    DRIVE.) THIS BECAME VERY DANGEROUS AND
                      THE DELAY TIME WAS GETTING LONGER AND
16                    LONGER TO THE POINT WHERE IT WAS ABOUT
                      HALF  A  MINUTE  BEFORE  IT  WOULD
17                    ACCELERATE. OR WOULD BE ACCELERATING
                      FINE THEN MID DRIVE OR WHEN TURNING, IT
18                    WOULD JUST STOP AND COAST AND NOTHING
                      WOULD HAPPEN WHEN YOU PUSHED YOUR
19                    FOOT ON THE GAS OTHER THEN THE CAR
                      REVVING AND NOT MOVING. I TOOK MY JETTA
20                    BACK INTO LUNDE'S (AGAIN) AND THEY HAD
                      MY CAR FOR A MONTH. THEY REPLACED THE O
21                    RINGS, AS PEOPLE HAVE MENTIONED ON HERE
                      AND I WAS TOLD THAT NOW VW HAS REMADE
22                    ALL THE O RINGS TO WORK AND FIT PROPERLY
                      IN THE TRANSMISSION. I PICKED UP MY CAR AT
23                    LUNDE'S AND IMMEDIATELY WENT TO GET
                      GAS. I WAS WAITING IN LINE WITH THE CAR IN
24                    PARK & STILL RUNNING. WHEN I WENT TO PUT
                      THE CAR IN DRIVE SAID RESTART ENGINE! SO
25                    THE CAR SHUT OFF ON ME! I CALLED LUNDE'S
                      BACK AND WAS TOLD IF IT HAPPENS AGAIN TO
26                    CALL THEM. WELL, IT DID, AND I DID NOT CALL
                      THEM BACK BECAUSE I OPENED UP A CASE

27         _____

28         [5] https://www.nhtsa.gov/vehicle/2019/VOLKSWAGEN/JETTA/
           4%252520DR/FWD#complaints (last viewed June 6, 2019).

1
2
3
4
5
6
7
8
9

> WITH VW OF AMERICA TO TRY TO GET A
> BUYBACK OR REPLACEMENT VEHICLE. NOW I
> HAVE TO WAIT TO SEE IF MY AUTO LOAN
> COMPANY FIRST INVESTORS WILL PROCESS
> THE SUBSTITUTION OF COLLATERAL REQUEST.
> THIS WAY I CAN KEEP EVERYTHING THE SAME
> ON MY LOAN (BC I UPGRADED AND NOW HAVE
> NEGATIVE EQUITY THE BUY BACK OPTION IS
> NOT FINANCIALLY A GOOD OPTION FOR ME) SO
> OF COURSE MY AUTO LOAN COMPANY STATES
> "THEY DO NOT DO THAT ANYMORE". SO NOW I
> AM GOING BACK AND FORTH WITH THEM SO I
> AM NOT STUCK IN AN UNSAFE CAR. DO NOT
> BUY A 2019 JETTA UNTIL VW GETS IT FIGURED
> OUT ON ALL THE FAULTY PARTS AND DO NOT
> GET AN AUTO LOAN WITH 1ST INVESTORS.
> WHY IS THIS CAR NOT RECALLED YET?

10    45.    On January 13, 2019, the following incident dated December 1,

11   2018 was reported:

12
13
14
15
16

> IT APPEARS THAT THE MAJORITY AND OR ALL
> OF THE NEW 2019 VOLKSWAGEN JETTA'S HAVE
> TORQUE CONVERTER DEFECTS. THE DEFECT
> CAUSES THE VEHICLE TO EMIT A LOUD SCRAPE
> AND GRINDING NOISE WHICH CAN DISTRACT
> THE DRIVER. THE COULD CAUSE DRIVERS TO
> PULL OVER AND POTENTIALLY CAUSE AN
> ACCIDENT.

17
18
19
20
21
22
23
24
25
26
27

> THE NEW 2019 VOLKSWAGEN JETTA THAT I
> HAVE BEEN DRIVING HAS BEEN TO THE SHOP 3
> TIMES DUE TO THIS SOUND THE TRANSMISSION
> IS MAKING ON THIS VEHICLE. I HAVE BEEN
> TOLD THAT IT'S A 'NORMAL CHARACTERISTIC'
> OF THE CAR. HOWEVER, THIS NEEDS TO
> REVIEWED BY A 3RD PARTY AS PROPERLY
> FUNCTIONING AND SAFE TRANSMISSIONS DO
> NOT GRIND OR SCRAPE AS THESE NOISES
> GENERALLY MEAN THAT INTERNAL DAMAGE
> IS OCCURRING INSIDE OF THE VEHICLE'S
> TRANSMISSION. VOLKSWAGEN ALLOWED ME
> TO REVIEW A DOCUMENT STATING THEY WERE
> AWARE OF THE TORQUE CONVERTER ISSUE
> WITH THIS CAR, HOWEVER, THEY ARE
> CLAIMING IT'S NORMAL. AGAIN, SAFE TORQUE
> CONVERTERS DO NOT GRIND OR SCRAPE.
> HERE'S THE ID TO THE VOLKSWAGEN
> DOCUMENT THAT CAN BE REQUESTED FROM
> VW: 32-18-01TT.

28

> THE 2019 VW JETTA THAT I HAVE WAS TAKEN
> TO A 3RD PARTY TRANSMISSION EXPERT AND I

1
2
3
4
5

WAS TOLD THAT IT WAS A SERIOUS DEFECT AND THEY DID NOT FEEL SAFE TO DRIVE THE CAR FOR EXTENDED PERIODS OF TIME. I FEEL THE SAME WAY, HOWEVER, I'M BEING TOLD BY VW AND THEIR DEALERSHIPS THAT GRINDING TRANSMISSIONS ARE NORMAL AND SAFE WHICH CONTRADICTS REALITY. GRINDING TRANSMISSIONS ON NEW VEHICLES ARE NOT SAFE, THEY'RE DEFECTIVE AND SAYING THAT THEY ARE NORMAL IS LEGALLY CONCERNING.

6
7
8
9
10
11
12

PLEASE LOOK INTO THE SAFETY AND VALUE IMPLICATIONS OF THIS ISSUE FOR A NEW 2019 VOLKSWAGEN JETTA'S. I AM VERY CONCERNED FOR MY SAFETY AND JUST WANT THE PROBLEM FIXED BY VOLKSWAGEN. THEY HAVE REFUSED TO HELP ME 3 TIMES AND I HAVE BEEN GIVEN A RUN AROUND BY VW REGIONAL CARE PROVIDERS WITH THIS ISSUE, TOO (IT'S BEEN A TERRIBLE EXPERIENCE DEALING WITH VW AT TRYING TO GET THE VEHICLE BOUGHT BACK FOR SUCH A BAD DEFECT).

13      46.   On January 22, 2019, the following incident dated January 22, 2019
14   was reported:

15
16
17
18
19
20
21
22
23
24

8 SPEED AUTOMATIC TRANSMISSION HAS A METALLIC GRINDING OR SCRAPING NOISE WHEN OPERATING AT LOW RPM'S DURING ACCELERATION. SPECIFICALLY AFTER THE TRANSITION TO 5TH GEAR. THE POWERTRAIN NOTICEABLY HESITATES DURING ACCELERATION WHEN THIS AFOREMENTIONED SOUND IS ACTIVE. IT'S ONLY A MATTER OF TIME BEFORE THIS TRANSMISSION FAILS AND LEAVES ME IN THE MIDDLE OF A BUSY INTERSECTION. IT'S AN EXTREMELY COMMON ISSUE ON THE 2019 VOLKSWAGEN JETTA THAT THE MANUFACTURER REFUSES TO ACKNOWLEDGE AS AN ACTUAL PROBLEM. THEY CLAIM THE SCRAPING AND GRINDING SOUND IS A "NORMAL CHARACTERISTIC" OF THE CAR, WHICH IS TOTALLY NONSENSICAL.

25
26
27

47.    On January 31, 2019, the following incident dated December 10, 2018 was reported:

28

MAJOR GRINDING NOISE COMING FROM

TRANSMISSION DURING DRIVING, TYPICALLY WHEN GOING BETWEEN 20-40 MPH. THERE ARE NUMEROUS COMPLAINTS OF THIS DEFECT, WHICH THE MANUFACTURER STATES AS NORMAL. HOWEVER, IT DOES APPEAR TO BE A DEFECT WITH THE TORQUE CONVERTER THAT COULD AFFECT THE SAFETY OF DRIVER AND PASSENGERS, AND SHORTEN THE LIFE OF THE TRANSMISSION, WHILE ALSO REDUCING THE RESALE VALUE OF THE CAR. I TOOK THE CAR TO THE DEALER AND WAS TOLD THAT IT WAS NORMAL BECAUSE THE SOUND EXISTED ON ALL JETTAS. HOWEVER, JUST BECAUSE THE SAME SAFETY DEFECT APPEARS ACROSS AN ENTIRE MODEL OF CAR DOES NOT MAKE IT NORMAL, IT MAKES IT WIDESPREAD. THERE ARE OVER 13 COMPLAINTS NOW ABOUT THE VW POWER TRAIN, AND MOST OF THEM ARE REGARDING THIS SPECIFIC ISSUE. PLEASE START AN INVESTIGATION. ALSO, THE PDF DOCUMENT OF VWS RESPONSE TO THIS ISSUE IS NOT ABLE TO BE VIEWED ON YOUR WEBSITE, THE LINK IS BROKEN OR DOC IS MISSING.

