Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Laura E. Goolsby (SBN 321721)
Laura.Goolsby@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Russell D. Paul (pro hac vice)
rpaul@bm.net
Amey J. Park (pro hac vice)
apark@bm.net
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone:    (215) 875-3000
Facsimile:    (215) 875-4604

Attorneys for Plaintiffs Dominique Parrish,
Ludwig Combrinck and Trine E. Utne

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIQUE PARRISH, LUDWIG COMBRINCK, and TRINE E. UTNE individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC. a Delaware limited liability company,<br><br>Defendant. | Case No.: 8:19-cv-01148-DSF-KESx<br><br>Hon. Dale S. Fischer<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:          January 24, 2022<br>Time:          1:30 p.m.<br>Place:         Courtroom 7D |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 24, 2022, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 7D of the above-captioned court, located at 350 West 1st Street, Los Angeles, California 90012, the Honorable Dale S. Fischer presiding, Plaintiffs Dominique Parrish, Ludwig Combrinck, and Trine E. Utne will, and hereby do, move this Court to:

1.      Preliminarily approve the settlement set forth in the Settlement Agreement, attached as Exhibit 1 to the Declaration of Tarek H. Zohdy;

2.      Conditionally certify the Settlement Class for settlement purposes;

3.      Approve the Parties' Plan for dissemination of the proposed Class Notice ("Notice Plan");

4.      Appoint Plaintiffs Dominique Parrish, Ludwig Combrinck, and Trine E. Utne as the Settlement Class Representatives;

5.      Appoint Capstone Law APC and Berger Montague PC as Settlement Class Counsel;

6.      Set a hearing date and briefing schedule for final settlement approval and Plaintiffs' fee and expense application.

This Motion, unopposed by Defendant Volkswagen Group of America, Inc., is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement; (3) the Declaration of Tarek H. Zohdy; (4) the Declaration of Russell D. Paul; (5) the Declaration of Bradley A. Winters; (6) the Settlement Agreement and attached exhibits thereto; (7) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (8) the records, pleadings, and papers filed in this action; and (5) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

1    Dated: November 22, 2021                   Respectfully submitted,

2
                                          By: /s/ Tarek H. Zohdy
3                                              Tarek H. Zohdy
                                               Cody R. Padgett
4                                              Laura E. Goolsby
                                               CAPSTONE LAW APC
5
                                               Russell D. Paul
6                                              Amey J. Park
                                               BERGER MONTAGUE PC
7
                                               Attorneys for Plaintiffs Dominique Parrish,
8                                              Ludwig Combrinck and Trine E. Utne

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................. 1

II.  FACTS AND PROCEDURE ........................................................................... 2

     A.   Overview of the Litigation and Settlement Negotiations ..................... 2

III. MATERIAL TERMS OF THE PROPOSED SETTLEMENT .............................. 4

     A.   2019 Volkswagen Jetta Settlement Class Vehicles ............................ 4

          1.   All Current Owners and Lessees – Free TCM Software Update
               and Installation of Damper Weight ............................................ 4

          2.   All Current and Former Owners and Lessees - Reimbursement for
               Past Unreimbursed Out-of-Pocket Repair Expenses ................. 5

     B.   Additional Settlement Benefits Applicable to Owners and Lessees of a
          Certain Subset of 2019 Volkswagen Jetta Vehicles Identified by
          Vehicle Identification Number (VIN) ................................................. 6

          1.   Warranty Extension for Current Owners and Lessees ............... 6

          2.   All Current and Former Owners and Lessees - Reimbursement for
               Past Unreimbursed Out-of-Pocket Repair Expenses ................. 7

     C.   2018, 2019 and 2020 Volkswagen Tiguan Settlement Class Vehicles ........... 9

          1.   Warranty Extension for Current Owners and Lessees ............... 9

          2.   All Current and Former Owners and Lessees - Reimbursement for
               Past Unreimbursed Repair Expenses ......................................... 9

     D.   Release of Claims/Liability ............................................................... 11

     E.   Claim Submission and Administration ............................................... 11

     F.   The Proposed Class Notice and Plan for Dissemination ("Notice Plan") ....... 12

     G.   Proposed Class Counsel Fees, Litigation Expenses, and Class
          Representative Service Awards ......................................................... 14

IV.  ARGUMENT .................................................................................................. 14

     A.   The Court Should Grant Preliminary Settlement Approval ............... 15

1.  The Settlement is Entitled to a Presumption of Fairness ......................... 17

2.  The Views of Experienced Counsel Should Be Accorded
    Substantial Weight .................................................................................... 17

3.  The Extent of Discovery Completed Supports Preliminary
    Approval ..................................................................................................... 18

4.  The Proposed Settlement Is Well Within the Range of
    Reasonableness ........................................................................................... 19

5.  Equitable Method of Allocating Relief to Class Members .................... 22

**B.**  Conditional Class Certification Is Appropriate for Settlement Purposes ........ 23

1.  The Proposed Class Meets the Requirements of Rule 23 ...................... 24

2.  The Proposed Class Is Sufficiently Numerous and Ascertainable .......... 24

3.  There Are Questions of Law and Fact that Are Common to the
    Class ............................................................................................................ 25

4.  Plaintiffs' Claims Are Typical of the Proposed Settlement Class .......... 26

5.  Plaintiffs and Plaintiffs' Counsel Will Adequately Represent the
    Interests of the Proposed Settlement Class ............................................. 27

6.  Common Issues Predominate Over Individual Issues ........................... 27

7.  A Class Settlement Is Superior to Other Available Means of
    Resolution ................................................................................................... 29

8.  The Proposed Notice to the Settlement Class ......................................... 29

**II.**  CONCLUSION ...................................................................................................... 32

1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aarons v. BMW of N. Am. LLC*,
 2014 WL 4090564 (C.D. Cal. Apr. 29, 2014) ...................................................22

*Allen v. Bedolla*,
 787 F.3d 1218 (9th Cir. 2015) ...........................................................................16

*Amchem Prods. v. Windsor*,
 521 U.S. 591 (1997)......................................................................21, 24, 28, 29

*Armstrong v. Davis*,
 275 F.3d 849 (9th Cir. 2001) .............................................................................26

*Briseno v. ConAgra Foods, Inc.*,
 844 F.3d 1121 (9th Cir. 2017) ...........................................................................25

*Browne v. American Honda Motor Co., Inc.*,
 2010 WL 9499072 (C.D. Cal. July 29, 2010) ...................................................26

*Chamberlan v. Ford Motor Co.*,
 223 F.R.D. 524 (N.D. Cal. 2004) .......................................................................26

*Cholakyan v. Mercedes-Benz USA, LLC*,
 281 F.R.D. 534 (C.D. Cal. 2012)........................................................................21

*Daffin v. Ford Motor Co.*,
 458 F.3d 549 (6th Cir. 2006) .............................................................................26

*Eisen v. Porsche*,
 2014 WL 439006 (C.D. Cal. Jan. 30, 2014)................................................18, 19

*Estrella v. Freedom Fin'l Network*,
 2010 WL 2231790 (N.D. Cal. June 2, 2010)......................................................25

*Grodzitsky v. Am. Honda Motor Co.*, No. 2-01142-SVW,
 2014 WL 718431(C.D. Cal. Feb. 19, 2014).......................................................21

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ........................................................25, 26, 27, 29

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)..................................................................17

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ....................................................16

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ...............................15, 21, 24, 28

*In re Nat'l Football* League *Players' Concussion Inj. Litig.*,
    961 F. Supp. 2d 708 (E.D. Pa. 2014) ......................................15

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ......................................................18

*In re Portal Software, Inc. Sec. Litig.*,
    2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ........................22

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) .................................................15

*In re Toys "R" Us-Del., Inc.* FACTA Litig.,
    295 F.R.D. 438 (C.D. Cal. 2014)........................................17, 22

*In re Volkswagen "Clean Diesel Mktg., Sales Pracs., & Prod. Liab*. Litig.",
    895 F.3d 597 (9th Cir. 2018) ...................................................27

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ...................................................20

*Lozano v. AT&T Wireless Services, Inc.*,
    504 F.3d 718 (9th Cir. 2007) ...................................................26

*Officers for Justice v. Civil Service Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ..............................................17, 19

*Parkinson v. Hyundai Motor Am.*,
    258 F.R.D. 580 (C.D. Cal. 2008).............................................26

*Patrick v. Volkswagen Group of America*,
    2021 WL 3616105 (C.D. Cal. March 10, 2021)........................31

*Rannis v. Recchia*,
    380 F. App'x. 646 (9th Cir. 2010) ...........................................31

*Rodriguez v. West Pub. Corp.*,
   563 F.3d 948 (9th Cir. 2009) .................................................................19, 20

