Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Laura E. Goolsby (SBN 321721)
Laura.Goolsby@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Russell D. Paul (pro hac vice)
rpaul@bm.net
Amey J. Park (pro hac vice)
apark@bm.net
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone:    (215) 875-3000
Facsimile:    (215) 875-4604

Attorneys for Plaintiffs Dominique Parrish,
Ludwig Combrinck and Trine E. Utne

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIQUE PARRISH, LUDWIG COMBRINCK, and TRINE E. UTNE individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC. a Delaware limited liability company,<br><br>Defendant. | Case No.: 8:19-cv-01148-DSF-KESx<br><br>Hon. Dale S. Fischer<br><br>**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      February 27, 2023<br>Time:      1:30 p.m.<br>Place:      Courtroom 7D |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that February 27, 2023, at 1:30 p.m., in Courtroom 7D of the above-captioned Court, located at 350 West 1st Street, Los Angeles, California 90012, the Honorable Dale S. Fischer presiding, Plaintiffs Dominique Parrish, Ludwig Combrinck and Trine E. Utne will, and hereby do, move this Court to award attorneys' fees, litigation costs, and service awards. Plaintiffs seek reasonable attorneys' fees and litigation costs in the combined amount of $900,000, and service awards in the amounts of $5,000, each. The requested fees are reasonable under the lodestar method, as they are of product of reasonable hours and reasonable rates enhanced by a multiplier of 1.93. The requested fees are also reasonable as a percentage of the benefits conferred on the Class.

This Motion is based on: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Attorneys' Fees, Costs, and Class Representative Service Awards incorporated herewith; (3) the Declaration of Tarek Zohdy; (4) the Declaration of Russell D. Paul; (5) the [Proposed] Order filed concurrently herewith; (6) the records, pleadings, and papers filed in this action; and (7) on such other documentary and oral evidence or argument as may be presented to the Court at the hearing of this Motion.

Dated: November 29, 2022          Respectfully submitted,

By: /s/ Tarek H. Zohdy
Tarek H. Zohdy
Cody R. Padgett
Laura E. Goolsby
CAPSTONE LAW APC

Russell D. Paul
Amey J. Park
BERGER MONTAGUE PC

Attorneys for Plaintiffs Dominique Parrish,
Ludwig Combrinck and Trine E. Utne

MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................1

II.  FACTS AND PROCEDURE ..............................................................................2

III.  ARGUMENT .....................................................................................................3

    A.  The Parties Have Separately Negotiated Fees That Will Not
        Affect Class Benefits ................................................................................3

    B.  The Fee Request is Reasonable Under the Lodestar Method ...................4

        1.  The Hours Expended Are Reasonable ...........................................5

        2.  The Hourly Rates are Reasonable..................................................9

        3.  Class Counsel's Lodestar Should Be Enhanced by a
            Contingent Risk Multiplier ..........................................................10

    C.  The Expenses Advanced by Class Counsel Should be
        Reimbursed .............................................................................................15

    D.  The Requested Service Awards Are Fair and Reasonable and
        Should Be Approved...............................................................................16

IV.  CONCLUSION ................................................................................................16

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Aarons v. BMW of N. Am. LLC*, 2014 WL 4090564 (C.D. Cal. Apr. 29, 2014)..............14

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997)...............................................................13

*Blum v. Stenson*, 465 U.S. 886 (1984).................................................................................9

*Bravo v. Gale Triangle, Inc.*, No. 16-03347 BRO, 2017 WL 708766 (C.D.
    Cal. Feb. 16, 2017)...........................................................................................................10

*Browne v. Am. Honda Motor Co.*, No. 09-06750 MMM, 2010 WL 9499073
    (C.D. Cal. Oct. 5, 2010) ..................................................................................................15

*Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) ........................9, 14

*Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534 (C.D. Cal. 2012)......................13

*Etter v. Thetford Corporation*, No. 13-00081-JLS, 2017 WL 1433312 (C.D.
    Cal. Apr. 14, 2017) ............................................................................................................9

*Fadhl v. City and County of San Francisco*, 859 F.3d 649 (9th Cir. 1988)......................14

*Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997 (9th Cir. 2002)...............11

*Fox v. Vice*, 131 S. Ct. 2205 (2011) ....................................................................................6

*Grodzitsky v. Am. Honda Motor Co.*, 2014 WL 718431 (C.D. Cal. Feb. 19,
    2014)..................................................................................................................................13

*Hensley v. Eckehart*, 461 U.S. 424 (1983) ..........................................................................4

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ...............3, 5

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) ...........................4, 13

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...................15

*In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201 (N.D. Cal. Nov. 26,
    2007) .................................................................................................................................14

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act
    (FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) ........................................................13

*In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155 (D.
Mass. 2015) .................................................................................................. 14

*In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir.
1994) ............................................................................................................ 11

*Johnson v. General Mills, Inc.*, No. 10-00061-CJC, 2013 U.S. Dist. LEXIS
90338 (C.D. Cal. June 17, 2013) ................................................................. 15