48.   On February 11, 2019, the following incident dated February 4, 2019 was reported:

BRAND NEW VEHICLE WITH 300 MILES. FROM THE DAY I PICKED IT UP WITH 37 MILES, IT GRINDS EVERY TIME IT ACCLERATES INTO 3RD GEAR AUTOMATIC TRANS. DEALERSHIP CONTACTED, SERVICE MGR STATED THIS IS "NORMAL" FOR THIS TRANSMISSION. ALSO STATED HIS HANDS ARE TIED ON WHAT HE CAN DO BECAUSE VW HAS CALLED THIS "NORMAL." HE ALSO SAID HE IS LIMITED IN WHAT HE CAN DO AT THE LOCAL LEVEL BECAUSE "WE DIDN'T MAKE THE CAR." THIS DOES NOT SOUND "NORMAL" TO ME. I AM CONCERNED THAT MY VEHICLE WILL INCUR LONG-TERM DAMAGE, WHICH COULD LEAD TO A SIGNIFICANT PUBLIC SAFETY RISK. IT ALSO REPRESENTS A POTENTIAL FINANCIAL RISK FOR MYSELF AND OTHER UNKNOWING BUYERS. THE REP. WHO SOLD ME THE CAR SAID HE WAS UNAWARE OF THIS ISSUE BUT THE SERVICE REP. WAS CLEARLY AWARE. I AM VERY CONCERNED THAT THE TRAIL OF DISCLOSURE WAS NOT EXTENDED BEYOND THE SERVICE DESK TO SALES AND, IN TURN, TO BUYERS LIKE MYSELF.

49.   On March 3, 2019, the following incident dated September 3, 2018

was reported:

> 2019 VW JETTA S GRINDING/RATTLING/GROANING NOISE FROM THE TORQUE CONVERTER. WHEN I BROUGHT THE CAR IN FOR THE 10,000 SERVICE, I TOLD THE SERVICE MANAGER THAT THE TRANSMISSION WAS MAKING GRINDING AND GROANING NOISES. THE SERVICE MANAGER SAID THAT THEY COULD NOT GET THE CAR TO MAKE THE NOISE AND IT IS JUST A NORMAL SOUND, I AM VERY CONCERNED THAT FURTHER USE OF THE VEHICLE IS UNSAFE AND WILL CAUSE THE TRANSMISSION TO FAIL WHILE DRIVING. RECALLING OR BUYING BACK THESES THE VEHICLES WILL HELP CONSUMERS AVOID POTENTIAL INJURIES AND ANY FURTHER FINANCIAL HARDSHIPS.

50.     On March 15, 2019, the following incident dated November 5, 2018 was reported:

> THE CAR PRODUCES A NOTICEABLE GRINDING NOISE WHENEVER I AM ACCELERATING IN BOTH ECO AND NORMAL MODES. THERE IS A GRINDING FEELING IN THE PEDAL WHEN THE GRINDING NOISE OCCURS. IT MAKES THE VEHICLE FEEL UNSAFE. VOLKSWAGEN REFUSES TO ACKNOWLEDGE THE PROBLEM. I FEEL AS THOUGH THE TRANSMISSION MAY GIVE OUT AT ANY TIME.

51.     On April 26, 2019, the following incident dated March 1, 2019 was reported:

> I'VE HAD THE 2019 JETTA FOR ROUGHLY 30 DAYS NOW. I'VE NOTICED A STRANGE GRINDING NOISE COMING FROM THE ENGINE AROUND 30 MPH WHEN ACCELERATING UNDER LIGHT LOAD. AS IF A DRIVER ATTEMPTS TO SHIFT WHILE THE CLUTCH IS NOT ENGAGED, THE CAR PRODUCES A GRINDING NOISE (BUT THIS CARE IS AN AUTOMATIC). SO I DECIDED TO TAKE IT INTO VW TO BE LOOKED AT (YOUNG VW). THEY SAID AND I QUOTE "NOISE IS NORMAL OPERATION OF THE DRIVE SYSTEM WHEN ACCELERATING." THAT JUST DOESN'T SEEM RIGHT TO ME.. MY HUSBAND HAS A

1
2
3

REASONABLE AMOUNT OF AUTOMOTIVE KNOWLEDGE AND HAS MADE AN ASSERTIONS THAT THE ISSUES IS RELATED TO THE THE TRANSMISSION PACKAGE; IN HIS OPINION ANY ISSUE WITH THE TORQUE AT LOW RPMS.

4

VW REFUSES TO EVEN LOOK AT THE ISSUE, AT THIS TIME.

5
6
7

WE WORRY IS THE CAR IS DEFECTIVE AND IT DAMAGES THE VALUE OF THE VEHICLE AND WORSE IT'S A SAFETY ISSUE AS IT CAUSES ACCELERATED HEATING AND FAILURE RATE FOR THE ENTIRE TRANSMISSION SYSTEM.

8
9
10
11

MY HUSBAND HAS RESEARCHED THE ISSUE ON GOOGLE, DOCUMENT ID: 32-18-01TT PROVES THAT VW AG KNOWS THIS ISSUE IS A DEFECT PART, THEY CLAIM THAT IT'S 'A NORMAL CHARACTERISTIC OF THE VEHICLE' HOWEVER, THE DOCUMENT LITERALLY MENTIONS THE TERM 'SCRAPING'.

12
13
14
15
16

HE HAS ALSO TESTED THE CAR, AND IF HE PUT THIS CAR IN MANUAL MODE AND RIGHT BEFORE 4TH GEAR HITS 2000 RPM, SWITCH TO 5TH GEAR AND LET IT DROP TO AROUND 1300-1400 RPM AND ACCELERATE LIGHTLY (ESPECIALLY ON AN INCLINE); YOU'LL HEAR A LOUD SOUND THAT SCRAPES ALL THE WAY TO 2000 RPM.

17   52.   In addition to sudden transmission failures, the Transmission Defect

18   presents a further safety concern because it causes the driver to lose all

19   transmission inputs, including acceleration. Unpredictable acceleration is unsafe,

20   particularly when changing lanes, merging onto highways, and turning left

21   across oncoming traffic.

22      **VWGoA Had Superior and Exclusive Knowledge of the Transmission**

23                                    **Defect**

24   53.   Since Summer 2018, VWGoA has designed, manufactured,

25   distributed, sold, and leased the Class Vehicles. VWGoA issued the first

26   Technical Tip regarding the Transmission Defect on October 26, 2018, within

27   months of the Class Vehicles being offered for sale on the market.

28   54.   As stated, Technical Tip 32-18-1TT entitled "Transmission Noise or

Scraping Sound When Shifting Gears" was first issued on October 26, 2018, and later revised on April 16, 2019.  According to the original and later update, Defendant VWGoA determined that the Transmission Defect was a "normal operating characteristic of the torque converter stator as the torque clutch is applied." No actual repairs were suggested or allowed. Importantly, this Technical Tip was not, and is not, disseminated to owners or prospective buyers.

55.     Federal law requires automakers like VWGoA to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See TREAD Act,* Pub. L. No. 106-414, 114 Stat.1800 (2000).

56.     Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including those which are safety-related. *Id.* Thus, VWGoA knew or should have known of the many complaints about the Transmission Defect logged by NHTSA ODI. The content, consistency, and disproportionate number of those complaints alerted, or should have alerted, VWGoA to the Transmission Defect.

57.     With respect solely to the Class Vehicles, the following are but a few examples of the many complaints concerning the Transmission Defect which are available through NHTSA's website, www.safercar.gov. Many of the complaints reveal that VWGoA, through its network of dealers and repair technicians, has been made aware of the Transmission Defect. In addition, the complaints indicate that despite having knowledge of the Transmission Defect and even armed with knowledge of the exact vehicles affected, VWGoA often

1    refused to diagnose the defect or otherwise attempt to repair it while Class

2    Vehicles were still under warranty. When VWGoA did attempt repairs, it merely

3    replaced the Transmission with a similarly defective Transmission.

4         58.    On NHTSA's website, the following incident dated July 9, 2018 was

5    reported on August 15, 2018:

6

7              THERE   IS   AN   ISSUE   WITH   THE   TORQUE
               CONVERTER IN THE 2019 JETTAS (AUTOMATIC).
8              WHEN  DRIVING  IN  LOW  RPM'S,  THERE  IS  A
               LOUD  GRINDING  SOUND  COMING  FROM  THIS
9              AREA. THIS AFFECTS DRIVE-ABILITY, AS YOU
               NEED  TO  DRIVE  MORE  AGGRESSIVELY  TO
10             ELIMINATE  THE  SOUND.  THERE  ALSO  ARE
               MULTIPLE  REPORTS  OF  TRANSMISSION  FLUID
11             LEAKS.  THESE  ISSUES  ARE  ON  BRAND-NEW
               MODELS OF THIS VEHICLE.