*Ruch v. AM Retail Grp., Inc.*,
   2016 WL 1161453 (N.D. Cal. Mar. 24, 2016) ..........................................16

*Smith v. Cardinal Logistics Mgmt. Corp.*,
   2008 WL 4156364 (N.D. Cal. Sep. 5, 2008) ..............................................29

*Smith v. Ford Motor Co.*,
   749 F. Supp. 2d 980 (N.D. Cal. 2010) ........................................................21

*Stockinger v. Toyota Motor Sales, U.S.A., Inc.*,
   2020 WL 1289549 (C.D. Cal. Mar. 3, 2020) .............................................21

*Sullivan v. DB Invs. Inc.*,
   667 F.3d 273 (3d Cir. 2011) .......................................................................28

*Tyson Foods v. Bouaphakeo*,
   136 S. Ct. 1036 (2016)..........................................................................27, 28

*Vasquez v. Coast Valley Roofing, Inc.*,
   670 F. Supp. 2d 1114 (E.D. Cal. 2009) ......................................................25

*Wakefield v. Wells Fargo & Co.*,
   2014 WL 7240339 (N.D. Cal. Dec. 18, 2014) ...........................................28

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).....................................................................................25

*Wolin v. Jaguar Land Rover N. Am.*, LLC,
   617 F.3d 1168 (9th Cir. 2010) ....................................................................26

**Statutes**

28 U.S.C. § 1715........................................................................................14, 32

**Rules**

Fed. R. Civ. P. 23.........................................................................................2, 24

Fed. R. Civ. P. 23(a)(1)....................................................................................25

Fed. R. Civ. P. 23(a)(2)....................................................................................25

Fed. R. Civ. P. 23(a)(4)....................................................................................27

Fed. R. Civ. P. 23(b)(1), (2) or (3)................................................27

Fed. R. Civ. P. 23(c)(2)(B) ........................................................30

Fed. R. Civ. P. 23(e)(1)..............................................................29

Fed. R. Civ. P. 23(e)(2)(D)........................................................23

Rule 23(a) and (b)(3) ................................................................24

**Other Authorities**

3 Conte & Newberg, *Newberg on Class Actions*, § 7.20 (4th ed. 2002)...............15

Manual for Complex Litigation, § 21.632 ............................................24

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## I.     INTRODUCTION

Plaintiffs Dominique Parrish, Ludwig Combrinck, and Trine E. Utne ("Plaintiffs") respectfully seek preliminary approval of the Parties'[1] proposed Class Settlement Agreement ("Settlement") of this action applicable to a nationwide Settlement Class of U.S. current and former owners and lessees of 490,068 model year 2019 Volkswagen Jetta and model year 2018-2020 Volkswagen Tiguan vehicles. As discussed below, this Settlement, which affords substantial benefits to the Settlement Class, was the result of extensive arm's length negotiations of highly disputed claims by experienced class action counsel. Plaintiffs claim that the transmissions in the respective Settlement Class Vehicles contain a defect that could result in a rattling noise, a jerking/hesitation, and/or an oil leak. Plaintiffs have asserted claims under theories of, *inter alia*, breach of warranty and statutory and common law fraud. Defendant Volkswagen Group of America, Inc. ("VWGoA") denies these allegations and maintains that the subject vehicles' transmissions are not defective, were properly designed, manufactured, marketed, distributed and sold, and function properly. VWGoA further maintains that no express or implied warranties were breached, and no consumer statutes or common law duties were violated.

The proposed Class Settlement was the culmination of extensive arms-length negotiations following significant motion practice, and occurred over many months during which discovery was also exchanged. The Class Settlement was ultimately reached with the assistance of a respected neutral Mediator who is highly experienced in class action settlements. The Settlement,[2] described more fully below, provides Settlement Class Members with immediate and valuable relief that directly addresses issues applicable to respective categies of the Settlement Class Vehicles, it is fair,

---

[1] "Parties" is defined as Plaintiffs Dominique Parrish, Ludwig Combrinck, and Trine E. Utne, and Defendant Volkswagen Group of America, Inc.

[2] Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined by the Settlement Agreement, attached as Exhibit 1 to the Declaration of Tarek H. Zohdy ("Zohdy Decl.").

reasonable, and adequate, and it complies in all respects with Fed. R. Civ. P. 23 ("Rule 23"). The Settlement successfully addresses the alleged transmission issues going forward while also providing a reimbursement program for Settlement Class Members to recoup paid out-of-pocket expenses for qualifying covered repairs that were incurred in the past.

Plaintiffs accordingly request that this Court review their negotiated Settlement Agreement, attached as Exhibit 1 to the accompanying Declaration of Tarek H. Zohdy, and enter an order:  (1) granting preliminary approval of the Settlement; (2) conditionally certifying the proposed Settlement Class for settlement purposes; (3) conditionally appointing Plaintiffs as the Settlement Class Representatives and Plaintiffs' Counsel, Capstone Law APC, and Berger Montague PC, as Settlement Class Counsel; (4) approving the Parties' proposed Class Notice form and plan for disseminating the Class Notice (the "Notice Plan"); (5) conditionally appointing Rust Consulting, Inc., as the Settlement Claim Administrator; (6) setting deadlines for the filing of any objections to, or requests for exclusion from the Settlement and other submissions in connection with the Settlement approval process; and (7) setting a hearing date and briefing schedule for Final Approval of the Settlement and Plaintiffs' application for service awards and attorneys' fees and expenses.

## II.     FACTS AND PROCEDURE

### A.     Overview of the Litigation and Settlement Negotiations

Plaintiff Dominique  Parrish, a resident of Irvine, California, is the owner of a 2019 Volkswagen Jetta who complained of a rattling noise in the transmission, which he claims was not repaired by a VW dealer. Plaintiff Ludwig Combrinck, a resident of Livermore, California, leased a new 2018 Volkswagen Tiguan and complained of a transmission oil leak, which had to be repaired under warranty, and a "hard" shifting from first to second gear, which he claims was not repaired. Plaintiff Trine Utne, a resident of Salt Lake City, Utah, leased a new 2019 Volkswagen Tiguan and complained of transmission hesitation issues, which she asserts were not repaired.

1    Plaintiffs filed their initial complaint on June 10, 2019, alleging that the
2    transmissions in their vehicles were defective and asserting claims against VWGoA for,
3    *inter alia*, alleged violation of the consumer statutes of their states of residence, including
4    the Consumers Legal Remedies Act (CLRA), Unfair Competition Law (UCL), breach
5    of warranty under the Song-Beverly Warranty Act and the Magnuson-Moss Warranty
6    Act, and unjust enrichment. (Zohdy Decl. ¶¶ 2-3.)

7    Plaintiffs filed a First Amended Class Action Complaint on July 3, 2019. (*Id.* at ¶
8    4.) After several amendments to the Complaint [ECF 18, 35, 43, 72], Motions to
9    Dismiss the amended complaints [ECF 36, 47], and a Decision and Order dated May 7,
10   2020 granting in part and denying in part Defendant's Motion to Dismiss the Third
11   Amended Complaint [ECF 71], Plaintiffs filed their operative Fourth Amended Class
12   Action Complaint on June 3, 2020 [ECF 72]. (*Id.* at ¶¶ 5-10.) VWGoA filed an Answer
13   to the Fourth Amended Class Action Complaint on June 17, 2020 [ECF 73], disputing
14   the material allegations and claims and asserting numerous substantial defenses to
15   Plaintiffs' alegations and claims.

16   Following the Parties' negotiation and filing of a Joint Rule 26(f) Report [ECF
17   59] and negotiation of a stipulated protective order, the exchange of discovery and
18   evidence took place. The Parties conferred regularly over the subsequent months, and
19   simultaneous with the discovery and litigation activities, the Parties began negotiating a
20   potential Class Settlement. After exchanges of information and months of vigorous,
21   arm's length settlement negotiations which did not result in agreement on all settlement
22   terms, the Parties participated in a mediation on March 8, 2021, before Bradley A.
23   Winters, Esq., a respected and very experienced neutral class action Mediator with
24   JAMS. (Zohdy Decl. at ¶¶ 11-12.) With Mr. Winters' guidance and efforts, the Parties
25   were eventually able to negotiate a class settlement of this action. (*Id.* at ¶ 13.) The terms
26   of the Settlement are set forth in detail in the Settlement Agreement ("S.A.") submitted
27   herewith for the Court's preliminary approval. (*Id.* at ¶ 14, Ex. 1.) At all times, the
28   Parties' negotiations were adversarial and non-collusive (*id.*), and the Settlement

constitutes a fair, adequate, and reasonable compromise of the claims at issue. (*Id.* at ¶¶ 21-24.)