*Kearney v. Hyundai Motor Am.*, No. 09-1298, 2013 U.S. Dist. LEXIS 91636
(C.D. Cal. June 28, 2013) .............................................................................. 9

*Laguna v. Coverall North America,* 753 F.3d 918 (9th Cir. 2014*)* ..................... 3

*MacDonald v. Ford Motor Co.*, No. 13 -02988-JST, 2016 WL 3055643
(May 31, 2016) ............................................................................................. 10

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995) ........ 4

*Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160 (C.D. Cal.
2010) ......................................................................................................... 5, 9

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) .................... 14, 16

*Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980 (N.D. Cal. 2010) ..................... 13

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ......................................... 3

*Steiner v. American Broad. Co.*, 248 Fed. Appx. 780 (9th Cir. 2007) ............. 10

*Stockinger v. Toyota Motor Sales, U.S.A., Inc.,* 2020 WL 1289549 (C.D. Cal.
Mar. 3, 2020) ............................................................................................... 13

*Trs. of the Constr. Indus. and Laborers Health and Welfare Trust v. Redland
Ins. Co.*, 460 F.3d 1253 (9th Cir. 2006) ..................................................... 15

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ..... 10

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ................. 4, 10, 11

*Warner v. Toyota Motor Sales, U.S.A.*, No. 15-02171-FMO (C.D. Cal. May
21, 2017) ...................................................................................................... 14

**STATE CASES**

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) ............................................ 11

*Children's Hospital and Med. Center v. Bonta*, 97 Cal. 4th 740 (2002) ............................ 9

*Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (2004) .................................... 10, 11

*Horsford v. Board of Trustees of California State Univ.*, 132 Cal. App. 4th
   359 (2005) ................................................................................. 6, 11

*In re Consumer Privacy Cases*, 175 Cal. App. 4th 545 (2009) ...................................... 10

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) ..................................................... 5, 11

*Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170 (2007) ......................... 5

*Margolin v. Regional Planning Com.*, 134 Cal. App. 3d 999 (1982) ............................... 9

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) ...................................................... 5, 15

*Serrano v. Unruh*, 32 Cal. 3d 621 (1982) ......................................................... 6

*Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495 (2009) .......................... 10

*Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal. App. 4th 440 (2000) .......................... 6

*Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128 (1998) ......................................... 6


**FEDERAL STATUTES**

15 U.S.C. §§ 2301 *et seq.* (Magnuson-Moss Warranty Act ......................................... 5

Fed. R. Civ. P. 23(h) ............................................................................. 3


**STATE STATUTES**

Cal. Civ. Code §§ 1750 *et seq.* (Cons. Legal Remedies Act (CLRA)) ............................. 4, 5

Cal. Civ. Code §§ 1790-1795.7 (Song-Beverly Consumer Warranty Act) ............................. 5

MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Dominique Parrish, Ludwig Combrinck and Trine E. Utne ("Plaintiffs") brought this class action to secure necessary relief for a nationwide class of current and former U.S. owners and lessees of certain Volkswagen Jetta and Volkswagen Tiguan vehicles with allegedly defective transmissions. Plaintiffs' settlement successfully addresses the alleged transmission issues while also creating a reimbursement program for Class Members to recoup out-of-pocket expenses for qualifying covered repairs.

Plaintiffs and their counsel believe the settlement is fair and reasonable, and provides Class Members similar, if not superior, remedies to what they could otherwise have expected to receive if the case had been successfully tried, but without the delay and risks associated with continued litigation and trial. Class Counsel accordingly move to be compensated for their efforts and achievement on behalf of the class, and for service awards to the named Plaintiffs who prosecuted this action. Plaintiffs seek an award of attorneys' fees and costs in the combined amount of $900,000, and Service Awards of $5,000, each, for their service on behalf of the class.

The fees, costs, and service awards will be paid by Defendant, and not from a common fund. Awarding the requested amounts in attorneys' fees and costs will not affect the benefits for Class Members and will fairly compensate Class Counsel for their work in this case, as confirmed under the prevailing lodestar method for calculating fees. The lodestar is based on reasonable hours multiplied by reasonable rates, enhanced by a multiplier (if necessary). Class Counsel have expended approximately 680 hours prosecuting this case to date—a reasonable number given the complexities of this action and its settlement. Among the many tasks performed, Class Counsel have responded to hundreds of inquiries by Class Members, which includes reviewing Class Members' repair orders and answering questions about the alleged defect and the settlement.

Class Counsel's hourly rates are reasonable and are within the range of rates repeatedly approved by the Central District. A multiplier of 1.93 is appropriate in light of

1  the high contingent risk presented by this case and the outstanding results achieved, as well

2  as to account for the additional hours that Class Counsel expects to put into this case after

3  the Settlement is finally approved.

4        The expenses advanced by Class Counsel are those that would typically be billed to

5  a paying client and should be reimbursed. The requested service awards are similarly

6  reasonable and modest and should be approved.