12

13        59.    On October 25, 2018, the following incident dated October 25, 2018

     was reported:
14

15             THERE IS AN ISSUE WITH THE TRANSMISSION
               IN   THE   2019   JETTAS   (AUTOMATIC).   WHEN
16             DRIVING  IN  LOW  RPM'S  BETWEEN  25-30MPH,
               THERE  IS  A  LOUD  GRINDING  SOUND  COMING
17             FROM THE CAR. THIS AFFECTS HOW YOU MUST
               DRIVE. AS SOMEONE ELSE STATED YOU MUST
18             DRIVE  MORE  AGGRESSIVELY  TO  ELIMINATE
               THE SOUND. THERE ARE SEVERAL REPORTS OF
19             THIS WITH OTHER JETTA OWNERS IN MY AREA.
               THIS  HAPPENS  CONSTANT.  IT  IS  NOT  AN
20             ISOLATED EVENT. I HAVE REPORT THIS TO MY
               DEALERSHIP AS WELL.
21

22        60.    On October 30, 2018, the following incident dated October 27, 2018

23   was reported:

24

25             AFTER PURCHASING MY VEHICLE 2019 JETTA
               AT  THE  END  OF  JUNE,  I  HAD  TO  HAVE  MY
26             TRANSMISSION     LEAK     FIXED     AND     THE
               TRANSMISSION REPAIRED FOR A LARGE LEAK.
27             IT TOOK OVER 2 WKS TO GET THE CAR BACK.
               THEN FOR ABOUT A MONTH NOW, THE CAR HAS
28             BEEN  RUNNING  ROUGH,  NOT  ACCELERATING
               WITHOUT A HUGE DELAY & JERKING. IT'S LIKE

THE CAR IS IN NEUTRAL WHEN YOU TRY TO STEP ON THE GAS. THE DEALER SAID THEY HAVE TO SEND A REP OUT FROM VOLKSWAGEN TO INSPECT MY VEHICLE AND THEY HAVE NO IDEA HOW LONG THAT WILL TAKE SO I WILL HAVE THE LOANER VEHICLE INDEFINITELY. I CALLED VOLKSWAGEN CUSTOMER CARE TO OPEN A CASE TO SEE IF I CAN GET A BUYBACK OPTION BECAUSE THE DEALER STATED THERE IS NOTHING MORE THEY CAN DO AT THIS POINT.

61.    On November 2, 2018, the following incident dated July 9, 2018 was reported:

THERE IS A LOUD AND PROMINENT GRINDING NOISE THAT PRESENTS ITSELF WHEN ACCELERATING, USUALLY THROUGH 5TH GEAR. IT CAN BE MINIMIZED BY ACCELERATING VERY AGGRESSIVELY, BUT ANY LESS AND THE GRINDING NOISE WILL BE HEARD.

62.    On November 7, 2018, the following incident dated October 30, 2018 was reported:

GRIND NOISE AT 30 MPH, DIMINISHES AFTER THAN STARTS AGAIN MORE FAINTLY AFTER 40 MPH. OCCASIONAL HARD DOWN SHIFTS WHEN COMING TO A STOP.

63.    On December 5, 2018, the following incident dated October 27, 2018 was reported:

WELL AGAIN MY I HAD TO TAKE MY 2019 JETTA BACK TO LUNDE'S IN PEORIA, AZ. AFTER THE TRANSMISSION LEAK WAS FIXED IN AUGUST, I NOTICED ABOUT A MONTH LATER THE CAR WAS JERKING A LOT AND NOT ACCELERATING WHEN I HAD MY FOOT ON THE GAS PEDAL. ( LIKE WHEN YOU PUSH ON THE GAS, BUT DISCOVER YOUR CAR IS NEUTRAL AND NOT DRIVE.) THIS BECAME VERY DANGEROUS AND THE DELAY TIME WAS GETTING LONGER AND LONGER TO THE POINT WHERE IT WAS ABOUT HALF A MINUTE BEFORE IT WOULD ACCELERATE. OR WOULD BE ACCELERATING

FINE THEN MID DRIVE OR WHEN TURNING, IT WOULD JUST STOP AND COAST AND NOTHING WOULD HAPPEN WHEN YOU PUSHED YOUR FOOT ON THE GAS OTHER THEN THE CAR REVVING AND NOT MOVING. I TOOK MY JETTA BACK INTO LUNDE'S (AGAIN) AND THEY HAD MY CAR FOR A MONTH. THEY REPLACED THE O RINGS, AS PEOPLE HAVE MENTIONED ON HERE AND I WAS TOLD THAT NOW VW HAS REMADE ALL THE O RINGS TO WORK AND FIT PROPERLY IN THE TRANSMISSION. I PICKED UP MY CAR AT LUNDE'S AND IMMEDIATELY WENT TO GET GAS. I WAS WAITING IN LINE WITH THE CAR IN PARK & STILL RUNNING. WHEN I WENT TO PUT THE CAR IN DRIVE SAID RESTART ENGINE! SO THE CAR SHUT OFF ON ME! I CALLED LUNDE'S BACK AND WAS TOLD IF IT HAPPENS AGAIN TO CALL THEM. WELL, IT DID, AND I DID NOT CALL THEM BACK BECAUSE I OPENED UP A CASE WITH VW OF AMERICA TO TRY TO GET A BUYBACK OR REPLACEMENT VEHICLE. NOW I HAVE TO WAIT TO SEE IF MY AUTO LOAN COMPANY FIRST INVESTORS WILL PROCESS THE SUBSTITUTION OF COLLATERAL REQUEST. THIS WAY I CAN KEEP EVERYTHING THE SAME ON MY LOAN (BC I UPGRADED AND NOW HAVE NEGATIVE EQUITY THE BUY BACK OPTION IS NOT FINANCIALLY A GOOD OPTION FOR ME) SO OF COURSE MY AUTO LOAN COMPANY STATES "THEY DO NOT DO THAT ANYMORE". SO NOW I AM GOING BACK AND FORTH WITH THEM SO I AM NOT STUCK IN AN UNSAFE CAR. DO NOT BUY A 2019 JETTA UNTIL VW GETS IT FIGURED OUT ON ALL THE FAULTY PARTS AND DO NOT GET AN AUTO LOAN WITH 1ST INVESTORS. WHY IS THIS CAR NOT RECALLED YET?

64.    On December 31, 2018, the following incident dated December 17, 2018 was reported:

TL* THE CONTACT OWNS A 2019 VOLKSWAGEN JETTA. WHILE DRIVING 25 MPH OR HIGHER, THE CONTACT HEARD A LOUD BUZZING AND GRINDING SOUND COMING FROM THE TRANSMISSION. THE CONTACT TOOK THE VEHICLE TO SUNRISE VOLKSWAGEN (931 SUNRISE HWY, LYNBROOK, NY 11563, (516) 596-5970) TO HAVE THE TRANSMISSION CHECKED, BUT AN APPOINTMENT COULD NOT BE MADE UNTIL JANUARY 18, 2019. THE MANUFACTURER STATED THAT THEY WOULD CONTACT NHTSA. THE FAILURE MILEAGE WAS 250. *DT

CONSUMER WAS TOLD BY THE DEALER NO "REPAIR" WOULD BE NEEDED THAT THEY FELT IT IS NORMAL. *JB

65.     On January 13, 2019, the following incident dated December 1, 2018 was reported:

IT APPEARS THAT THE MAJORITY AND OR ALL OF THE NEW 2019 VOLKSWAGEN JETTA'S HAVE TORQUE CONVERTER DEFECTS. THE DEFECT CAUSES THE VEHICLE TO EMIT A LOUD SCRAPE AND GRINDING NOISE WHICH CAN DISTRACT THE DRIVER. THE COULD CAUSE DRIVERS TO PULL OVER AND POTENTIALLY CAUSE AN ACCIDENT.

THE NEW 2019 VOLKSWAGEN JETTA THAT I HAVE BEEN DRIVING HAS BEEN TO THE SHOP 3 TIMES DUE TO THIS SOUND THE TRANSMISSION IS MAKING ON THIS VEHICLE. I HAVE BEEN TOLD THAT IT'S A 'NORMAL CHARACTERISTIC' OF THE CAR. HOWEVER, THIS NEEDS TO REVIEWED BY A 3RD PARTY AS PROPERLY FUNCTIONING AND SAFE TRANSMISSIONS DO NOT GRIND OR SCRAPE AS THESE NOISES GENERALLY MEAN THAT INTERNAL DAMAGE IS OCCURRING INSIDE OF THE VEHICLE'S TRANSMISSION. VOLKSWAGEN ALLOWED ME TO REVIEW A DOCUMENT STATING THEY WERE AWARE OF THE TORQUE CONVERTER ISSUE WITH THIS CAR, HOWEVER, THEY ARE CLAIMING IT'S NORMAL. AGAIN, SAFE TORQUE CONVERTERS DO NOT GRIND OR SCRAPE. HERE'S THE ID TO THE VOLKSWAGEN DOCUMENT THAT CAN BE REQUESTED FROM VW: 32-18-01TT.