## III.   MATERIAL TERMS OF THE PROPOSED SETTLEMENT

Plaintiffs have claimed that the transmissions of the Settlement Class Vehicles are defective. Through detailed investigation, analysis, and information exchanged in this action, Class Counsel have determined that three alleged separate and distinct transmission issues exist, each relative to a certain segment of the Settlement Class Vehicles, to which the claims relate:  (1) certain model year 2019 Volkswagen Jetta Settlement Class Vehicles might potentially experience a transmission rattling noise, (2) a smaller subset of those 2019 Volkswagen Jetta vehicles might also potentially exhibit a transmission oil leak from the cooler seal rings (S.A., ¶ I.G., I.H.), and (3) model year 2018, 2019 and 2020 Volkswagen Tiguan Settlement Class Vehicles might potentially experience transmission hesitation or jerking on certain occasions (S.A., ¶ I.I.). Having narrowed the issues, the Parties were able to negotiate and fashion an appropriate Class Settlement that directly addresses these transmission issues and provides Settlement Class Members with substantial benefits with respect to each of these potential issues in the respective Settlement Class Vehicle categories. As detailed below, the Settlement provides the multiple benefits which are broken down by Settlement Class Vehicles applicable to each category. The settlement benefits are fair, reasonable, and adequate and also take into account and complement certain prior actions that were taken by VWGoA to address these distinct potential issues:

**A.     2019 Volkswagen Jetta Settlement Class Vehicles**

**Settlement Benefits Applicable to All 2019 Volkswagen Jetta Settlement Class Vehicles – Alleged Transmission Rattling Noise**

**1.     All Current Owners and Lessees – Free TCM Software Update and Installation of Damper Weight**

Effective on the Notice Date, VWGoA will issue a Technical Service Bulletin to its authorized dealers providing that each Class Member who currently owns or leases a

2019 Volkswagen Jetta Settlement Class Vehicle and presents the vehicle to an authorized Volkswagen dealer with a diagnosed and confirmed transmission rattling noise may to obtain an update of the vehicle's transmission control module software and installation of a damper weight on the drive shaft, free of charge. (*See* S.A., II.A.1.a.) This will be made available up to one year after the Notice Date (*id.*) and will address the transmission rattling noise issue that is one of the subjects of this case.

### 2.   All Current and Former Owners and Lessees - Reimbursement for Past Unreimbursed Out-of-Pocket Repair Expenses

In addition, all Settlement Class Members who are/were current or former owners or lessees of a 2019 Volkswagen Jetta Settlement Class Vehicle may be entitled to submit a claim for reimbursement of certain unreimbursed out-of-pocket expenses that were incurred and paid, prior to the Notice Date and within 72,000-miles from the vehicle's In-Service Date (the mileage limitation of the vehicle's original New Vehicle Limited Warranty), for a Past Covered Transmission Rattling Noise Repair (a repair to address a diagnosed transmission rattling noise in a 2019 Volkswagen Jetta Settlement Class Vehicle). (*See* S.A., II.A.1.b.)

Reimbursement may be provided of the full amount (100%) of the paid invoice amount (parts and labor) for the Past Covered Transmission Rattling Noise Repair, subject to certain proof and other requirements set forth in the Claim Form, and limitations discussed in Section III of the Class Notice. (*Id.*)

If the past repair for which reimbursement is sought was performed by a service center or facility that is not an authorized Volkswagen dealer, then the Settlement Class Member must also submit documentation (such as a written estimate or invoice), or if documents are not available after a good-faith effort to obtain them, provide a declaration[3] signed under penalty of perjury, demonstrating that prior to that repair, they

---

[3] The pre-printed declaration forms are clear and straightforward, and, along with the Claim Form, will be included in the Class Notice mailing. In addition, they will be made available on the settlement website.

first attempted to have the repair performed by an authorized Volkswagen dealer under the warranty, but the dealer either declined or was unable to perform the repair free of charge. (*Id.*) The Parties believe that is fair and reasonable, since the vehicle at that time would have still been covered under its original express warranty, and therefore the Settlement Class Member would have been entitled to a free repair by a Volkswagen dealer pursuant to the warranty.

In addition, reimbursement for a Past Covered Transmission Rattling Noise Repair performed by a service entity or facility that is not an authorized Volkswagen dealer shall not exceed a maximum reimbursement amount of $3,500. (*Id.*)

**B.      Additional Settlement Benefits Applicable to Owners and Lessees of a Certain Subset of 2019 Volkswagen Jetta Vehicles Identified by Vehicle Identification Number (VIN)**

**1.      Warranty Extension for Current Owners and Lessees**

Effective on the Notice Date, VWGoA will extend its New Vehicle Limited Warranties applicable to certain specified 2019 Volkswagen Jetta Settlement Class Vehicles whose Vehicle Identification Numbers (VINs) are listed in Exhibit A to the Settlement Agreement, to cover repairs by an authorized Volkswagen dealer to address a diagnosed and confirmed transmission oil leak caused by the transmission oil cooler seal rings (or "O-rings") on the transmission oil cooler of the Settlement Class Vehicle performed during a period of 12-months or 12,000-miles (whichever occurs first) from the date that the Settlement Class Vehicle's original New Vehicle Limited Warranty period applicable to the transmission expires. The Warranty Extension is conditioned upon either (i) Service Action 38C5 (entitled "Transmission Oil Cooler Seals", issued by VWGoA on March 25, 2020) having been performed on the vehicle prior to said repair, or (ii) the Settlement Class Member providing a declaration (that VWGoA's records do not otherwise contradict), attesting that he/she/it was not previously notified of the availability of Service Action 38C5, and that he/she/it had the Service Action performed

on that vehicle within thirty (30) days after the Notice Date. (*See* S.A., II.A.2.a.)[4]

The settlement website will contain a VIN Lookup Portal which will enable Settlement Class Members to verify, by their vehicle's VIN, whether their vehicle was equipped with the applicable O-rings and is covered by this warranty extension. (*Id.*)

The warranty extension is subject to the terms and conditions of the Settlement Class Vehicle's original New Vehicle Limited Warranty and the limitations set forth in Section III of the Class Notice. (*Id.*) Additionally, the warranty extension is transferable to subsequent owners to the extent it has not expired. (*Id.*)

### 2. All Current and Former Owners and Lessees - Reimbursement for Past Unreimbursed Out-of-Pocket Repair Expenses

In addition, any current or past owner/lessee of the same specified 2019 Volkswagen Jetta Settlement Class Vehicles (identified by VIN in Exhibit A to the Settlement Agreement) may submit a claim for reimbursement of certain past unreimbursed out-of-pocket expenses that were incurred and paid prior to the Notice Date, and during a period of 12-months or 12,000-miles (whichever occurred first) from the date that the Settlement Class Vehicle's original New Vehicle Limited Warranty period applicable to the transmission expired, for a Past Covered Transmission Oil Leak Repair (a repair to address a diagnosed transmission oil leak which involved replacement of the O-rings on the transmission oil cooler). (*See* S.A., II.A.2.b.)

Reimbursement may be provided of the full amount (100%) of the paid invoice amount (parts and labor) for the Past Covered Transmission Oil Leak Repair, subject to certain proof and other requirements set forth in the Claim Form, and limitations

---

[4] The reason for this condition is that on March 25, 2020, VWGoA had voluntarily issued a Service Action (38C5), applicable to these specific 2019 Jetta Settlement Class Members, which directed the same Settlement Class Members to have the transmission's O-rings (the source of the potential oil leak) to be replaced with newly designed O-rings by an authorized Volkswagen dealer free of charge. *See* S.A., Exhibit C. This is fair and reasonable, since, as of March 25, 2020, the applicable Settlement Class Members were supposed to have availed themselves of this free Service Action O-ring replacement which would prevent a transmission oil leak in the subject vehicle.

discussed in Section III of the Class Notice.

This reimbursement program properly takes into account that, as explained above, Service Action 38C5 was issued by VWGoA on March 25, 2020, and directed owners/lessees of these Settlement Class Vehicles to have the O-rings replaced by an authorized Volkswagen dealer free of charge. *See* S.A., Exhibit C. Thus, for any Past Covered Transmission Oil Leak Repair that was performed prior to July 1, 2020— approximately three months after Service Action 38C5 was issued (a very fair and reasonable leeway period), the Settlement Class Member shall be entitled to receive reimbursement of the full amount (100%) of the paid invoice cost of the Past Covered Transmission Oil Leak Repair (parts and labor).