7  **II.    FACTS AND PROCEDURE**

8        Plaintiff Dominique Parrish, a resident of Irvine, California, is the owner of a 2019

9  Volkswagen Jetta who complained of a rattling noise in the transmission, which he claims

10  was not repaired by a VW dealer. Plaintiff Ludwig Combrinck, a resident of Livermore,

11  California, leased a new 2018 Volkswagen Tiguan and complained of a transmission oil

12  leak, which had to be repaired under warranty, and a "hard" shifting from first to second

13  gear, which he claims was not repaired. Plaintiff Trine Utne, a resident of Salt Lake City,

14  Utah, leased a new 2019 Volkswagen Tiguan and complained of transmission hesitation

15  issues, which she asserts were not repaired.

16        Plaintiffs filed their initial complaint on June 10, 2019, alleging that the

17  transmissions in their vehicles were defective and asserting claims against VWGoA for,

18  *inter alia*, alleged violation of the consumer statutes of their states of residence, including

19  the Consumers Legal Remedies Act (CLRA), Unfair Competition Law (UCL), breach of

20  warranty under the Song-Beverly Warranty Act and the Magnuson-Moss Warranty Act,

21  and unjust enrichment. (Zohdy Decl. ¶¶ 2-3.)

22        Plaintiffs filed a First Amended Class Action Complaint on July 3, 2019. (*Id.* at ¶

23  4.) After several amendments to the Complaint [ECF 18, 35, 43, 72], Motions to Dismiss

24  the amended complaints [ECF 36, 47], and a Decision and Order dated May 7, 2020,

25  granting in part and denying in part Defendant's Motion to Dismiss the Third Amended

26  Complaint [ECF 71], Plaintiffs filed their operative Fourth Amended Class Action

27  Complaint on June 3, 2020 [ECF 72]. (*Id.* at ¶¶ 5-10.) VWGoA filed an Answer to the

28  Fourth Amended Class Action Complaint on June 17, 2020 [ECF 73], disputing the

1  material allegations and claims and asserting numerous substantial defenses to Plaintiffs'
2  allegations and claims.

3       Following the Parties' negotiation and filing of a Joint Rule 26(f) Report [ECF 59]
4  and negotiation of a stipulated protective order, the exchange of discovery and evidence
5  took place. The Parties conferred regularly over the subsequent months, and simultaneous
6  with the discovery and litigation activities, the Parties began negotiating a potential Class
7  Settlement. After exchanges of information and months of vigorous, arm's length
8  settlement negotiations which did not result in agreement on all settlement terms, the
9  Parties participated in a mediation on March 8, 2021, before Bradley A. Winters, Esq., a
10 respected and very experienced neutral class action Mediator with JAMS. (Zohdy Decl. at
11 ¶¶ 11-12.) With Mr. Winters' guidance and efforts, the Parties were eventually able to
12 negotiate a class settlement of this action. (*Id.* at ¶ 13.) The terms of the Settlement are set
13 forth in detail in the Settlement Agreement.

14 **III.    ARGUMENT**

15      **A.    The Parties Have Separately Negotiated Fees That Will Not Affect**
16             **Class Benefits**

17      At the conclusion of a successful class action, the plaintiff may apply to the Court
18 for an award of "reasonable attorneys' fees and non-taxable costs that are authorized by
19 law or the parties' agreement." Fed. R. Civ. P. 23(h). In considering the fee application,
20 courts must ensure that the fees awarded are reasonable. *See In re Bluetooth Headset*
21 *Products Liab. Litig*., 654 F.3d 935, 941 (9th Cir. 2011). In their evaluation, however,
22 district courts must account for the fact that "the parties are compromising to avoid
23 litigation." *Laguna v. Coverall North America*, 753 F.3d 918, 922 (9th Cir. 2014) *vac'd as*
24 *moot*, 2014 U.S. App. LEXIS 21950 (9th Cir. Nov. 20, 2014). Accordingly, "the district
25 court need not inquire into the reasonableness of the fees even at the high end with
26 precisely the same level of scrutiny as when the fee amount is litigated." *Id*. (quoting
27 *Staton v. Boeing Co*., 327 F.3d 938, 966 (9th Cir. 2003)). This standard is consistent with
28 the strong policy discouraging a "second major litigation" arising from a request for

1  attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course,
2  litigants will settle the amount of a fee").

3        Here, the agreed-upon attorneys' fees and costs in the combined amount of
4  $900,000 (*See* Settlement Agreement, VIII(C)(1)) are the product of non-collusive,
5  adversarial negotiations conducted at arm's-length before a distinguished mediator,
6  Bradley A. Winters, Esq., of JAMS. The en banc court in *Hyundai* recently found that
7  separate settlement and fee negotiations provide another indication of non-collusiveness. *In re*
8  *Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 568 (9th Cir. 2019).

9        By agreeing to resolve attorneys' fees amicably, Defendant's counsel averted the
10  possibility that Class Counsel might apply for, and receive, a much larger award, and thus
11  avoided a "second major litigation" on attorneys' fees. *See Hensley v. Eckerhart*, 461 U.S.
12  424, 437 (1983) ("A request for attorney's fees should not result in a second major
13  litigation.").