THE 2019 VW JETTA THAT I HAVE WAS TAKEN TO A 3RD PARTY TRANSMISSION EXPERT AND I WAS TOLD THAT IT WAS A SERIOUS DEFECT AND THEY DID NOT FEEL SAFE TO DRIVE THE CAR FOR EXTENDED PERIODS OF TIME. I FEEL THE SAME WAY, HOWEVER, I'M BEING TOLD BY VW AND THEIR DEALERSHIPS THAT GRINDING TRANSMISSIONS ARE NORMAL AND SAFE WHICH CONTRADICTS REALITY. GRINDING TRANSMISSIONS ON NEW VEHICLES ARE NOT SAFE, THEY'RE DEFECTIVE AND SAYING THAT THEY ARE NORMAL IS LEGALLY CONCERNING.

PLEASE LOOK INTO THE SAFETY AND VALUE IMPLICATIONS OF THIS ISSUE FOR A NEW 2019 VOLKSWAGEN JETTA'S. I AM VERY

CONCERNED FOR MY SAFETY AND JUST WANT THE PROBLEM FIXED BY VOLKSWAGEN. THEY HAVE REFUSED TO HELP ME 3 TIMES AND I HAVE BEEN GIVEN A RUN AROUND BY VW REGIONAL CARE PROVIDERS WITH THIS ISSUE, TOO (IT'S BEEN A TERRIBLE EXPERIENCE DEALING WITH VW AT TRYING TO GET THE VEHICLE BOUGHT BACK FOR SUCH A BAD DEFECT).

66.     On January 22, 2019, the following incident dated January 22, 2019 was reported:

8 SPEED AUTOMATIC TRANSMISSION HAS A METALLIC GRINDING OR SCRAPING NOISE WHEN OPERATING AT LOW RPM'S DURING ACCELERATION. SPECIFICALLY AFTER THE TRANSITION TO 5TH GEAR. THE POWERTRAIN NOTICEABLY HESITATES DURING ACCELERATION WHEN THIS AFOREMENTIONED SOUND IS ACTIVE. IT'S ONLY A MATTER OF TIME BEFORE THIS TRANSMISSION FAILS AND LEAVES ME IN THE MIDDLE OF A BUSY INTERSECTION. IT'S AN EXTREMELY COMMON ISSUE ON THE 2019 VOLKSWAGEN JETTA THAT THE MANUFACTURER REFUSES TO ACKNOWLEDGE AS AN ACTUAL PROBLEM. THEY CLAIM THE SCRAPING AND GRINDING SOUND IS A "NORMAL CHARACTERISTIC" OF THE CAR, WHICH IS TOTALLY NONSENSICAL.

**Customer Complaints on Third-Party Websites**

67.     Consumers similarly complained about the defect on various online forums. Below are some examples.

68.     In a forum for 2019 Jettas on vwvortex.com, one commenter began a thread titled "Wierd noise"[6] with a post dated June 17, 2018 as follows:

I've been an owner of my new 2019 Jetta SE for about two weeks.. I've noticed something strange though that idk if anyone else might have with there vehicles as well. Starting my car from 0mph to about 25mph to 35 mph I hear a wierd noise. Like I can hear the gears shift oddly..

_____

[6] https://forums.vwvortex.com/showthread.php?9205505-Wierd-noise&highlight=Aisin+transmission (last viewed June 6, 2019).

I never had a 1.4t or even a new car period , so I ignored it thinking it can a feature for safety or so. But it bothers the heck out of me.. it feels as if the 2nd or 3rd gear shift makes this noise.. the performance isn't effected at all.. just this noise is wierd. Anybody out there have this issue at all?

69.    A consumer responded on this thread on July 11, 2018:

I also am experiencing this issue in my 2019 R-Line. Purchased it under 3 weeks ago. The noise was really bothering me... took it to the dealer a few days after purchase and they told me it was "normal DSG noise." Another few days go by and it was bothering me again so I test drove another Jetta. It made the same noise. I then learned that this car doesn't actually have a DSG so I took it to a different dealer to get a second opinion. THEY FOUND A TRANSMISSION FLUID LEAK - LEVELS WERE PRETTY LOW AND LIKELY CAUSING DAMAGE!!!!  They are still trying to figure out the extent of the issue and working towards a resolution. Needless to say i'm not a happy camper...especially this being my first new car and first(last?) Volkswagen. I wonder if this noise is directly related and this transmission leak could be a wide spread issue????

70.    In the reviews section for 2019 Jettas on Edmunds.com,[7] a consumer wrote on December 1, 2018:

Poor quality have had 5 issues in less than 5 months. Dealer says one issue is normal, the grinding of brakes. You can judge for yourself if you'd like, my review is on youtube Under "Volkswagen VW 2019 Jetta review with all 5 issues". The issue I'm most concerned with is the brakes and you can hear the "normal" 3 minutes into the video.  Everyone I know says it's not regular.  30 years of driving and never heard.  It's great having a warranty but when you bring it in for the third time and they say there's nothing wrong it's pointless.  They even said other customers have complained but that's how Volkswagens sound. Crazy.    Of course there's the other issues including a back panel popping off and a recall for water leaks.  Very very disappointed.  Did I say very?

71.    On Edmunds.com, another consumer wrote on March 11, 2019:

[77] https://www.edmunds.com/volkswagen/jetta/2019/consumer-reviews/?pagesize=50&sorting=created%3Adesc (last viewed June 6, 2019).

1

2

3

4

5

6

7

8

9

10

> This is the worst car I've ever had! My car has been in the shop around 9 times and I have only owned it for 8 months! Numerous problems with my crash sensors, and blind spot monitor sensors going off at the wrong time, so unsafe! I have expressed to my local dealer numerous times that the car has a steady murmur coming from the engine and it took me 3 separate trips to the dealer for them to hear the noise, they looked at me like I was crazy until other customers reported the noise as well. My car sat in the shop for a little over a week just for them to tell me nothing was wrong with it. The last time I took it to the dealer they had told me VW Corporate was aware of the issue and were actively working on a solution. Well, fast forward 2 months later I still have not hear a thing back about it. I also just found out there are 3 current recalls on the car so I am beyond frustrated that my car is currently been in the shop. Too bad I am stuck with the car for another 3 years.

11

12

72.     On Edmunds.com, another consumer wrote on March 13, 2019:

13

14

15

16

17

18

19

20

21

> If I could turn back time... I never would have leased this VW! I should run as soon as I figured out that no one at the dealership knew how to properly register a lease. But I didn't, so now I'm stuck...Don't miss your first oil change, because the car is leaking transmission fluid from faulty materials in and around the transcooler. Oh and be prepared for all of the recalls to need to be fixed when you arrive for that first oil change. Shortly after the oil change, you can expect the heat to stop working. Be prepared for everyone to laugh at your brand new car and the sound it makes at around 30-40mph because of faulty materials again... oh but VW will deny that part... it's normal for a 2019 to growl and grind. SMH I'm sure I'll be able to comment on here dozens and dozens of times before my lease runs out... If only I could turn back time...

22

23

73.     In the reviews section for 2019 Jettas on cars.com,[8] a consumer wrote on August 28, 2018:

24

25

26

> Have owned 2019 Jetta for 5 weeks. First week was fine.. 2nd week I noticed an audible noise coming from the transmission. (Like a grinding noise) when driving in standard mode. It has gotten worse in the past 2 weeks. I

27

28

[8] https://www.cars.com/research/volkswagen-jetta-2019/consumer-reviews/ (last viewed June 6, 2019).

took the car in to local vw dealer. We took it for a test drive and technician said he does hear and feel it. I waited 2 more hours for service mgr to come tell me its normal??? xxx? Im sorry, but a brand new car does NOT make strange noises in the 20-30mph range). I come to find out a week later, others are now experiencing this same issue and VW continues to "blow it off" as Normal? I think vw has a major issue going on and they dont want to admit it at this point. 6 year warranty or not, driving aound and when your family asks you what they strange noise is I just shrug it off... Embarassed to have purchased this car. I will be going thru VW channels to return this car and get Refunded... AVOID the 2019 VW's w/ 8 speed transmissions. Check out vwvortex web site.. Many folks on there now voicing their concerns over this future recall.

74.   On cars.com, another consumer wrote on October 4, 2018:

I was super excited to get a brand new car... my excitement quickly died when the car started making noises. Between 30-40 mph, the car makes a growling noise - very loud and obvious People are asking what it is - so embarrassing! Then the backup camera went out twice! I took the car to VW, they beat around the bush and won't look at it, said I can come back another day... even though I made an appointment 3 days prior. ' I will never drive a VW again - I'll be telling everyone I know about this - it's about time this company goes out of business.