If, however, the Past Covered Transmission Oil Leak Repair was performed on or after July 1, 2020, then in order to qualify for reimbursement, the Settlement Class Member must also submit either (a) proof that Service Action 38C5 was performed on the vehicle prior to that repair, or (b) if Service Action 38C5 was not performed on the vehicle, a declaration attesting, under penalty of perjury, that he/she/it was not notified of that Service Action prior to the repair and VWGoA's records do not show otherwise. (*Id.*)

If the Past Covered Transmission Oil Leak Repair was performed by a service entity or facility that is not an authorized Volkswagen dealer, then the Settlement Class Member must also submit documentation (such as a written estimate or invoice), or if documents are not available after a good-faith effort to obtain them, a declaration signed under penalty of perjury confirming that prior to the repair the Settlement Class Member first attempted to have it performed by an authorized Volkswagen dealer, but the dealer declined or was unable to perform the repair free of charge under the existing warranty. (*Id.*) In addition, reimbursement for a Past Covered Transmission Oil Leak Repair performed by a service entity or facility that is not an authorized Volkswagen dealer shall not exceed a maximum reimbursement amount (parts and labor) of $500. (*Id.*)

1

2

**C.    2018, 2019 and 2020 Volkswagen Tiguan Settlement Class Vehicles**

**1.    Warranty Extension for Current Owners and Lessees**

Effective on the Notice Date, VWGoA will extend its New Vehicle Limited Warranties applicable to 2018, 2019, and 2020 Volkswagen Tiguan Settlement Class Vehicles to cover repairs, by an authorized Volkswagen dealer, to address a diagnosed condition of transmission hesitation or jerking performed during a period of 12-months or 12,000-miles (whichever occurs first) from the date that said Settlement Class Vehicle's original New Vehicle Limited Warranty period applicable to the transmission expires, provided that Recall 24GB (entitled "Engine and Transmission Control Module (ECM/TCM" issued by VWGoA on September 16, 2020) was previously performed on the applicable vehicle prior to the extended warranty repair.[5] (*See* S.A., II.B.1.)

This warranty extension is subject to the terms and conditions of the vehicle's original New Vehicle Limited Warranty and the limitations set forth in Section III of the Class Notice. (*Id.*) This extended warranty shall be transferable to subsequent owners to the extent it has not expired. (*Id.*)

**2.    All Current and Former Owners and Lessees - Reimbursement for Past Unreimbursed Repair Expenses**

In addition, Settlement Class Members may also be entitled to submit a claim for reimbursement of certain unreimbursed out-of-pocket expenses that were incurred and paid, prior to the Notice Date and during a period of 12-months or 12,000 miles (whichever occurred first) from the date that the settlement Class Vehicle's original New Vehicle Limited Warranty period applicable to the transmission expired, for a Past

---

[5] The Parties believe that this is fair and reasonable because, on September 16, 2020, VWGoA had voluntarily issued a Recall (24GB entitled "Engine and Transmission Control Module (ECM/TCM)" applicable to the 2018-2020 Volkswagen Tiguan Settlement Class Vehicles which, among other things, provided for owners and lessees of these vehicles to have a free software update performed on the TCM, by an authorized Volkswagen dealer, to improve driveability. *See* S.A., Exhibit D. Performance of that Recall would have addressed the alleged potential transmission hesitation/jerking issue regarding those vehicles, so the same goes for the reimbursement for past repair remedy, discussed *infra*.

1    Covered Transmission Hesitation/Jerking Repair (a repair to address a diagnosed

2    condition of transmission hesitation or transmission jerking in a 2018, 2019 or 2020

3    Volkswagen Tiguan Settlement Class Vehicle).

4          If the Past Covered Transmission Hesitation/Jerking Repair was performed prior

5    to December 1, 2020 (2-1/2 months after the aforementioned Recall 24GB [which

6    addressed this issue] was instituted), then reimbursement may be provided of the full

7    amount (100%) of the paid invoice amount (parts and labor) for the Past Covered

8    Transmission Hesitation/Jerking Repair, subject to certain proof and other requirements

9    set forth in the Claim Form, and limitations discussed in Section III of the Class Notice.

10   If said repair was performed on or after December 1, 2020, then the Settlement Class

11   Member may still be entitled to said 100% reimbursement if either: (i) Recall 24GB was,

12   in fact, performed on the Settlement Class Vehicle prior to the repair, or (ii) the

13   Settlement Class Member submits a declaration (not otherwise contradicted by

14   VWGoA's records) showing that he/she/it was not notified of that Recall prior to said

15   repair (*See* S.A., II.B.2).

16         If the Past Covered Transmission Hesitation/Jerking Repair was performed by a

17   service entity or facility that is not an authorized Volkswagen dealer, then the Settlement

18   Class Member must also submit documentation (such as a written estimate or invoice),

19   or if documents are not available after a good-faith effort to obtain them, a declaration

20   signed under penalty of perjury, confirming that prior to the repair, he/she/it first

21   attempted to have the repair performed by an authorized Volkswagen dealer, but the

22   dealer declined or was unable to perform the repair free of charge under the existing

23   warranty. (*Id.*)

24         In addition, reimbursement for a Past Covered Transmission Hesitation/Jerking

25   Repair performed by a service entity or facility that is not an authorized Volkswagen

26   dealer shall not exceed a maximum reimbursement amount (parts and labor) of $3,000.

27   (*Id.*)

28         The Settlement provides a reasonable period of within 75 days after the Notice

Date for Class Members to submit claims for reimbursement to the Claim Administrator. S.A. ¶ II.D(1), and Ex. A thereto (Claim Form). As discussed *infra*, the Class Notice contains robust information about the case, the proposed Settlement, the Class Members' rights and options, applicable deadlines, how to call or email the Claim Administrator with any questions about the Settlement or requests for assistance, and when and how to submit a reimbursement claim and the information and documentation needed to do so. In addition, the Claim Form, which will accompany the mailing of the Class Notice, sets forth in detail exactly what information and documentation is needed for a valid claim for reimbursement.

### D.    Release of Claims/Liability

In consideration of the Settlement benefits, VWGoA and its related entities and affiliates (the "Released Parties," as defined in S.A. ¶ I.R.) will receive a release of claims and potential claims related to the transmissions in the Settlement Class Vehicles that are the subject of this litigation and Settlement, including the claims that were or could have been asserted in the litigation (the "Released Claims," as defined in S.A. ¶ I.Q.). The scope of the release properly reflects the issues, allegations and claims in this case, and specifically excludes claims for personal injury and property damage (other than damage to the Settlement Class Vehicle itself).

### E.    Claim Submission and Administration

The Parties agreed to retain Rust Consulting, Inc., as the Settlement Claim Administrator. S.A. ¶ I.B. The Claim Administrator will carry out the Notice Plan (discussed below), disseminate the CAFA notice, administer any requests for exclusion, and administer the Claims process including the review and determination of reimbursement claims, and distribution of payments to eligible Claimants whose claims are complete and have been approved under the Settlement terms. (*Id.* ¶ III.A., III.B., IV.) Pursuant to the Settlement, VWGoA will pay all administrative costs (*Id.* ¶ III.A.) separate and apart from any benefits to which the Settlement Class Members may be entitled. Thus, none of the Settlement Administration costs will be borne by the Class

1    Members in any way.

2        The Settlement also provides for a fair, equitable, and straightforward claims

3    process for Settlement Class Members. For each complete claim that is approved, the

4    Claim Administrator will mail a reimbursement check to the Settlement Class Member

5    within the later of 100 days after submission of the completed Claim, or 100 days after

6    the Effective Date of the Settlement. (*Id.* ¶ III.B.) Significantly, the Settlement provides

7    that if a claim and/or its supporting documentation is incomplete or deficient, the Claim

8    Administrator will mail the Settlement Class Member a letter or notice outlining the

9    deficiencies and affording a 30-day period to cure them. (*Id.*) In addition, any Settlement

10   Class Member that disagrees with the ultimate denial of his/her/its/their reimbursement

11   claim, in whole or in part, may request an "attorney review" of that decision within 14

12   days of such denial. (*Id.*, ¶ II.C.(5).) If an attorney review is requested, Class Counsel and

13   Defense Counsel will confer and make good faith efforts to resolve the disputed denial.

14   (*Id.*)

15       Finally, as discussed above, the Class Notice, its accompanying Claim Form, and

16   the settlement website all provide the necessary details, including how and by when

17   reimbursement claim must be submitted, what information and documentary proof is

18   required for a valid claim, and how to contact the Claim Administrator, or Class Counsel,

19   with any questions or requests for assistance with respect to a claim. Indeed, the Class

20   Notice and settlement website provide the mailing address, the email address and a toll-

21   free telephone number for Class Members to contact the Claim Administrator.