14        Accordingly, this Court's review of the reasonableness of the fee request should
15  take into consideration the Parties' bargain, including the important fact that the attorneys'
16  fees are discrete from the funds that have been designated as relief for the Class.

17       **B.**    **The Fee Request is Reasonable Under the Lodestar Method**

18        "In diversity actions, federal courts look to state law in determining whether a party
19  has a right to attorneys' fees and how to calculate those fees." *Mangold v. Calif. Public*
20  *Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). The state law governing the
21  underlying claims in a diversity action "also governs the award of fees." *Vizcaino v.*
22  *Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Here, California law governs, as
23  Plaintiffs have sued for relief under, *inter alia*, the Consumer Legal Remedies Act
24  ("CLRA"), and, as successful parties, they are entitled to fees under its one-way fee-
25  shifting provision.[1]

26  
27       [1] Under the mandatory fee-shifting provision of the CLRA, the Court "shall award
   court costs and attorneys' fees to a prevailing plaintiff in a litigation" under that section.
28  Cal. Civ. Code § 1780(e). "[A]n award of attorney fees to 'a prevailing plaintiff' in an

Under California law, the lodestar is the "starting point of every fee award." *Serrano v. Priest*, 20 Cal. 3d 25, 48 n.23 (1977) ("*Serrano III*"). For any fee application subject to a statutory award, courts should "presume that the Legislature intended courts to use the prevailing lodestar adjustment method." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1136 (2001); *accord In re Bluetooth*, 654 F.3d at 941 ("The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes."). This is because the lodestar method most effectively compensates successful counsel for "all the hours reasonably spent." *Ketchum*, 24 Cal.4th at 1133. "Anchoring the analysis to [the lodestar] is the only way of approaching the problem that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts." *Serrano III*, 20 Cal. 3d at 48 n.23.

To determine the lodestar, the Court must first multiply "the number of hours reasonably expended on the litigation … by a reasonable hourly rate." *In re Bluetooth*, 654 F.3d at 941. However, because the base lodestar does not capture the full market value of the services rendered, California policy strongly encourages "a fee-enhancement reflecting the risk that the attorney will not receive payment if the suit does not succeed." *Ketchum*, 24 Cal. 4th at 1138 (citing Posner, Economic Analysis of Law (4th ed. 1992), at 534, 567) (emphasis added).

### 1.    The Hours Expended Are Reasonable

In evaluating the reasonableness of the hours Class Counsel expended, courts must "focus on providing an award of attorneys' fees reasonably designed to fully compensate

---

action brought pursuant to the CLRA is mandatory, even where the litigation is resolved by a pre-trial settlement agreement." *Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170, 178-179 (2007).

There is no dispute that Plaintiffs, having obtained the relief they sought when they filed suit, are the prevailing parties. *See Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160, 1171 (C.D. Cal. 2010) (authorizing fees under CLRA when the plaintiff obtained relief sought by way of a class action settlement). And Defendant recognized Plaintiffs' right to recover fees by entering into the Settlement Agreement under which it would not oppose Plaintiffs' request for attorneys' fees and costs/expenses in an amount not exceeding $900,000. (Settlement Agreement, VIII(C)(1).) Plaintiffs are also entitled to fees under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2) and the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1794(d).

plaintiffs' attorneys for the services provided." *Horsford v. Board of Trustees of California State Univ.*, 132 Cal. App. 4th 359, 395 (2005). Courts do so by looking at "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, [and] litigation tactics…" *Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal. App. 4th 440, 445 (2000). The general principle is that "the attorney who takes [a statutory fee-shifting] case can anticipate receiving full compensation for every hour spent litigating a claim even against the most polemical opponent." *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1175 (1998). However, courts should not be "enmeshed in a meticulous analysis of every detailed facet of the professional representation." *Serrano v. Unruh*, 32 Cal. 3d 621, 642 (1982) ("*Serrano IV*"). Rather, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

Class Counsel have expended approximately 680 hours thus far to prosecute this action and secure benefits for the Class, not counting the hours that will be spent preparing further briefing (e.g., finalizing the motion for final approval and supervising the continued administration of the settlement). Class Counsel have reviewed billing entries describing tasks performed which attorneys entered contemporaneously into Class Counsel's billing program. (*See* Zohdy Decl. ¶ 24, Ex. 1; Paul Decl. ¶ 3.) Following the review of the voluminous records, Class Counsel sorted the entries by task categories, summarizing those tasks for the Court's convenience. (*Id.*)

| ABA No. Code | ABA Code Explanation | Hours | Fees |
|---|---|---|---|
| A105 | Communicate (in firm) | 1.7 | $995.00 |
| A106 | Communicate (with client) | 8.5 | $5,385.00 |
| A107 | Communicate (other outside counsel) | 10.6 | $7,448.50 |
| A108 | Communicate (other external) (including communications with Class Members) | 56.1 | $31,536.00 |
| L110 | Fact Investigation/Development | 50.3 | $35,519.00 |
| L120 | Analysis/Strategy | 50.1 | $34,503.50 |
| L130 | Experts/Consultants | 4.9 | $3,870.00 |
| L160 | Settlement/Non-Binding ADR | 179.6 | $127,334.50 |