75.   On cars.com, another consumer wrote on October 23, 2018:

The car is extremely slow and makes a terrible rattle noise each time you accelerate, which is normal according to Volkswagen. The brakes require a firm press to come to a full stop, which makes driving extremely uncomfortable combined with how underpowered the car is. The interior is very cheap. I've had the car for 6 months and it rattles like it's five years old. The only thing this car has going for it is the excellent gas mileage. Otherwise, I can't wait to get rid of this car.

76.   On cars.com, another consumer wrote on November 26, 2018:

Quiet ride except for the grinding noise in the transmission switching from 4 th to 5th gear Buyer beware Dealer has no idea how to fix the problem

77.     On cars.com, another consumer wrote on December 3, 2018:

> I have owned the Jetta for approximately 90 days. It has been to the dealer 3 times for a faulty transmission and passenger window that does not go up and down. Each time the dealer keeps the car for one week and returns it in the same condition. The transmission lurches forward from 1st to 2nd gears and drags between other gears. There are hundreds of complaints online by 2019 Jetta owners having the same transmission issues. The VW Dealer is indifferent to repairing the car and VW Corporate is downright INDIFFERENT, unprofessional and spends a lot of energy dodging complaints than honoring consumers commitment and safety. A defective transmission is dangerous. VW Corporate still hasn't issued a recall. I am invoking the LEMON LAW, which is a hassle. Meanwhile, legal action against the dealer is my only recourse to get rid of this LEMON.

78.     On cars.com, another consumer wrote on December 5, 2018:

> Loved the car when I test drove it. Then, unfortunately, within 1 week heard this horrible grinding noise which VW said was normal. They wouldn't do anything for me. I ended up trading it in (losing a lot of money) because I was afraid that the grinding noise would end up causing a dangerous situation.

79.     In a forum for 2019 Jettas titled "Grinding Noise"[9] on carcomplaints.com, a consumer wrote on August 1, 2018:

> I purchased my 2019 Volkswagen Jetta SEL-Premium brand new. The 8 speed automatic transmission emits a grinding noise that sounds metallic when up-shifting under normal or light acceleration. Vibrations and resonance can be felt in in the accelerator pedal and floorboard. I have not taken the vehicle to the dealership at this time as I do not want to waste my time sitting around for several hours, only to be told by a service advisor that Volkswagen feels the sound and transmission behavior is "Normal" as that is their OFFICIAL stance on the matter as of November 2018. The sound is NOT NORMAL Volkswagen, do something to fix these garbage transmissions that your engineering team haphazardly chose to implement into

---

[9] https://www.carcomplaints.com/Volkswagen/Jetta/2019/transmission/grinding_noise.shtml (last viewed June 6, 2019).

the MK7 Jetta!

80.    In the "Grinding Noise" forum on carcomplaints.com, another consumer wrote on August 30, 2018:

> I recently bought a 2019 Jetta S with 8 speed auto and having the same grind/gurgle type noise at 30 mph. Only seems to happen when the rpm's are under 2000. I also get a similar sound when I hold the speed steady between 40 and 50 mph. Seem to occur in Eco mode and normal mode, but not in sport mode, or just not noticeable.
>
> I took it back to the dealer and had a tech go with me on a drive. He said that it was "normal" that the turbo valve was releasing air. They did not document the issue. This still bothers me, I called customer care to open a case and have another appointment with a different dealer and will make sure this gets documented.
>
> Update after service appointment today, 9/12/18 19 Jetta S Automatic
>
> Had the car looked at by a different dealer today. Tech took it for a ride than he drove with me. He does confirm there is a noise present. When we went out for our drive, I drove the car in all 3 modes. The noise is most present in Eco mode. In Drive mode it is still there but is a little better. In Sport mode I really do not notice it at all. At this time the tech feels that the noise issue is normal due to the 8 speed transmission being hooked up to a small 1.4t engine. He also mentioned giving the car more time to break-in and see if there are any changes once I get closer to 2,000 miles.
>
> I just wonder how much damage this torque converter vibration is doing to the rest of the engine and transmission. This was my first VW ever, probably my last one too.

81.    In another forum titled "Transmission Fluid Leak" on carcomplaints.com,[10] a consumer wrote on July 27, 2018:

> I had not even made my first car payment when I brought my car in for a flat tire. It was then that the dealer discovered a large transmission leak. No lights went on in my 2019 Jetta to indicate there was leak let alone a

---

[10] https://www.carcomplaints.com/Volkswagen/Jetta/2019/transmission/transmission_fluid_leak.shtml (last viewed June 6, 2019).

problem. I had a loaner car for 2 and half weeks because the dealer stated they did not know when the 2019 transmission fluid would be released from Volkswagen. Not only did my new Jetta have a huge leak, and needed to repair the transmission with new parts, but I had to wait a long time.

82.   In the "Transmission Fluid Leak" forum on carcomplaints.com, another consumer wrote on October 27, 2018:

DO NOT PURCHASE A 2019 VW JETTA UNTIL THEY FIGURE THE NEW PROBLEM OUT.

I purchased a new 2019 Jetta Execline from Pickering Volkswagen on Oct 20, 2018. Drove the car and noticed noises coming from the left side of the engine. The sales manager at the dealership informed me that they know about noises but that is normal. When the noises became even more annoying, the car was taken in on Sat Oct 27, 2018 (one week later) as I cannot accept that this is normal.

When the car was on the hoist the mechanic said the transmission seals were leaking and showed me it dripping. Also, the two drive shafts were making clicking noises when each drive shaft was turned by hand even slightly. If you rotate the wheels, there was a distinct clicking noise and he said this is the second time it has happened where the new cars have bad seals, but that the clicking noises this problem has happened before. I asked why wouldn't you tell your customers that there is a problem before I bought the car, and there was no answer by John Callaghan.

The sales manager said that he knew there is noise complaints with the new car, but that was normal. NORMAL my @$$. The service manager did his best to smooth things over by saying he was working for me, but he also is aware that the noises have been something they experience but aren't telling the purchasers because it's not on every sale.

CHECK CAREFULLY BEFORE YOU BUY FROM PICKERING VW, THEY MAY NOT TELL YOU EVERYTHING ABOUT YOUR CAR PURCHASE, AND THEN SAY THEY CAN'T DO ANYTHING ABOUT TAKING THE CAR BACK AS THEY ONLY SELL THE CAR. WHAT B.S.

I believe that the new 2019 Jetta may have another problem like the diesel problem where they are selling cars even though they know there are mechanical and potential safety issues with the car.

1
2

DO NOT BUY A 2019 JETTA UNTIL VW FIGURES
THIS OUT AND REPLACES THE BAD CARS OR
FIXES THEM ALL!!

3  83.    VWGoA had superior and exclusive knowledge of the Transmission

4  Defect and knew or should have known that the defect was not known or

5  reasonably discoverable by Plaintiffs and Class Members before they purchased

6  or leased the Class Vehicles.

7  84.    Plaintiffs are informed and believe, and based thereon allege, that

8  before Plaintiffs purchased their respective Class Vehicles, and since early 2018,

9  VWGoA knew about the Transmission Defect through sources not available to

10  consumers, including pre-release testing data, early consumer complaints to

11  VWGoA and its dealers, testing conducted in response to those consumer

12  complaints, high failure rates of the Transmission, the data demonstrating the

13  inordinately high volume of replacement part sales, and other aggregate data

14  from VWGoA dealers about the problem.

15  85.    VWGoA is experienced in the design and manufacture of consumer

16  vehicles. As an experienced manufacturer, VWGoA conducts tests, including

17  pre-sale durability testing, on incoming components, including the Transmission,

18  to verify the parts are free from defect and align with VWGoA's specifications.[11]

19  Thus, VWGoA knew or should have known the Transmission was defective and

20  prone to put drivers in a dangerous position due to the inherent risk of the

21  Transmission Defect.

22  86.    Additionally, Defendant should have learned of this widespread

23  defect from the sheer number of reports received from dealerships. Defendant

24  VWGoA's customer relations department, which interacts with individual

25  dealerships to identify potential common defects, has received numerous reports

26

27

28

---

[11] Akweli Parker, *How Car Testing Works*, HOWSTUFFWORKS.COM, http://auto.howstuffworks.com/car-driving-safety/safety-regulatory-devices/car-testing.htm ("The idea behind car testing is that it allows manufactures to work out all the kinks and potential problems of a model before it goes into full production.") (last viewed June 5, 2019).

regarding the Transmission Defect, which led to the release of the Technical Tips. VWGoA's customer relations department also collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

87.    Defendant's warranty department similarly analyzes and collects data submitted by its dealerships to identify warranty trends in its vehicles. It is Defendant's policy that when a repair is made under warranty the dealership must provide VWGoA with detailed documentation of the problem and a complete disclosure of the repairs employed to correct it. Dealerships have an incentive to provide detailed information to Defendant, because they will not be reimbursed for any repairs unless the justification for reimbursement is sufficiently detailed.