22       **F.      The Proposed Class Notice and Plan for Dissemination ("Notice**

23            **Plan")**

24       The Settlement Agreement contains an effective Notice Plan to be paid for by

25   solely by VWGoA. S.A. ¶ IV. Class Notice will be mailed to Settlement Class Members

26   via first class mail within 120 days after entry of the Court's Order preliminarily

27   approving this proposed Settlement. Settlement Class Members will be located based on

28   the Settlement Class Vehicles' VIN (vehicle identification) numbers and using the

services of IHS/Polk or Experian. (*Id.* ¶ IV.B.2.) These established services obtain vehicle ownership histories through state title and registration records, thereby identifying the names and addresses of record of the Settlement Class Members.[6]  In addition, after the Class Notice is mailed, for any individual mailed Notice that is returned as undeliverable, the Claim Administrator will re-mail to any provided forwarding address, and for any undeliverable notice packets where no forwarding address is provided, the Claim Administrator will perform an advanced address search (e.g., a skip trace) and re-mail any undeliverable Class Notice packets to any new and current addresses located. (*Id.* ¶ IV.B.3.)

In addition to the mailing, the Claim Administrator will, with input from counsel for both Parties, establish a dedicated Settlement website that will include details regarding the lawsuit, the Settlement and its benefits, and the Settlement Class Members' legal rights and options including objecting to or requesting to be excluded from the Settlement and/or not doing anything; instructions on how and when to submit a claim for reimbursement; instructions on how to contact the Claim Administrator by e-mail, mail or (toll-free) telephone; copies of the Class Notice, Claim Form, Settlement Agreement, Motions and Orders relating to the Preliminary and Final Approval processes and determinations, and important submissions and documents relating thereto; important dates pertaining to the Settlement including the deadline to opt-out of or object to the Settlement, the deadline to submit a claim for reimbursement, and the date, place and time of the Final Fairness Hearing; and answers to Frequently Asked Questions (FAQs). (*Id.* ¶ IV.B.5.)

The Class Notice (Ex. E to Settlement Agreement) is very detailed and more than complies with Rule 23(c)(2)(B). It "clearly and concisely states in plain, easily

---

[6] The 120-day time period for mailing of the Class Noice is needed to obtain the vehicle ownership and history records from the DMVs and/or state agencies of the 50 states and Puerto Rico, which typically takes a long time to obtain, and for the Claim Administrator to identify the names and last known addresses of the Settlement Class Member to whom the Class Notice will be mailed.

understood language" the nature of the action; the Settlement Class definition; the class claims, issues and/or defendant's positions; the Settlement terms and benefits available under the Settlement; the claim submission process including details and instructions regarding how and when to submit a Claim for reimbursement and the required proof/documentation for a Claim; the release of claims under the Settlement; the manner of and deadline by which Settlement Class Members may object to the Settlement, Class Counsel's requested fee/expense award, and/or the Plaintiffs' requested service awards; the manner of and deadline by which a Settlement Class Member may request to be excluded from the Settlement; the binding effect of the Settlement and release upon Settlement Class Members that do not timely and properly exclude themselves from the Settlement; the procedure by which Settlement Class Members may appear at the final fairness hearing individually and/or through counsel; the settlement website address; how to contact the Claim Administrator (through the dedicated toll-free number, email or by mail) with any questions about the settlement or requests for assistance, the indentities of and contact information for Class Counsel; and other important information about the Settlement and the Settlement Class Members' rights. *See* S.A., Ex. E.

Pursuant to 28 U.S.C. § 1715, the Class Action Fairness Act of 2005, the Claim Administrator will also provide timely notice to the U.S. Attorney General and the applicable State Attorneys General ("CAFA Notice") so that they may review the proposed Settlement and raise any comments or concerns to the Court's attention prior to final approval. S.A. ¶ IV.A.

**G.    Proposed Class Counsel Fees, Litigation Expenses, and Class Representative Service Awards**

The requested Class Counsel Fees and Expenses and Class Representative Service Awards will be the subject of a separate fee motion, to be filed pursuant to the schedule set forth in the Preliminary Approval Order.

**IV.   ARGUMENT**

This is a strong settlement, with robust relief for the Class that will effectively

1    address the issues in this action. It is the product of extensive arm's length negotiations,

2    with the assistance of a Mediator, between skilled and experienced class action counsel

3    regarding vigorously disputed claims. As set forth below, the Court should grant

4    preliminary approval of the class settlement, conditionally certify the settlement class for

5    settlement purposes, and approve and direct the implementation of the Parties' Notice

6    Plan, as all applicable criteria for same are readily met.

        **A.      The Court Should Grant Preliminary Settlement Approval**

8             Under Rule 23(e), a proposed class settlement should be approved when it is fair,

9    reasonable, and adequate after considering whether: (a) the class representatives and

10   class counsel have adequately represented the class; (b) the proposal was negotiated at

11   arm's length; (c) the relief provided for the class is adequate, taking into account: (i) the

12   costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method

13   of distributing relief to the class, including the method of processing class-member

14   claims; and (iii) any agreement required to be identified under Rule 23(e)(3); and, (d) the

15   proposal treats class members equitably relative to each other.

16            In the Ninth Circuit, "there is a strong judicial policy that favors settlements,

17   particularly where complex class action litigation is concerned." *In re Hyundai & Kia*

18   *Fuel Econ. Litig.*, 926 F.3d 539, 556, 568 (9th Cir. 2019) (en banc); *In re Syncor ERISA*

19   *Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). For preliminary approval, the Court

20   evaluates whether the settlement is within the "range of reasonableness," and whether

21   notice to the class and the scheduling of a final approval hearing should be ordered. *See*

22   *generally,* 3 Conte & Newberg, *Newberg on Class Actions*, § 7.20 (4th ed. 2002). "At

23   the preliminary approval stage, the bar to meet the 'fair, reasonable and adequate'

24   standard is lowered." *In re Nat'l Football* League *Players' Concussion Inj. Litig.*, 961 F.

25   Supp. 2d 708, 714 (E.D. Pa. 2014) (The Court need only review the parties' proposed

26   settlement to determine whether it is within the permissible "range of possible judicial

27   approval" and thus, whether the notice to the class and the scheduling of the formal

28   fairness hearing is appropriate. Newberg, § 11:25).

Preliminary approval should be granted if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Ruch v. AM Retail Grp., Inc.*, 2016 WL 1161453, at *7 (N.D. Cal. Mar. 24, 2016) (quoting *In re Tableware Antitrust Litig.*, 484. F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). All of the criteria for preliminary approval are met here.

The instant Settlement, reached with the assistance of respected third-party Mediator Bradley A. Winters, Esq., of JAMS, is clearly not the product of collusion. (*See* Declaration of Bradley A. Winters submitted herewith ["Winters Decl."], ¶9.) Indeed, there is no collusion unless it is demonstrated "that class counsel have allowed pursuit of their own self-interests…to infect the negotiations," *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015); *see also In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011), and that has clearly not occurred in this case. Moreover, while the Parties have agreed to a maximum "clear sailing" counsel fee/expenses amount (which is ultimately subject to the Court's determination after class counsel's fee motion is filed), there was no discussion of counsel fees, expenses, or of any class representative service awards until after the many months of settlement negotiations and the ultimate agreement was reached with respect to the material terms of this Class Settlement. The settlement negotiations were at all times, including during the Mediation, arduous, adversarial, and conducted at arm's length. (*See* Winters Decl. at ¶¶9, 10.)

In addition, counsel for both sides are very skilled and experienced class action counsel who were aptly able to evaluate the risks of proceeding through litigation and trial of this action, including the risks of non-recovery or substantially diminished recovery, denial of class certification, summary judgment, and a defense verdict at trial and/or as a result of any appeals. The Settlement here affords substantial benefits to the Settlement Class without incurring those risks or the significant delays in recovery that would result from continued litigation through trial and appeals.

Lastly, aside from the "clear sailing" provision, none of the *Bluetooth* Factors are present here. Plaintiffs' Counsel do not seek a disproportionate share of fees and there is no "reverter" of unclaimed funds to VWGoA, as the Settlement does not provide for the establishment of a common fund. Indeed, the payment of counsel fees does not reduce or in any way affect the benefits afforded the Settlement Class herein. And, the settlement was negotiated at arm's-length and after mediation. Further, by agreeing to resolve counsel fees amicably, the Parties averted the potential "second major litigation" on attorneys' fees that Courts disfavor. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation.").