| ABA No. Code | ABA Code Explanation | Hours | Fees |
|---|---|---|---|
| L190 | Other Case Assessment, Development and Administration | 27.8 | $13,508.00 |
| L210 | Pleading | 131.3 | $90,349.50 |
| L240 | Dispositive Motions | 72.2 | $48,536.00 |
| L250 | Other Written Motions and Submissions | 56.3 | $36,975.00 |
| L300 | Discovery | 34.4 | $21,542.50 |
| **Total** | | **683.8** | **$457,502.50** |

The hours incurred reflect Class Counsel's efforts in surmounting a number of obstacles, including strong resistance from a well-financed opponent represented by highly experienced and skilled counsel, to secure an excellent settlement for the Class. The following are the most time-intensive categories:

**<u>Discovery and Investigation</u>**. Class Counsel thoroughly investigated and researched the class claims, which allowed Class Counsel to better evaluate both the design and functionality of the subject transmissions and VWGoA's representations. (Zohdy Decl. ¶¶ 14-20.) Among other tasks, Class Counsel fielded numerous inquiries from putative Class Members and investigated many of their reported claims. (*Id.*) Class Counsel also researched publicly available materials as well as consumer complaints and discussions of transmission-related problems in articles and forums online, in addition to various manuals and technical service bulletins ("TSBs") discussing the alleged defect. (*Id.*) Finally, they conducted research into the various causes of actions and other similar automotive actions. (*Id.*)

As to the discovery, in response to Plaintiffs' written discovery efforts, Class Counsel received approximately 1,500 documents consisting of thousands of pages of relevant information, including spreadsheets with thousands of rows of data, owners' manuals, maintenance and warranty manuals, internal VWGoA investigation reports, Technical Service Bulletins, field reports, warranty data, etc. (*Id.*) Informal information was also provided by Defendant to facilitate settlement discussions.

All of this discovery and information was thoroughly and meticulously reviewed and analyzed by Class Counsel (*id.*), enabling them to accurately assess the issues and

potential claims in this matter and the strengths and weaknesses of the Parties' respective positions. (*Id.*) In addition, over the course of litigation, Class Counsel responded to numerous Class Members who contacted us to report issues with their Class Vehicles and seek relief. (*Id.*) Class Counsel also conducted detailed interviews with Class Members regarding their pre-purchase research, their purchasing decisions, and their repair histories, and Class Counsel developed a plan for litigation and settlement based in part on Class Members' reported experiences with their Class Vehicles and with VWGoA dealers. (*Id.*)

By engaging in a thorough investigation and evaluation of Plaintiffs' claims, Class Counsel can opine that this Settlement, for the consideration and on the terms set forth in the Settlement Agreement, is under all of the pertinent considerations, fair, reasonable, and adequate.

**Advising Class Members**. Class Counsel have devoted substantial resources to this case, particularly in response to Class Members seeking a remedy for an alleged defect in their vehicles. Class Counsel responded to hundreds of inquiries from Class Members. During the litigation itself, Class Counsel advised Class Members as to the status of the litigation, reviewed their repair orders, and documented their complaints in a detailed database. Following preliminary approval and the dissemination of the Class Notices, Class Counsel have continued to regularly field calls and emails from Class Members seeking further explanation and advice regarding the Settlement and its terms. During this time—still ongoing as of the date of this filing—multiple attorneys have worked on this case, including responding to Class Members' inquiries.

**Settlement Negotiations and Settlement Motions**. Class Counsel have also spent considerable time to draft the Settlement documents and Settlement motions. This expenditure is reasonable and necessary given the nature of the Settlement negotiations and the Settlement drafting process. Class Counsel also spent many hours preparing the Motion for Preliminary Approval and this Motion.

In addition to the above, Class Counsel will also expend considerable time supervising the administration of the settlement, fielding questions from Class Members

1    about the settlement, and drafting the Motion for Final Approval.

2             **2.**       **The Hourly Rates are Reasonable**

3       Class Counsel's hourly rates, which range from $330 for associates to $1200 for

4 very senior attorneys and partners, are also reasonable. (*See* Zohdy Decl. ¶¶ 24-26; Paul

5 Decl. ¶¶ 3-5.) Counsel are entitled to their requested hourly rates if those rates are within

6 the range of rates charged by and awarded to attorneys of comparable experience,

7 reputation, and ability for similar work, *i.e.*, complex class action litigation. *Children's*

8 *Hospital and Med. Center v. Bonta*, 97 Cal. 4th 740, 783 (2002) (affirming rates that were

9 "within the range of reasonable rates charged by, judicially awarded to, comparable

10 attorneys for comparable work"); *accord Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)

11 (determining reasonable rate by examining the rate "prevailing in the community for

12 similar services by lawyers of reasonably comparable skill, experience, and reputation").