88.    The existence of the Transmission Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle.  Had Plaintiffs and other Class Members known of the Transmission Defect, they would have paid less for the Class Vehicles or would not have purchased or leased them.

89.    Reasonable consumers, like Plaintiffs, expect that a vehicle's transmission is safe, will function in a manner that will not pose a safety risk, and is free from defects. Plaintiffs and Class Members further reasonably expect that VWGoA will not sell or lease vehicles with known safety defects, such as the Transmission Defect, and will disclose any such defects to its consumers when it learns of them. They did not expect VWGoA to conceal and fail to disclose the Transmission Defect to them, and to then continually deny its existence.

### VWGoA Has Actively Concealed the Transmission Defect

90.    Despite its knowledge of the Transmission Defect in the Class

Vehicles, VWGoA actively concealed the existence and nature of the defect from Plaintiffs and Class Members.  Specifically, VWGoA failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

    (a)    any and all known material defects or material nonconformity of the Class Vehicles, including the defects pertaining to the Transmission;

    (b)    that the Class Vehicles, including the Transmission, were not in good in working order, were defective, and were not fit for their intended purposes; and

    (c)    that the Class Vehicles and the Transmission were defective, despite the fact that VWGoA learned of such defects as early as early 2018.

91.    When consumers present their Class Vehicles to an authorized VWGoA dealer for Transmission repairs, rather than repair the problem under warranty, VWGoA dealers either inform consumers that their vehicles are functioning properly or conduct repairs that merely mask the Transmission Defect.

92.    VWGoA has caused Class Members to expend money at its dealerships to diagnose, repair or replace the Class Vehicles' Transmission and/or related components, despite VWGoA's knowledge of the Transmission Defect.

### VWGoA Has Unjustly Retained A Substantial Benefit

93.    On information and belief, Plaintiffs allege that Defendant unlawfully failed to disclose the alleged defect to induce them and other putative Class Members to purchase or lease the Class Vehicles.

94.    Plaintiffs further allege that Defendant thus engaged in deceptive acts or practices pertaining to all transactions involving the Class Vehicles, including Plaintiffs'.

95.     As discussed above therefore, Plaintiffs allege that Defendant unlawfully induced them to purchase their respective Class Vehicles by concealing a material fact (the defective Transmission) and that they would have paid less for the Class Vehicles, or not purchased them at all, had they known of the defect.

96.     Accordingly, Defendant's ill-gotten gains, benefits accrued in the form of increased sales and profits resulting from the material omissions that did - and likely will continue to - deceive consumers, should be disgorged.

## CLASS ACTION ALLEGATIONS

97.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

98.     The Class and Sub-Class are defined as:

> **Class**:   All individuals in the United States who purchased or leased any Volkswagen Jetta vehicle with a Transmission.
>
> **California Sub-Class**:  All members of the Class who reside in the State of California.
>
> **CLRA Sub-Class**:  All members of the California Sub-Class who are "consumers" within the meaning of California Civil Code § 1761(d).
>
> **Implied Warranty Sub-Class**:   All members of the Class who purchased or leased their vehicles in the State of California.
>
> **Pennsylvania Sub-Class**: All members of the Class who reside in the State of Pennsylvania.

99.     Excluded from the Class and Sub-Classes are:  (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to

whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiffs reserve the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

100.   Numerosity:  Although the exact number of Class Members is uncertain, and can only be ascertained through appropriate discovery, the number is significant enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

101.   Typicality:  Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by VWGoA.  The representative Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that they have incurred or will incur the cost of repairing or replacing the defective Transmission and/or its components.  Furthermore, the factual bases of VWGoA's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

102.   Commonality:  There are numerous questions of law and fact common to Plaintiffs and the Class that predominate over any question affecting Class Members individually.  These common legal and factual issues include the following:

(a)   Whether Class Vehicles suffer from defects relating to the Transmission;

(b)   Whether the defects relating to the Transmission constitute an

unreasonable safety risk;

(c)    Whether Defendant knew about the defects pertaining to the Transmission and, if so, how long Defendant has known of the defect;

(d)    Whether the defective nature of the Transmission constitutes a material fact;

(e)    Whether Defendant has had an ongoing duty to disclose the defective nature of the Transmission to Plaintiffs and Class Members;

(f)    Whether Plaintiffs and the other Class Members are entitled to equitable relief, including a preliminary and/or a permanent injunction;

(g)    Whether Defendant knew or reasonably should have known of the defects pertaining to the Transmission before it sold and leased Class Vehicles to Class Members;

(h)    Whether Defendant should be declared financially responsible for notifying the Class Members of problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective Transmission and/or its components;

(i)    Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective Transmission and/or its components;

(j)    Whether Defendant breached the implied warranty of merchantability pursuant to the Magnuson-Moss Warranty Act;

(k)    Whether Defendant breached the implied warranty of merchantability pursuant to the Song-Beverly Act

1           (l)     Whether Defendant breached its express warranties under

2                   UCC section 2301; and

3          (m)    Whether Defendant breached written warranties pursuant to

4                   the Magnuson-Moss Warranty Act.

5      103.   Adequate Representation:  Plaintiff swill fairly and adequately

6  protect the interests of the Class Members.  Plaintiffs have retained attorneys

7  experienced in the prosecution of class actions, including consumer and product

8  defect class actions, and Plaintiffs intend to vigorously prosecute this action.

9      104.   Predominance and Superiority:  Plaintiffs and Class Members have

10  all suffered, and will continue to suffer, harm and damages as a result of

11  Defendant's unlawful and wrongful conduct.  A class action is superior to other

12  available methods for the fair and efficient adjudication of the controversy.

13  Absent a class action, most Class Members would likely find the cost of

14  litigating their claims prohibitively high and would therefore have no effective

15  remedy.  Because of the relatively small size of the individual Class Members'

16  claims, it is likely that only a few Class Members could afford to seek legal

17  redress for Defendant's misconduct.  Absent a class action, Class Members will

18  continue to incur damages, and Defendant's misconduct will continue unabated

19  without remedy or relief.  Class treatment of common questions of law and fact

20  would also be a superior method to multiple individual actions or piecemeal

21  litigation in that it will conserve the resources of the courts and the litigants and

22  promote consistency and efficiency of adjudication.

### FIRST CAUSE OF ACTION

**(Violation of California's Consumers Legal Remedies Act,**

**California Civil Code § 1750, *et seq*.)**

**(On Behalf of the California Sub-Class)**

27      105.  Plaintiff Parrish incorporates by reference the allegations contained

28  in the preceding paragraphs of this Complaint.

106.   Plaintiff Parrish brings this cause of action on behalf of himself and the CLRA Sub-Class (CLRA Sub-Class).

107.   Defendant is a "person" as defined by California Civil Code § 1761(c).

108.   Plaintiff Parrish and the CLRA Sub-Class members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased their Class Vehicles primarily for personal, family, or household use.

109.   By failing to disclose and concealing the defective nature of the Transmission from Plaintiff Parrish and prospective CLRA Sub-Class members, Defendant violated California Civil Code § 1770(a), as it represented that the Class Vehicles and their Transmission had characteristics and benefits that they do not have, and represented that the Class Vehicles and their Transmission were of a particular standard, quality, or grade when they were of another. *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

110.   Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

111.   Defendant knew that the Class Vehicles and their Transmission suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

112.   As a result of their reliance on Defendant's omissions, owners and/or lessees of the Class Vehicles, including Plaintiff Parrish, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, Plaintiff Parrish and the CLRA Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' Transmission and its components are substantially certain to fail before their expected useful life has run.

113.   Defendant was under a duty to Plaintiff Parrish and the CLRA Sub-Class members to disclose the defective nature of the Transmission and/or the associated repair costs because:

(a)   Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' Transmission;

(b)   Plaintiff Parrish and the CLRA Sub-Class members could not reasonably have been expected to learn or discover that their Transmission had a dangerous safety defect until it manifested; and

(c)   Defendant knew that Plaintiff Parrish and the CLRA Sub-Class members could not reasonably have been expected to learn of or discover the safety defect.

114.   In failing to disclose the defective nature of Transmission, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

115.   The facts Defendant concealed from or failed to disclose to Plaintiff Parrish and the CLRA Sub-Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less.  Had Plaintiff Parrish and the CLRA Sub-Class members known that the Class Vehicles' Transmission was defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

116.   Plaintiff Parrish and the CLRA Sub-Class members are reasonable consumers who do not expect the transmission installed in their vehicles to exhibit problems such as the Transmission Defect. This is the reasonable and objective consumer expectation relating to a vehicle's transmission.

117.   As a result of Defendant's conduct, Plaintiff Parrish and the CLRA

Sub-Class members were harmed and suffered actual damages in that, on information and belief, the Class Vehicles experienced and will continue to experience problems such as the Transmission Defect.

118.   As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiff Parrish and the CLRA Sub-Class members suffered and will continue to suffer actual damages.