### 1. The Settlement is Entitled to a Presumption of Fairness

In reviewing what is "otherwise a private consensual agreement negotiated between the parties to a lawsuit," the court's scrutiny should be "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). A non-collusive settlement, negotiated by experienced class counsel with the involvement of a respected mediator, is entitled to "a presumption of fairness." *In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014). The proposed Settlement is the product of many months of negotiations between counsel and mediation before respected mediator Bradley A. Winters. Based on these factors, the Settlement is entitled to a presumption of fairness. *See id.* (finding a presumption of fairness where the settlement was reached following a mediation).

### 2. The Views of Experienced Counsel Should Be Accorded Substantial Weight

The fact that sophisticated parties with experienced counsel have agreed to settle their dispute should be given considerable weight by courts, since "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly

1  reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47

2  F.3d 373, 378 (9th Cir. 1995). Here, the Parties achieved a settlement after a thorough

3  analysis of relevant documents and data and the strengths, weaknesses, and potential

4  risks regarding the Parties' respective claims and defenses. The expectations of all

5  Parties are embodied by the Settlement, which, as set forth above, is non-collusive, being

6  the product of arms'-length negotiations and finalized with the assistance of an

7  experienced mediator. Plaintiffs and the putative class were, at all times, represented by

8  experienced class action counsel possessing significant experience in automotive defect

9  and class action matters. (*See, e.g.*, Zohdy Decl. ¶¶ 25-28; Declaration of Russell D. Paul

10  ["Paul Decl."] ¶¶ 4-6.) Likewise, VWGoA's counsel, Herzfeld & Rubin, P.C., is a

11  renowned defense firm with significant experience in automotive class action litigation.

12  The Parties' recommendation to approve this Settlement should therefore "be given

13  great weight." *Eisen v. Porsche*, 2014 WL 439006, at *5 (C.D. Cal. Jan. 30, 2014)

14  (crediting the experience and views of counsel in approving a settlement resolving

15  automotive defect allegations).

### 3.      The Extent of Discovery Completed Supports Preliminary Approval

18        Both before and after the action was filed, Plaintiffs thoroughly investigated and

19  researched their claims, which allowed Plaintiffs' Counsel to better evaluate both the

20  design and functionality of the subject transmissions and VWGoA's representations.

21  (Zohdy Decl. ¶¶ 15-21.) Among other tasks, Plaintiffs fielded numerous inquiries from

22  putative Class Members and investigated many of their reported claims. (*Id.*) Plaintiffs

23  also researched publicly available materials as well as consumer complaints and

24  discussions of transmission-related problems in articles and forums online, in addition to

25  various manuals and technical service bulletins ("TSBs") discussing the alleged defect.

26  (*Id.*) Finally, they conducted research into the various causes of actions and other similar

27  automotive actions. (*Id.*)

28        As to the discovery, in response to Plaintiffs' written discovery efforts, Plaintiffs

received approximately 1,500 documents consisting of thousands of pages of relevant information, including spreadsheets with thousands of rows of data, owners' manuals, maintenance and warranty manuals, internal VWGoA investigation reports, Technical Service Bulletins, field reports, warranty data, etc. (*Id.*) Informal information was also provided by Defendant. All of this discovery and information was thoroughly and meticulously reviewed and analyzed by Class Counsel (*Id.*), enabling us to accurately assess the issues and potential claims in this matter and the strengths and weaknesses of the Parties' respective positions. (*Id.*) In addition, over the course of litigation, Plaintiffs responded to numerous Class Members who contacted Class Counsel to report issues with their Class Vehicles and seek relief. (*Id.*) Class Counsel also conducted detailed interviews with Class Members regarding their pre-purchase research, their purchasing decisions, and their repair histories, and Class Counsel developed a plan for litigation and settlement based in part on Class Members' reported experiences with their Class Vehicles and with VWGoA dealers. (*Id.*)

By engaging in a thorough investigation and evaluation of Plaintiffs' claims, Class Counsel can opine that this Settlement, for the consideration and on the terms set forth in the Settlement Agreement, is under all of the pertinent considerations, fair, reasonable, and adequate, and worthy of preliminary approval herein. (Zohdy Decl. ¶ 21; Paul Decl. ¶ 13.)

### 4. The Proposed Settlement Is Well Within the Range of Reasonableness

The proposed Settlement is well within the range of reasonableness, particularly when considering the risks of prosecuting the action. In its evaluation, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotation omitted). Thus, there is "no single formula" to be applied, but the court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering the plaintiffs' likelihood of recovery. *Rodriguez v. West Pub.*

1   *Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). And this Circuit expressly rejected any

2   requirement that the settling parties value maximum damages that can be obtained at

3   trial, as that figure would be inherently speculative. *Lane v. Facebook, Inc.*, 696 F.3d

4   811, 818 (9th Cir. 2012) ("[N]ot only would such a requirement be onerous, it would

5   often be impossible... [since] the amount of damages of a given plaintiff (or class of

6   plaintiffs) has suffered in a question of fact that must be proved at trial.").

7        This Settlement offers substantial benefits to Class Members, including warranty

8   extensions, reimbursement for out-of-pocket costs, and a free software upgrade for the

9   relevant transmission control modules. When weighed against the risk of further

10  litigation, the Settlement clearly falls within the range of reasonableness. To be sure,

11  while Plaintiffs believe that their case is strong on the merits, VWGoA has raised a

12  number of substantive defenses that present serious risks to Plaintiffs' case. These

13  defenses include, among others, that the subject vehicles' transmissions are not defective

14  under relevant legal standards, that no warranties were breached nor statutes violated,

15  and that issues that certain Class members may have experienced were rectified through

16  the voluntary issuance of a Service Action. In addition, Defendant maintains that this

17  action is not suited for class certification outside of a settlement because of, *inter alia*, the

18  many predominating individual issues as to liability and damages such as each putative

19  class member's purchase or leasing decision-making; what information, if any, was

20  viewed and/or relied upon by each putative class member prior to purchase or lease, and

21  the inherently individualized issues concerning each putative class member and subject

22  vehicle such as the condition of each putative class vehicle, each owner's/lessee's

23  maintenance of his/her/its vehicle and transmission, each owner's/lessee's use and

24  manner of driving, and additional factors, all of which may significantly affect the

25  performance of any vehicle's transmission. Other inherently individualized issues

26  include whether, and if so, to what extent, any putative class vehicle has, or would ever,

27  experience any of the alleged transmission-related issues; what issue, if anything, any

28  given owner may have presented to any dealership under the vehicle's applicable

warranty, when and what occurred in each instance, and whether any applicable warranty was breached under each putative class member's specific circumstances, and also, the myriad differences among the 50 states' laws, including burdens of proof, with respect to the various legal claims asserted, that would render it very difficult to certify a nationwide class in the litigation context.

It is also noteworthy that even the existence of a defect alone does not *ipso facto* lead to legal liability or establish concrete damages under federal or state statutes, *see*, *e.g*., *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 991-92 (N.D. Cal. 2010) (granting defendant's motion for summary judgment and finding alleged ignition-lock defect not a safety risk), *aff'd*, 462 F. App'x 660 (9th Cir. 2011).

While Plaintiffs would vigorously dispute these claims, consumers bringing automotive defect actions are frequently denied class certification due to lack of common proof.[7] Recently, a California district court denied class certification involving a theory based on material omission of a automotive defect. *See Stockinger v. Toyota Motor Sales, U.S.A., Inc.,* 2020 WL 1289549, at *6 (C.D. Cal. Mar. 3, 2020) (finding plaintiffs failed to satisfy the commonality and predominance requirements of Rule 23 in a similar automotive defect action alleging material omissions and breaches of the implied warranty of merchantability). *Stockinger* underscores the heightened litigation risk for Plaintiffs seeking class certification. In contrast, class certification in the settlement context is different because, unlike litigation, the court does not need to be concerned with manageability issues that predominating individual factors might cause. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 556 (en banc).

---

[7] *See*, *e.g*., *Grodzitsky v. Am. Honda Motor Co*., 2014 WL 718431 (C.D. Cal. Feb. 19, 2014) (denying certification due to lack of evidence that common materials were used for all defective "window regulators" in the class); *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 553 (C.D. Cal. 2012) ("There is also no evidence that a single design flaw that is common across all of the drains in question is responsible for the alleged water leak defect…").

This body of recent case law demonstrates that, had the case continued, "plaintiffs [would] face[] a substantial risk of incurring the expense of a trial without any recovery." *In re Toys "R" Us-Del FACTA Litig.*, 295 F.R.D. at 451. Indeed, the risk of continuing litigation, including the risk of new adverse statutory or case law, increased costs, and expiration of a substantial amount of time, weigh heavily in favor of settlement. *Rodriguez*, 563 F.3d at 966. In particular, a class action such as this, involving over 490,068 vehicles, has the strong potential to engulf plaintiffs and attorneys in protracted, resource-draining court battles, the outcome of which is uncertain. *See, e.g., Aarons v. BMW of N. Am. LLC*, 2014 WL 4090564 *11-13 (C.D. Cal. Apr. 29, 2014) (approving a settlement for repairs/reimbursement of transmission defect and observing that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." [citation omitted]).