13 Prior judicial orders are probative evidence of market rates. *See Margolin v. Regional*

14 *Planning Com.*, 134 Cal. App. 3d 999, 1005 (1982) (rejecting the defendant's attacks on

15 prior court orders and deeming such orders to be highly probative of rates).

16       Class Counsel's rates are wholly consistent with rates approved by courts in this

17 district for major consumer class actions.[2] *See Chambers v. Whirlpool Corp.*, 214 F. Supp.

18 3d 877, 899 (C.D. Cal. 2016) (approving rates of $485 to $750 for consumer class action

19 attorneys on a contested fee motion); *Etter v. Thetford Corporation*, No. 13-00081-JLS,

20 2017 WL 1433312 (C.D. Cal. Apr. 14, 2017) (approving $275 to $775 for attorneys on a

21 contested fee motion); *Bravo v. Gale Triangle, Inc.*, No. 16-03347 BRO, 2017 WL

22

23       [2] *See also*, *Kearney v. Hyundai Motor Am.*, No. 09-1298, 2013 U.S. Dist. LEXIS
91636 (C.D. Cal. June 28, 2013) (approving hourly rates of $650-$800 for senior attorneys

24 in consumer class action); *Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160,
1172 (C.D. Cal. 2010) (approving hourly rates between $445 and $675); *Richard v.*

25 *Ameri-Force Mgmt. Servs., Inc.* (San Diego Super. Ct., August 27, 2010, No. 37-2008-
00096019) ($695 to $750 an hour for partners; $495 an hour for associates); *Barrera v.*

26 *Gamestop Corp.* (C.D. Cal. Nov. 29, 2010, No. CV 09-1399) ($700 an hour for partners;
$475 an hour for associates); *Anderson v. Nextel Retail Stores, LLC* (C.D. Cal. June 20,

27 2010, No. CV 07-4480) ($655 to $750 an hour for partners; $300 to $515 an hour for
associates).

28

708766, at *17 (C.D. Cal. Feb. 16, 2017) (approving rates between $350 and $700). (*See also* Zohdy Decl. ¶ 26; Paul Decl. ¶ 5.)

Moreover, Class Counsel are both respected and accomplished plaintiffs'-side firms responsible for numerous class action settlements and significant appellate decisions. (*See* Zohdy Decl. ¶¶ 29-32; Ex. 2; Paul Decl. ¶¶ 8-11.)

In short, Class Counsels' hourly rates are within the range of hourly rates charged by comparable attorneys and approved by multiple jurisdictions, including by courts in the Central District of California. The requested rates should be approved.

### 3. Class Counsel's Lodestar Should Be Enhanced by a Contingent Risk Multiplier

Class Counsel are also entitled to the application of a positive multiplier. In determining whether a multiplier should be applied, the Court must consider a number of factors, including: (1) the contingent nature of the fee and the complexity of the case; (2) the results achieved and the awards made in similar cases; and (3) a percentage cross-check. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *accord In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 551 (2009).

While no single factor is determinative of reasonableness, these factors also support Class Counsel's fee request. Indeed, based on the factors below, a multiplier of 2.0 (or higher) for Class Counsel would be justified. *See*, *e.g*., *MacDonald,* 2016 WL 3055643, at *10 (applying a 2.0 multiplier for contingent risk and results achieved to Class Counsel (Capstone Law APC) on a contested catalyst fee motion against Ford).

A multiplier of 2.0 or above is frequently applied. *See Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 298 (N.D. Cal. 1995) (stating the existence of a "3-4 range [of] common" multipliers for sophisticated class actions); *Steiner v. American Broad. Co*., 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming fee award where the lodestar multiplier was 3.65). *See also, Graham*, 34 Cal. 4th at 581 (affirming a 2.25 multiplier for work on the merits); *Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495, 512 (2009) (applying a 2.52 multiplier in an antitrust class action); *Chavez v.*

*Netflix, Inc.*, 162 Cal. App. 4th 43, 60 (2008) (applying a 2.5 multiplier in a consumer class action). The requested multiplier of 1.93 is therefore reasonable and should be approved.[3]

Under California law, a risk multiplier is meant to compensate the contingency attorney for the risk he or she undertakes to enforce important public rights:

> A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.

*Ketchum*, 24 Cal. 4th at 1132-33; *see Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 580 (2014) (explaining California's policy of adjusting the lodestar upward to account for contingent risk). A court abuses its discretion if it fails to apply a risk multiplier where the attorneys undertook the case with the expectation that they would receive a risk enhancement if they prevailed, the case was risky, and the hourly rate does not reflect that risk. *See Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002).