119.   Plaintiff Parrish and the CLRA Sub-Class members are entitled to equitable relief.

120.   Plaintiff Parrish provided Defendant with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a).  If, within 30 days, Defendant fails to provide appropriate relief for their violations of the CLRA, Plaintiff Parrish will amend this Complaint to seek monetary, compensatory, and punitive damages, in addition to the injunctive and equitable relief that he seeks now on behalf of himself and the CLRA Sub-Class.

## SECOND CAUSE OF ACTION

### (Violation of California Business & Professions Code § 17200, *et seq.*)

### (On Behalf of the California Sub-Class)

121.   Plaintiff Parrish incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

122.   Plaintiff Parrish brings this cause of action on behalf of himself and the California Sub-Class (CA Sub-Class).

123.   As a result of their reliance on Defendant's omissions, owners and/or lessees of the Class Vehicles, including Plaintiff Parrish, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, Plaintiff Parrish and the CA Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' Transmission and/or its components are substantially certain to fail before their expected useful life has run.

124.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

125.   Plaintiff Parrish and the CA Sub-Class members are reasonable consumers who do not expect their transmission to exhibit problems such as loss of power, premature wear, and frequent replacement or repair.

126.   Defendant knew the Class Vehicles and their Transmissions were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

127.   In failing to disclose the Transmission Defect, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

128.   Defendant was under a duty to Plaintiff Parrish and the CA Sub-Class members to disclose the defective nature of the Class Vehicles and their Transmission because:

> (a)   Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' Transmission; and
>
> (b)   Defendant actively concealed the defective nature of the Class Vehicles and their Transmission from Plaintiff Parrish and the CA Sub-Class.

129.   The facts Defendant concealed from or failed to disclose to Plaintiff Parrish and the CA Sub-Class members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Class Vehicles.  Had they known of the Transmission Defect, Plaintiff Parrish and the other CA Sub-Class members would have paid less for Class Vehicles equipped with the Transmission or would not have purchased or leased them at all.

130.   Defendant continued to conceal the defective nature of the Class Vehicles and their Transmission even after Plaintiff Parrish and the other CA Sub-Class members began to report problems.

131.   Defendant's conduct was and is likely to deceive consumers.

132.   Defendant's acts, conduct, and practices were unlawful, in that they constituted:

(a)   Violations of California's Consumers Legal Remedies Act;

(b)   Violations of the Song-Beverly Consumer Warranty Act;

(c)   Violations of the Magnuson-Moss Warranty Act; and

(d)   Breach of Express Warranty under California Commercial Code § 2313.

133.   By its conduct, Defendant has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

134.   Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the purchasing public.

135.   As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff Parrish and the other CA Sub-Class members have suffered and will continue to suffer actual damages.

136.   Defendant has been unjustly enriched and should be required to make restitution to Plaintiff Parrish and the other CA Sub-Class members pursuant to §§ 17203 and 17204 of the Business & Professions Code.

## THIRD CAUSE OF ACTION

### (Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq.*)

### (On Behalf of the Implied Warranty Sub-Class)

137.   Plaintiff Parrish incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

138.   Plaintiff Parrish brings this cause of action against Defendant on behalf of himself and the Implied Warranty Sub-Class (IW Sub-Class).

139.   Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

140.   Defendant provided Plaintiff Parrish and the IW Sub-Class members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their Transmission suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

141.   Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for their intended use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their Transmission, which were manufactured, supplied, distributed, and/or sold by VWGoA, would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their Transmission would be fit for their intended use.

142.   Contrary to the applicable implied warranties, the Class Vehicles and their Transmission at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff Parrish and the IW Sub-Class members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including the defective Transmission.

143.   The alleged Transmission Defect is inherent and was present in each Class Vehicle at the time of sale.

144.   As a result of Defendant's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable

loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, Plaintiff Parrish and the IW Sub-Class members were harmed and suffered actual damages in that the Class Vehicles' Transmission and/or its components are substantially certain to fail before their expected useful life has run.

145.   Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

## FOURTH CAUSE OF ACTION

### (Breach of Warranty under the Magnuson-Moss Warranty Act,

### 15 U.S.C. § 2303 *et seq*.)

### (On Behalf of the Class)

146.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

147.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Class against Defendant.

148.   Defendant provided all purchasers and lessees of the Class Vehicles with an express warranty described *infra*, which became a material part of the bargain. Accordingly, Defendant's express warranty is an express warranty under California law.

149.   The Transmission and its component parts were manufactured and/or installed in the Class Vehicles by Defendant and are covered by the express warranty.

150.   In a section entitled "What's Covered," Defendant's express warranty provides in relevant part that "The Basic Limited Warranty covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation." The warranty further provides that "You pay nothing for these

repairs. These warranty repairs or adjustments—including all parts and labor connected with them—will be made by your dealer at no charge, using new or remanufactured parts."

151.   According to VWGoA, "The Basic Limited Warranty lasts for 36 months from the date it begins or for 36,000 miles on the odometer, whichever occurs first."

152.   Defendant also provides a "Powertrain Limited Warranty" that "covers the cost of all parts and labor needed to repair a powertrain component listed in section 2.4.E below that is defective in workmanship and materials." Section 2.4.E., in turn, lists "Transmission: transmission case and all internal parts; torque converter; drive/flex plate; transmission range switch; speed sensors; pressure sensors; transmission control module; bell housing; oil pan; seals and gaskets for listed components only;" as well as "Front wheel drive: transaxle case and all internal parts… differential cover; oil pan; transaxle speed sensors; transaxle solenoid assembly, PRNDL position switch; transaxle electronic controller; torque converter; seals and gaskets for listed components only."

153.   According to VWGoA, "The Powertrain Limited Warranty lasts for up to 5 years or 100,000 miles on the odometer, whichever occurs first…"

154.   Defendant breached the express warranties by selling and leasing Class Vehicles with Transmissions that were defective, requiring repair or replacement within the warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge, the Transmission and its component parts, and instead, replacing the defective Transmission and its components with equally defective Transmissions and components. By simply replacing Plaintiffs' and Class Members' defective Transmissions with similarly defective parts, VWGoA has failed to "repair" the defects as alleged herein.

155.   Plaintiffs were not required to notify VWGoA of the breach or was

not required to do so because affording VWGoA a reasonable opportunity to cure its breach of written warranty would have been futile. Defendant was also on notice of the defect from complaints and service requests it received from Class Members, from repairs and/or replacements of the Transmission, and from other internal sources.

156.   As a direct and proximate cause of Defendant's breach, Plaintiffs and the other Class members have suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiffs and the other Class members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

157.   Plaintiffs and the other Class members are entitled to legal and equitable relief against Defendant, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

**FIFTH CAUSE OF ACTION**

**(Breach of Implied Warranty under the Magnuson-Moss Warranty Act,**

**15 U.S.C. § 2303 *et seq*.)**

**(On Behalf of the Class)**

158.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

159.   Plaintiffs bring this cause of action on behalf of themselves and the Class against Defendant.

160.   The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

161.   Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

162.   Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

163.   VWGoA impliedly warranted that the Class Vehicles were of merchantable quality and fit for use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their Transmission were manufactured, supplied, distributed, and/or sold by VWGoA would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their Transmission would be fit for their intended use while the Class Vehicles were being operated.

164.   Contrary to the applicable implied warranties, the Class Vehicles and their Transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including the defective design of their Transmission.

165.   Defendant's breach of implied warranties has deprived Plaintiffs and Class members of the benefit of their bargain.

166.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25,000.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

167.   Defendant has been afforded a reasonable opportunity to cure its breach, including when Plaintiffs and Class members brought their vehicles in for diagnoses and repair of the Transmission.

168.   As a direct and proximate cause of Defendant's breach of implied warranties, Plaintiffs and Class members sustained and incurred damages and other losses in an amount to be determined at trial.  Defendant's conduct damaged Plaintiffs and Class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

169.   As a result of Defendant's violations of the Magnuson-Moss

Warranty Act as alleged herein, Plaintiffs and Class members have incurred damages.

**SIXTH CAUSE OF ACTION**

**(Violation of the Pennsylvania Unfair Trade Practices and**

**Consumer Protection Law – 73 P.S. § 201-1, *et seq.*)**

**(On Behalf of the Pennsylvania Sub-Class)**

170.   Plaintiff Wood incorporates by reference all preceding allegations as though fully set forth herein

171.   Plaintiff Wood asserts this claim on behalf of himself and the other members of the Pennsylvania Sub-Class (PA Sub-Class).

172.   Plaintiff Wood and the PA Sub-Class purchased or leased their Class Vehicles primarily for personal, family or household purposes within the meaning of 73 P.S. § 201-9.2.

173.   All of the acts complained of herein were perpetrated by Defendant in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

174.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") prohibits unfair or deceptive acts or practices, including: (i) "Representing that goods or services have … characteristics, …. [b]enefits or qualities that they do not have;" (ii) "Representing that goods or services are of a particular standard, quality or grade … if they are of another;" (iii) "Advertising goods or services with intent not to sell them as advertised;" and (iv) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding."  73 P.S. § 201-2(4).