Aside from certification risk in the litigation context, Plaintiffs could face the termination of their action at summary judgment or at trial. *See In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, *3 (N.D. Cal. Nov. 26, 2007) (recognizing that "inherent risks of proceeding to… trial and appeal also support the settlement"). And if Plaintiffs prevail in some fashion on class certification and/or trial, appeals would be likely and any benefits to which certain Class Members may be entitled could be significantly reduced, delayed or offset by their substantial additional use, mileage and the vehicles' ordinary wear and tear by the time any such recovery might occur.

In light of the substantial risks of continued litigation, including the risk of maintaining class certification, the significant benefits secured for the Class by the proposed Settlement, which directly address the issues in this case, are clearly a fair, reasonable, and adequate compromise of the issues in dispute.

### 5. Equitable Method of Allocating Relief to Class Members

The Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes

appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), Advisory Committee's Notes.

Here, the settlement treats all class members equitably, and indeed, the same within the categories of the Settlement Class Vehicles they own(ed) or lease(d). All current and former owners and lessees of the categories of Settlement Class Vehicles involved are, if they meet the very reasonable Settlement terms, eligible for the same respective substantial benefits under this Settlement which address the alleged issue applicable to their vehicles. This includes addressing the particular issues prospectively, be it by a software update that resolves the issue and/or a by warranty extension covering a potential future repair of the issue, and also, addressing it retrospectively, by a reimbursement if the Class Member previously paid certain out-of-pocket expenses for a covered repair of the issue applicable to their Settlement Class Vehicle. Thus, the settlement treats all Class Members equitably, further supporting its preliminary approval.

Finally, though the class representatives will receive an additional $5,000, the extra payment is in recognition for the service they have performed on behalf of the Settlement Class prior to and during this litigation.

**B.     Conditional Class Certification Is Appropriate for Settlement Purposes**

This Settlement contemplates conditional certification of a Settlement Class consisting of all persons and entities who purchased or leased a Settlement Class Vehicle in the United States of America and Puerto Rico. Excluded from the Settlement Class are: (a) all Judges who have presided over the Action and their spouses; (b) all current employees, officers, directors, agents and representatives of Defendant, and their family members; (c) any affiliate, parent or subsidiary of Defendant and any entity in which Defendant has a controlling interest; (d) anyone acting as a used car dealer; (e) anyone who purchased a Settlement Class Vehicle for the purpose of commercial resale; (f)

anyone who purchased a Settlement Class Vehicle with salvaged title and/or any insurance company who acquired a Settlement Class Vehicle as a result of a total loss; (g) any insurer of a Settlement Class Vehicle; (h) issuers of extended vehicle warranties and service contracts; (i) any Settlement Class Member who, prior to the date of the Settlement Agreement, settled with and released Defendant or any Released Parties from any Released Claims, and (j) any Settlement Class Member who files a timely and proper Request for Exclusion from the Settlement Class. (S.A. § I.T.) The Settlement Class is well-defined, and the exclusions are typical for these cases.

### 1.   The Proposed Class Meets the Requirements of Rule 23

An analysis of the requirements of Rule 23(a) and (b)(3), commonly referred to as numerosity, commonality, typicality, adequacy, predominance, and superiority, shows that certification of this proposed Settlement Class, for purpose of settlement, is appropriate here. *See Amchem Prods., Inc.*, 521 U.S. at  620 ; Manual for Complex Litigation, § 21.632. In this regard, the Court must apply the criteria for class certification "differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc)*.* For example, in deciding whether to certify a litigation class, a district court must be concerned with manageability at trial, where potentially predominating individualized issues could present intractable manageability issues. However, such "manageability is not a concern in certifying a settlement class where, by definition, there will be no trial." *Id.* Thus, the Ninth Circuit en banc court in *Hyundai* recognized that in the settlement class certification context, the element of predominance is "readily met" in cases such as this. *Hyundai*, 926 F.3d at 559.

### 2.   The Proposed Class Is Sufficiently Numerous and Ascertainable

The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, courts will find a class sufficiently numerous if it consists of 40 or more members. *Vasquez v. Coast*

*Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (numerosity is presumed at a level of 40 members). Here, the Settlement Class consists of current and former owners and lessees of 490,068 vehicles, clearly satisfying this requirement:

| Model | Vehicles Sold in the United States |
|-------|-----------------------------------|
| 2019 Volkswagen Jetta Vehicles | 179,766 |
| 2018-2020 Volkswagen Tiguan Vehicles | 310,302 |
| **Total** | **490,068** |

And while there is no threshold "ascertainability" requirement in this Circuit, *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 n.4 (9th Cir. 2017), here the Settlement Class is easily ascertainable through, for example, the vehicle ownership and registration records of each state's department of motor vehicle records, the obtaining of which is part of the Notice Plan discussed *supra*.

### 3. There Are Questions of Law and Fact that Are Common to the Class

The second Rule 23(a) requirement is commonality, which is satisfied "if there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The operative criterion for commonality is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The "commonality requirement has been 'construed permissively,' and its requirements deemed minimal." *Estrella v. Freedom Fin'l Network*, 2010 WL 2231790, at *7 (N.D. Cal. June 2, 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1018-20 (9th Cir. 1998)). A single common question of law or fact satisfies this requirement. *See Wal-Mart Stores, Inc.*, 564 U.S. at 369.

Here, each Class Member purchased a Settlement Class Vehicle equipped with a subject transmission that Plaintiffs claim contained a defect that was not disclosed. VWGoA contends that these transmissions are not defective. The issues in this case, including whether the subject transmissions are defective, as alleged, whether the defect(s) was/were previously known to Defendant, and whether Defendant allegedly breached a duty to disclose, are issues common to the settlement Class and involve

common questions of fact and law. Such issues have been viewed by courts as the overarching common questions that have resulted in class treatment in other automotive defect cases. *See*, *e.g*., *Hanlon*, 150 F.3d at 1020 (allegedly defective rear liftgate latches); *Browne v. American Honda Motor Co., Inc.*,  2010 WL 9499072, at *1 (C.D. Cal. July 29, 2010) (allegedly defective braking system); *Parkinson v. Hyundai Motor Am*., 258 F.R.D. 580, 595-97 (C.D. Cal. 2008) (allegedly defective flywheels); *Chamberlan v. Ford Motor Co*., 223 F.R.D. 524, 526 (N.D. Cal. 2004) (allegedly defective engine intake manifolds); *Daffin v. Ford Motor Co*., 458 F.3d 549, 552 (6th Cir. 2006) (allegedly defective throttle body assembly); *see also*, *Wolin v. Jaguar Land Rover N. Am*., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (holding that whether the LR3's alignment geometry was defective, whether Land Rover was aware of the defect, whether Land Rover concealed the nature of the defect in violations of consumer protection statutes, and whether Land Rover was obligated to pay for or repair the alleged defect pursuant to the express or implied terms of its warranties are all common issues of law or fact that satisfy the commonality requirement).

And, since each Settlement Class Member purchased or leased a Settlement Class Vehicle, the respective alleged damages, if any, would also be subject to common factual and legal questions.

### 4. Plaintiffs' Claims Are Typical of the Proposed Settlement Class

"In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007). Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (citation omitted).

Here, the Class Members' claims arising from the alleged defect(s) are reasonably coextensive with the claims asserted by the named Plaintiffs. (Fourth Amended Complaint ¶¶ 15-48.)  As with the named Plaintiffs' claims, each Class Member's

claims arise from the same alleged course of conduct—Defendant's alleged failure to disclose a known transmissions defect. Plaintiffs' claims are thus typical of the Class, as "they are reasonably coextensive with those of absent class members." Plaintiffs and Class Members would also similarly benefit from the relief provided by the Settlement. Accordingly, typicality is satisfied.

### 5. Plaintiffs and Plaintiffs' Counsel Will Adequately Represent the Interests of the Proposed Settlement Class

Adequacy is satisfied because "the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4); specifically: (a) the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and, (b) Plaintiffs are represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020. Here, Plaintiffs are are adequate class representatives, as they have no conflict of interest with the proposed Class. In fact, Plaintiffs share a common interest in holding VWGoA accountable for selling vehicles with an Alleged Defect that they did not disclose to their customers. Moreover, there is no "'irreparable conflict of interest,' either in the structure of the class or the terms of the settlement." *In re Volkswagen "Clean Diesel Mktg., Sales Pracs., & Prod. Liab. Litig."*, 895 F.3d 597, 608 (9th Cir. 2018). In addition, Plaintiffs are represented by competent counsel well-versed in prosecuting automotive litigation and class actions. (*See, e.g.*, Zohdy Decl. ¶¶ 25-28, Ex. 2; Paul Decl. ¶¶ 4-6.)