The contingent risk factor is the single most important enhancement factor under California law for actions where statutory fees are available, and it must be considered by the court in fixing fees. *See Horsford*, 132 Cal. App. 4th at 399 (reversing a trial court order for failure to consider contingent risk for statutory fees); *Vizcaino*, 290 F.3d at 1049-1050. This enhancement stems from the "established practice in the private legal market to reward attorneys for taking the risks of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). This risk is particularly acute for contingency fee attorneys because they "must use savings or incur debt to keep their offices afloat and their families fed during the years-long litigation." *Horsford*, 132 Cal. App. 4th at 400. Because attorneys pursuing claims in contingency will sometimes lose

---

[3] The multiplier is the quotient of the requested fee amount of $884,910.04 (i.e., $900,000 in fees and costs combined minus $15,089.96 in litigation costs) and the base lodestar of $457,502.50.

after expending thousands of hours and advancing tens of thousands of dollars in expenses, despite litigating diligently and expertly, an enhancement ensures that the risks do not outstrip thee incentive to pursue claims on behalf of consumers.

While Plaintiffs believe that their case is strong on the merits, VWGoA has raised a number of substantive defenses that present serious risks to Plaintiffs' case. These defenses include, among others, that the subject vehicles' transmissions are not defective under relevant legal standards, that no warranties were breached nor statutes violated, that there was no single universal transmission defect, and that issues that certain Class members may have experienced were rectified through the voluntary issuance of a Service Action or TSBs.

In addition, Defendant maintains that this action is not suited for class certification outside of a settlement because of, *inter alia*, the many predominating individual issues as to liability and damages such as each putative class member's purchase or leasing decision-making; what information, if any, was viewed and/or relied upon by each putative class member prior to purchase or lease, and the inherently individualized issues concerning each putative class member and subject vehicle such as the condition of each putative class vehicle, each owner's/lessee's maintenance of his/her/its vehicle and transmission, each owner's/lessee's use and manner of driving, and additional factors, all of which may significantly affect the performance of any vehicle's transmission. Other inherently individualized issues include whether, and if so, to what extent, any putative class vehicle has, or would ever, experience any of the alleged transmission-related issues; what issue, if anything, any given owner may have presented to any dealership under the vehicle's applicable warranty, when and what occurred in each instance, and whether any applicable warranty was breached under each putative class member's specific circumstances, and also, the myriad differences among the 50 states' laws, including burdens of proof, with respect to the various legal claims asserted, that would render it very difficult to certify a nationwide class in the litigation context.

It is also noteworthy that even the existence of a defect alone does not *ipso facto*

lead to legal liability or establish concrete damages under federal or state statutes, *see*, *e.g.*, *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 991-92 (N.D. Cal. 2010) (granting defendant's motion for summary judgment and finding alleged ignition-lock defect not a safety risk), *aff'd*, 462 F. App'x 660 (9th Cir. 2011).

While Plaintiffs would vigorously dispute these claims, consumers bringing automotive defect actions are frequently denied class certification due to lack of common proof. *See*, *e.g.*, *Grodzitsky v. Am. Honda Motor Co.*, 2014 WL 718431 (C.D. Cal. Feb. 19, 2014) (denying certification due to lack of evidence that common materials were used for all defective "window regulators" in the class); *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 553 (C.D. Cal. 2012) ("There is also no evidence that a single design flaw that is common across all of the drains in question is responsible for the alleged water leak defect…").

Recently, a California district court denied class certification involving a theory based on material omission of a automotive defect. *See Stockinger v. Toyota Motor Sales, U.S.A., Inc.,* 2020 WL 1289549, at *6 (C.D. Cal. Mar. 3, 2020) (finding plaintiffs failed to satisfy the commonality and predominance requirements of Rule 23 in a similar automotive defect action alleging material omissions and breaches of the implied warranty of merchantability). *Stockinger* underscores the heightened litigation risk for Plaintiffs seeking class certification. In contrast, class certification in the settlement context is different because, unlike litigation, the court does not need to be concerned with manageability issues that predominating individual factors might cause. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019).

This body of recent case law demonstrates that, had the case continued, "plaintiffs [would] face[] a substantial risk of incurring the expense of a trial without any recovery." *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 451 (C.D. Cal. 2014). Indeed, the risk of continuing litigation, including the risk of new adverse statutory or case law, increased costs, and expiration of a

substantial amount of time, weigh heavily in favor of settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). In particular, a class action such as this, involving over 490,068 vehicles, has the strong potential to engulf plaintiffs and attorneys in protracted, resource-draining court battles, the outcome of which is uncertain. *See, e.g., Aarons v. BMW of N. Am. LLC*, 2014 WL 4090564 *11-13 (C.D. Cal. Apr. 29, 2014) (approving a settlement for repairs/reimbursement of transmission defect and observing that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." [citation omitted]).

Aside from certification risk in the litigation context, Plaintiffs could face the termination of their action at summary judgment or at trial. *See In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, *3 (N.D. Cal. Nov. 26, 2007) (recognizing that "inherent risks of proceeding to… trial and appeal also support the settlement"). And if Plaintiffs prevail in some fashion on class certification and/or trial, appeals would be likely and any benefits to which certain Class Members may be entitled could be significantly reduced, delayed or offset by their substantial additional use, mileage and the vehicles' ordinary wear and tear by the time any such recovery might occur.