175.   Defendant engaged in unlawful trade practices, including representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard and quality when they are not; advertising Class Vehicles with the intent not to sell them as advertised; and engaging in any other fraudulent or

deceptive conduct which creates a likelihood of confusion or of misunderstanding.

176.   In the course of its business, Defendant concealed the Transmission Defect as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Class Vehicles.

177.   Defendant has known of the Transmission Defect and the true nature of its Transmission system when it sold the Vehicles but concealed all of that information.

178.   By failing to disclose and by actively concealing the Transmission Defect and the true nature of its Transmission system, by marketing its vehicles as safe, reliable, easily operable, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, cleanliness, performance and efficiency, and stood behind its vehicles after they were sold, Defendant engaged in unfair and deceptive business practices in violation of the UTPCPL.

179.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Wood and the PA Sub-Class, about the true performance and characteristics of the Class Vehicles.

180.   Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Plaintiff Wood and the PA Sub-Class.

181.   Defendant knew or should have known that its conduct violated the UTPCPL.

182.   Because Defendant fraudulently concealed the Transmission Defect, the value of the Class Vehicles has greatly diminished.

183.   Defendant's concealment of the true characteristics of the Transmission was material to the Plaintiff Wood and the Pennsylvania Sub-Class.

184.   The Plaintiff Wood and the PA Sub-Class suffered ascertainable loss caused by Defendant's misrepresentations and its concealment of and failure to disclose material information.

185.   Defendant had an ongoing duty to all its customers to refrain from unfair and deceptive acts or practices under the UTPCPL.  All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Defendant's deceptive and unfair acts and practices that occurred in the course of Defendant's business.

186.   As a direct and proximate result of Defendant's violations of the UTPCPL, the Plaintiff Wood and the PA Sub-Class have suffered injury-in-fact and/or actual damage.

187.   Defendant is liable to the Plaintiff Wood and the PA Sub-Class for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs.  *See* 73 P.S. § 201-9.2(a).  The Plaintiff Wood and the PA Sub-Class are also entitled to an award of punitive damages given that Defendant's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

**SEVENTH CAUSE OF ACTION**

**(For Unjust Enrichment)**

**(On Behalf of the Class)**

188.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

189.   Plaintiffs bring this cause of action on behalf of themselves and the Class.

190.   As a direct and proximate result of Defendant's failure to disclose

1   known defects, Defendant has profited through the sale and lease of the Class

2   Vehicles.  Although these vehicles are purchased through Defendant's agents,

3   the money from the vehicle sales flows directly back to Defendant.

4        191.   Additionally, as a direct and proximate result of Defendant's failure

5   to disclose known defects in the Class Vehicles, Plaintiffs and Class Members

6   have vehicles that require repeated, high-cost repairs that can and therefore have

7   conferred an unjust substantial benefit upon Defendant.

8        192.   Defendant has been unjustly enriched due to the known defects in

9   the Class Vehicles through the use money paid that earned interest or otherwise

10  added to Defendant's profits when said money should have remained with

11  Plaintiffs and Class Members.

12       193.   As a result of the Defendant's unjust enrichment, Plaintiffs and

13  Class Members have suffered damages.

14                          **RELIEF REQUESTED**

15       194.   Plaintiffs, on behalf of themselves and all others similarly situated,

16  request the Court to enter judgment against Defendant, as follows:

17       (a)   An order certifying the proposed Class and Sub-Classes,

18             designating Plaintiffs as named representatives of the Class,

19             and designating the undersigned as Class Counsel;

20       (a)   A declaration that Defendant is financially responsible for

21             notifying all Class Members about the defective nature of the

22             Transmission, including the need for periodic maintenance;

23       (b)   An order enjoining Defendant from further deceptive

24             distribution, sales, and lease practices with respect to Class

25             Vehicles; compelling Defendant to issue a voluntary recall for

26             the Class Vehicles pursuant to.  49 U.S.C. § 30118(a);

27             compelling Defendant to remove, repair, and/or replace the

28             Class Vehicles' defective Transmission and/or its components

1    with suitable alternative product(s) that do not contain the

2    defects alleged herein; enjoining Defendant from selling the

3    Class Vehicles with the misleading information; and/or

4    compelling Defendant to reform its warranty, in a manner

5    deemed to be appropriate by the Court, to cover the injury

6    alleged and to notify all Class Members that such warranty

7    has been reformed;

8    (c)    A declaration requiring Defendant to comply with the various

9    provisions of the Song-Beverly Act alleged herein and to

10   make all the required disclosures;

11   (d)    An award to Plaintiffs and the Class for compensatory,

12   exemplary, and statutory damages, including interest, in an

13   amount to be proven at trial; except that Plaintiffs do not

14   currently seek monetary damages under the Consumers Legal

15   Remedies Act;

16   (e)    Any and all remedies provided pursuant to the Song-Beverly

17   Act, including California Civil Code section 1794;

18   (f)    Any and all remedies provided pursuant to the Magnuson-

19   Moss Warranty Act;

20   (g)    A declaration that Defendant must disgorge, for the benefit of

21   the Class, all or part of the ill-gotten profits it received from

22   the sale or lease of its Class Vehicles or make full restitution

23   to Plaintiffs and Class Members;

24   (h)    An award of attorneys' fees and costs, as allowed by law;

25   (i)    An award of attorneys' fees and costs pursuant to California

26   Code of Civil Procedure § 1021.5;

27   (j)    An award of pre-judgment and post-judgment interest, as

28   provided by law;

FIRST AMENDED CLASS ACTION COMPLAINT

1         (k)    Leave to amend the Complaint to conform to the evidence

2                produced at trial; and

3         (l)     Such other relief as may be appropriate under the

4                circumstances.

5                            **DEMAND FOR JURY TRIAL**

6       195.   Pursuant to Federal Rule of Civil Procedure 38(b) and Central

7 District of California Local Rule 38-1, Plaintiffs demands a trial by jury of all

8 issues in this action so triable.

Dated:  June 10, 2019                    Respectfully submitted,

                                        **Capstone Law APC**

                          By: /s/ *Mark A. Ozzello*
                             Mark A. Ozzello
                             Tarek H. Zohdy
                             Cody R. Padgett
                             Trisha K. Monesi

                             Attorneys for Plaintiffs

                         /s/ *Russell D. Paul*
                           Russell D. Paul
                         Amey J. Park
                       **BERGER MONTAGUE PC**

FIRST AMENDED CLASS ACTION COMPLAINT

# EXHIBIT 1

Mark A. Ozzello (SBN 116595)
Mark.Ozzello@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.Monesi@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:   (310) 943-0396

Russell D. Paul
rpaul@bm.net
Amey J. Park
apark@bm.net
BERGER MONTAGUE P.C.
1818 Market Street, Suite 3600
Philadelphia, PA  19103
Telephone:   (215) 875-3000
Facsimile:   (215) 875-4604

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIQUE PARRISH and EVAN WOOD, individually, and on behalf of a class of similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> VOLKSWAGEN GROUP OF AMERICA, INC. a Delaware limited liability company, <br><br> Defendant. | Case No.: <br><br> **DECLARATION OF DOMINIQUE PARISH IN SUPPORT OF VENUE FOR CLASS ACTION COMPLAINT PURSUANT TO CIVIL CODE SECTION 1780(d)** |

1.     I make this declaration based upon my personal knowledge except as to those matters stated herein that are based upon information and belief, and as to those matters I believe them to be true. I am over the age of eighteen, a citizen of the State of California, and a Plaintiff in this action.

2.     Pursuant to California Civil Code section 1780(d), this Declaration is submitted in support of Plaintiff's Selection of Venue for the Trial of Plaintiff's Cause of Action alleging violation of California's Consumers Legal Remedies Act against Defendant, Volkswagen Group of America, Inc. ("VWGoA").

3.     I purchased my 2019 Volkswagen Jetta—the subject vehicle in this lawsuit—from Norm Reeves Volkswagen Superstore, an authorized VWGoA dealer in Irvine, California, which is the County of Orange.

4.     I am informed and believe that Defendant VWGoA is a corporation organized and in existence under the laws of the State of New Jersey and registered to do business in the State of California. On information and belief, VWGoA conducts business in Orange County, including marketing, distributing, selling, and/or servicing vehicles through its authorized dealerships.

5.     Based on the facts set forth herein, this Court is a proper venue for the prosecution of Plaintiff's Cause of Action alleging violation of California's Consumers Legal Remedies Act because vehicles a substantial portion of the events giving rise to my claims occurred here.  Further, Defendant conducts business in the Central District of California and the County of Orange, California, including, but not limited to, marketing, distributing, selling, and/or servicing Class Vehicles to Class Members.

DECLARATION IN SUPPORT OF VENUE

1       6.     I declare under penalty of perjury under the laws of California and

2 the United States of America that the foregoing is true and correct.

3

4       Executed on June ⟨6/7/2019⟩_____, 2019 in ____Irvine____, California.

5

6

7              By:_____

                          Dominique Parrish

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Page 2

DECLARATION IN SUPPORT OF VENUE