### 6. Common Issues Predominate Over Individual Issues

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. The predominance inquiry under Rule 23(b)(3) asks "whether the common, aggregation-enabling issue are more prevalent or more important than the non-common, aggregation-defeating, individual issues." *Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted).

"When one or more of the central issues in the action are common to the class and

can be said to predominate, the action may be proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* And if "just one common question predominates," the action may be considered proper under Rule 23(b)(3), and regardless whether "other important matters [would] have to be tried separately." *See Hyundai*, 926 F.3d at 557.

In the context of a class settlement, the predominance of a common issue or issues is much easier to establish because manageability at trial is no longer of any concern. *Amchem*, *supra*, 521 U.S. at 620. Indeed, the predominance inquiry in the context of a nationwide settlement should be considered under "three guideposts":

> [F]irst, that commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members; second, that variations in state law do not necessarily defeat predominance; and third, that concerns regarding variations in state law largely dissipate when a court is considering the certification of a settlement class.

*Sullivan v. DB Invs. Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (en banc); *see also, Wakefield v. Wells Fargo & Co.*, 2014 WL 7240339, at *4 (N.D. Cal. Dec. 18, 2014) (adopting *Sullivan*'s analysis that state law variations dissipate in a settlement class). Under similar guiding principles, the Ninth Circuit en banc court recently confirmed that predominance is not defeated by certifying a nationwide settlement class alleging state law violations. *See Hyundai*, 926 F.3d at 561-62.

Here, for purposes of settlement, the predominance test is satisfied, as the proposed Settlement makes available the relief for all Class Members based on easily ascertainable criteria, bypassing whatever individual evidentiary and factual issues that could arise in litigation in determining liability or damages. Consequently, common questions predominate over individual issues that might have arisen had this action continued to be litigated.

### 7.    A Class Settlement Is Superior to Other Available Means of Resolution

Similarly, there can be little doubt that resolving all Class Members' claims in this action is superior to a panoply of individual lawsuits by owners/lessees of more than 490,000 vehicles. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. Indeed, the very favorable terms of this Settlement negotiated on behalf of the Class demonstrate the advantages of negotiating a resolution on a class-wide basis.

Moreover, this is a complex automotive case in which the damages sought by each Class Member would be far outweighed by the very significant costs that would be required for him/her/it to prove the existence of a design defect in a vehicle's transmission, a violation of a consumer fraud statute, causation and damages, in a single individual lawsuit. *See Smith v. Cardinal Logistics Mgmt. Corp.*, 2008 WL 4156364, at **32-33 (N.D. Cal. Sep. 5, 2008) (finding that class members had a small interest in personally controlling the litigation even where the average amount of damages were $25,000-$30,000 per year). In addition, the sheer number of separate trials that would otherwise be required also weighs in favor of settlement.

Finally, in the settlement context, there can be no objection that class proceedings would present the sort of intractable management problems that sometimes override the collective benefits of class actions, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

### 8.    The Proposed Notice to the Settlement Class

Before approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where the settlement class is certified under Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including

1    individual notice to all members who can be identified through reasonable effort." Fed.

2    R. Civ. P. 23(c)(2)(B).

3         Here, the Parties agreed to provide individual notice by U.S. mail. (S.A. § IV.B.1)

4    In addition, the Parties have agreed to establish a settlement website, on which will be

5    posted the long-form Class Notice as well as the Claim Form, Settlement Agreement, and

6    important submissions relative to the Settlement approval process; details regarding the

7    lawsuit, the Settlement and its benefits, and the Settlement Class Members' legal rights

8    and options including objecting to or requesting to be excluded from the Settlement and/or

9    not doing anything; instructions on how and when to submit a claim for reimbursement;

10   instructions on how to contact the Settlement Claim Administrator by e-mail, mail, or

11   (toll-free) telephone; important dates pertaining to the Settlement including the deadline to

12   opt-out of or object to the Settlement, the claim submission deadline, and the Fairness

13   Hearing date, place and time; and answers to Frequently Asked Questions (FAQs). (*Id.* at

14   § IV.B.6.)

15        For purposes of identifying Settlement Class Members, the Claim Administrator

16   shall obtain from IHS/Polk, Experian, or a similar source, the names and current or last

17   known addresses of Settlement Class Vehicle owners and lessees that can reasonably be

18   obtained, based upon the VINs of Settlement Class Vehicles to be provided by VWGoA

19   pursuant to the governing Stipulated Protective Order. (*Id.* at § IV.B.2.)

20        Prior to mailing the Class Notice, an address search through the United States

21   Postal Service's National Change of Address database shall be conducted to update the

22   address information for Settlement Class Vehicle owners and lessees. (*Id.* at § IV.B.3.)

23   For each individual Class Notice that is returned as undeliverable, the Claim

24   Administrator shall re-mail all Class Notices where a forwarding address has been

25   provided. (*Id.*) For the remaining undeliverable notice packets where no forwarding

26   address is provided, the Claim Administrator shall perform an advanced address search

27   (e.g., a skip trace) and re-mail any undeliverable notice packets to the extent any new

28   and current addresses are located. (*Id.*)

1    Any Settlement Class Member who wishes to be excluded from the Settlement

2    Class must, by the date specified in the Preliminary Approval Order and recited in the

3    Class Notice—which is to be no later than 30 days after the Notice Date—submit a

4    written request for exclusion ("Request for Exclusion") to the Claim Administrator,

5    Class Counsel, and Defense Counsel at the addresses and in the manner specified in the

6    Class Notice. (*Id.* at § V.B.)

7    Any Settlement Class Member who intends to object to the fairness of this

8    Settlement Agreement or the requested amount of Class Counsel Fees and Expenses

9    and/or Settlement Class representative service award, must, by the date specified in the

10    Preliminary Approval Order and recited in the Class Notice—also no later than 30-days

11    after the Notice Date—file any such objection with the Court in person or via the Court's

12    electronic filing system, or, if not filed with the Court by either method, mail the

13    objection to the Court and to the Claim Administrator, Class Counsel, and Defense

14    Counsel at the addresses specified in the Class Notice. (*Id.* at V.A.) The Class Notice

15    also spells out clearly what information and/or materials are required for a valid and

16    timely objection. *See* Zohdy Decl. Ex. E.

17    Plaintiffs request that the Court approve this Notice Plan as the best practicable

18    under the circumstances. *See, e.g., Rannis v. Recchia*, 380 F. App'x. 646, 650 (9th Cir.

19    2010) (finding mailed notice to be the best notice practicable where reasonable efforts

20    were taken to ascertain class members addresses); *see also Patrick v. Volkswagen Group

21    of America*, 2021 WL 3616105, *5 (C.D. Cal. March 10, 2021). The Class Notice

22    complies with Rule 23(c)(2)(B) in that they "clearly and concisely state in plain, easily

23    understood language" the nature of the action; the class definition; the class claims,

24    issues, or defenses; that the class member may appear through counsel; that the court

25    will exclude from the class any member who requests exclusion; the time and manner

26    for requesting exclusion; and the binding effect of a class judgment on class members.

27    (*See* S.A., Exhs. A-B.) The notice is also consistent with the sample provided by the

28    Federal Judiciary Center.

1        In compliance with the Attorney General notification provision of the Class

2    Action Fairness Act, 28 U.S.C. § 1715, the Claim Administrator shall provide notice of

3    this proposed Settlement to the Attorney General of the United States, and the Attorneys

4    General of each state in which a known Settlement Class Member resides. (*Id.* at §

5    IV.A.)

6    **II.     CONCLUSION**

7        The Parties have negotiated a fair and reasonable settlement. Accordingly, for the

8    forgoing reasons, Plaintiffs move the Court to preliminarily approve the Settlement

9    Agreement.

10

11

12    Dated: November 22, 2021        Respectfully submitted,

13

14                By: /s/ Tarek H. Zohdy

                      Tarek H. Zohdy

15                   Cody R. Padgett

                      Laura E. Goolsby

16                   CAPSTONE LAW APC

17                   Russell D. Paul (pro hac vice)

                      Amey J. Park (pro hac vice)

18                   BERGER MONTAGUE PC

19                   Attorneys for Plaintiffs Dominique Parrish,

                      Ludwig Combrinck and Trine E. Utne

20

21

22

23

24

25

26

27

28