In short, Class Counsel faced the crippling, if not the termination, of their action at every stage in the litigation. For this type of contingent risk, courts have applied a multiplier of 1.5 or more to account for the "return expected by lawyers." *Fadhl v. City and County of San Francisco*, 859 F.3d 649, 650 (9th Cir. 1988) (awarding a 2.0 multiplier); *see also Chambers*, 214 F. Supp. 3d at 904 (applying a 1.68 multiplier on a contested fee motion); *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 170-71 (D. Mass. 2015) (applying a 2.0 multiplier in awarding fees to successful plaintiff's counsel in an action involving defectively-designed engines). Notably, Judge Fernando Olguin of this District approved a fee request based on a 2.9 multiplier in an automotive defect settlement based on contingent risk. *See Warner v. Toyota Motor Sales, U.S.A.*, No. 15-02171-FMO (C.D. Cal. May 21, 2017), Dkt. No. 140, at **22-25. The order in *Warner*, a case with a similar procedural posture to this action but with far fewer

1    Class Members, is instructive.

2          The fees are also reasonable given the "novelty and difficulty of the questions

3    involved, and the skill displayed is presenting them." *Serrano III*, 20 Cal. 3d at 49. (finding

4    that this existence of this factor justifies a multiplier to the lodestar). There is little question

5    that this action presented both novel and difficult questions of law. In investigating and

6    prosecuting this action, Class Counsel was required to understand the advanced

7    technology at issue and structure a sophisticated and unique settlement that addressed a

8    range of harms. Class Counsel's skill, particularly in creating the Settlement and managing

9    the Settlement process, also supports the requested multiplier.

10         Finally, considering the lengthy claims' period and the number of Class Members

11   who have already contacted Class Counsel, Class Counsel expects to expend many hours

12   after final approval (assuming it is granted). The requested multiplier would help

13   compensate Class Counsel for the expected future work aiding class members. *See*

14   *Browne v. Am. Honda Motor Co.*, No. 09-06750 MMM, 2010 WL 9499073, at *11 (C.D.

15   Cal. Oct. 5, 2010) (approving a 1.5 multiplier in part on future "work with class members

16   as they seek reimbursement under the settlement over the coming months").

17         **C.      The Expenses Advanced by Class Counsel Should be Reimbursed**

18         For litigation expenses, the rule is that prevailing parties may recover, as part of

19   statutory attorneys' fees, "litigation expenses…when it is 'the prevailing practice in the

20   given community' for lawyers to bill those costs separate from their hourly rates." *Trs. of*

21   *the Constr. Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co*., 460 F.3d

22   1253, 1258 (9th Cir. 2006) (citation omitted). Attorneys are reimbursed for out-of-pocket

23   expenses "such as '1) meals, hotels, and transportation; 2) photocopies; 3) postage,

24   telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal

25   research; 7) class action notices; 8) experts, consultants, and investigators; and 9)

26   mediation fees.'" *Johnson v. General Mills, Inc*., No. 10-00061-CJC, 2013 U.S. Dist.

27   LEXIS 90338, *20-*21 (C.D. Cal. June 17, 2013) (quoting *In re Immune Response Sec.*

28   *Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (both courts awarding the requested

expenses, including for expert witnesses, mediation, photocopying and computerized research).

Here, Class Counsel have incurred $15,089.96 in costs and expenses that would typically be billed to a paying client. The costs are documented in Counsels' respective declarations. (Zohdy Decl. ¶ 28; Paul Decl. ¶ 7.) The expenses they advanced on behalf of the Class should be reimbursed.

### D.   The Requested Service Awards Are Fair and Reasonable and Should Be Approved

Service awards are routinely awarded as compensation for named plaintiffs' undertaking the risk and expense of litigation to advance the class's interests. *See Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). In light of the valuable benefits conferred to Class Members, the sum of $5,000, each, to Plaintiffs are modest and well within the range of service awards that have been approved in similar cases.

Plaintiffs are entitled to service awards for their time and effort to support a case in which they had a modest personal interest but which provided considerable benefits to Class Members—a commitment undertaken without any guarantee of recompense. Each Plaintiff provided documents to, and consulted with, Counsel about the claims in this case and assisted throughout the course of the litigation. Plaintiffs reviewed the allegations, kept in constant contact with Class Counsel regarding the status of the case, and responded to inquiries regarding Defendant's efforts to remedy the problems Plaintiffs experienced. Plaintiffs have also stayed abreast of Settlement negotiations, reviewed the Settlement terms, and approved the Settlement on behalf of the Class. (Zohdy Decl. ¶ 33.)

### IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion and award fees and costs of $900,000 and service awards of $5,000 for each of the named Plaintiffs.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated: November 29, 2022

Respectfully submitted,

By: /s/ Tarek H. Zohdy

Tarek H. Zohdy
Cody R. Padgett
Laura E. Goolsby
CAPSTONE LAW APC

Russell D. Paul
Amey J. Park
BERGER MONTAGUE PC

Attorneys for Plaintiffs Dominique Parrish,
Ludwig Combrinck and Trine E. Utne

MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS