1  Tarek H. Zohdy (SBN 247775)
   Tarek.Zohdy@capstonelawyers.com
2  Cody R. Padgett (SBN 275553)
   Cody.Padgett@capstonelawyers.com
3  Laura E. Goolsby (SBN 321721)
   Laura.Goolsby@capstonelawyers.com
4  Capstone Law APC
   1875 Century Park East, Suite 1000
5  Los Angeles, California 90067
   Telephone:    (310) 556-4811
6  Facsimile:    (310) 943-0396

7  Russell D. Paul (pro hac vice)
   rpaul@bm.net
8  Amey J. Park (pro hac vice)
   apark@bm.net
9  BERGER MONTAGUE PC
   1818 Market Street, Suite 3600
10 Philadelphia, PA 19103
   Telephone:    (215) 875-3000
11 Facsimile:    (215) 875-4604

12 Attorneys for Plaintiffs Dominique Parrish,
   Ludwig Combrinck and Trine E. Utne

13

14              UNITED STATES DISTRICT COURT

15             CENTRAL DISTRICT OF CALIFORNIA

16

17 | DOMINIQUE PARRISH, LUDWIG | Case No.: 8:19-cv-01148-DSF-KESx
   | COMBRINCK, and TRINE E. UTNE |
18 | individually, and on behalf of a class of | Hon. Dale S. Fischer
   | similarly situated individuals, |
19 | | **PLAINTIFFS' NOTICE OF MOTION**
   | Plaintiffs, | **AND MOTION FOR FINAL**
20 | | **APPROVAL OF CLASS ACTION**
   | v. | **SETTLEMENT; MEMORANDUM OF**
21 | | **POINTS AND AUTHORITIES IN**
   | VOLKSWAGEN GROUP OF | **SUPPORT**
22 | AMERICA, INC. a Delaware limited |
   | liability company, | Date:      February 27, 2023
23 | | Time:      1:30 p.m.
   | Defendant. | Place:     Coutroom 7D
24

25

26

27

28

1    **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2         **PLEASE TAKE NOTICE** that on February 27, 2023, at 1:30 p.m., in Courtroom

3    7D of the above-captioned Court, located at 350 West 1st Street, Los Angeles, California

4    90012, the Honorable Dale S. Fischer presiding, Plaintiffs Dominique Parrish, Ludwig

5    Combrinck and Trine E. Utne will, and hereby do, move this Court to: (1) enter an order

6    finally approving the settlement and all terms and provisions contained in the Settlement

7    Agreement (ECF 78-2), as preliminarily approved by the Court on January 27, 2022 and

8    modified *nunc pro tunc* in its October 17, 2022 Order (ECF 87-2); (2) finally certify the

9    Settlement Class; (3) finally approve and appoint the Settlement Class Representatives,

10   Settlement Class Counsel, and the settlement Claims Administrator, and (4) enter a final

11   approval order and judgment and dismiss this action with prejudice.

12        This Motion is based on: (1) this Notice of Motion and Motion; (2) the

13   Memorandum of Points and Authorities in Support of Motion for Final Approval of Class

14   Action Settlement; (3) the Declaration of Tarek H. Zohdy; (4) the Declaration of Jason

15   Stinehart Regarding Class Notice and Claims Administration; (5) the [Proposed] Order

16   and [Proposed] Judgment filed concurrently herewith; (6) the records, pleadings, and

17   papers filed in this action; and (8) on such other documentary and oral evidence or

18   argument as may be presented to the Court at the hearing of this Motion.

19

20   Dated:  January 20, 2023              Respectfully submitted,

21                                    By: /s/ Tarek H. Zohdy
                                         Tarek H. Zohdy
22                                       Cody R. Padgett
                                         Laura E. Goolsby
23                                       **CAPSTONE LAW APC**

24                                       Russell D. Paul (pro hac vice)
                                         Amey J. Park (pro hac vice)
25                                       **BERGER MONTAGUE PC**

26                                       Attorneys for Plaintiffs Dominique Parrish,
                                         Ludwig Combrinck and Trine E. Utne
27

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.     INTRODUCTION ....................................................................................................1

II.    FACTS AND PROCEDURE ...................................................................................1

       A.    Overview of the Litigation and Settlement Negotiations ..........................2

       B.    This Court Granted Preliminary Approval ...............................................3

III.   MATERIAL TERMS OF THE CLASS SETTLEMENT...................................4

       A.    2019 Volkswagen Jetta Settlement Class Vehicles
             Settlement Benefits for Alleged Transmission Rattling
             Noise ........................................................................................................5

             1.    All Current Owners and Lessees – Free TCM Software
                   Update and Installation of Damper Weight .....................................5

             2.    All Current and Former Owners and Lessees –
                   Reimbursement .................................................................................5

       B.    2019 Volkswagen Jetta Settlement Class Vehicles Settlement
             Benefits for Alleged Transmission Oil Leak...........................................6

             1.    Warranty Extension for Current Owners and Lessees...................6

             2.    All Current and Former Owners and Lessees –
                   Reimbursement .................................................................................7

       C.    2018, 2019 and 2020 Volkswagen Tiguan Settlement Class
             Vehicles ...................................................................................................8

             1.    Warranty Extension for Current Owners and Lessees...................8

             2.    All Current and Former Owners and Lessees –
                   Reimbursement .................................................................................9

       D.    Release of Liability .................................................................................10

       E.    Claim Submission ...................................................................................11

       F.    Notice to The Settlement Class Was Timely and Properly

1      Disseminated..................................................................................12

2   G.  Proposed Class Counsel Fees, Litigation Expenses, And Class

3      Representative Service Award....................................................13

4 IV. ARGUMENT....................................................................................13

5   A.  Class Certification Requirements Are Met..................................13

6   B.  The Court Should Grant Final Approval of the Class Settlement..........14

7     1.  Class Representatives and Plaintiffs' Counsel Have

8       Adequately Represented the Class and the Settlement

9       Was Negotiated at Arms'-Length...................................15

10     2.  The Settlement Provides Valuable Relief to the Class ................16

11     3.  The Settlement Treats Class Members Equitably ........................21

12     4.  The Extent of Discovery Completed Supports Final

13       Approval...........................................................................21

14     5.  The Views of Experienced Counsel Should Be

15       Accorded Substantial Weight..........................................23

16     6.  The Reaction of Class Members to the Proposed

17       Settlement........................................................................23

18   C.  The Settlement Satisfies the *Bluetooth* Factors .........................................24

19 V. CONCLUSION ..........................................................................................25

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Aarons v. BMW of N. Am. LLC*, No. 11-7667, 2014 U.S. Dist. LEXIS 118442

    (C.D. Cal. Apr. 29, 2014).................................................................19

*Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964 (E.D. Cal. 2012).......................16

*Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015).................................................15

*Boyd v. Bank of Am. Corp.*, No. 13-cv-0561-DOC, 2014 WL 6473804 (C.D.

    Cal. Nov. 18, 2014).................................................................21

*Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) ..................... 13, 17

*Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534 (C.D. Cal. 2012) ..................18

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ......................................14

*Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) ...............................19

*Coba v. Ford Motor Co.*, No. 12-1622-KM, 2017 WL 3332264 (D.N.J. Aug.

    4, 2017) .................................................................19

*Corson v. Toyota Motor Sales U.S.A.*, No. 12-8499-JGB, 2016 WL 1375838

    (C.D. Cal. Apr. 4, 2016).................................................................17

*Eisen v. Porsche Cars North American, Inc.*, No. 11-09405-CAS, 2014 WL

    439006 (C.D. Cal. Jan. 30, 2014)................................................. 21, 23

*Grodzitsky v. Am. Honda Motor Co.*, 2014 U.S. Dist. LEXIS 24599 (C.D.

    Cal. Feb. 19, 2014).................................................................18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ......................................... 14, 15

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ......................................................... 20, 25

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .............*passim*

*In re Extreme Networks, Inc. Sec. Litig.*, No. 15-04883, 2019 WL 3290770

    (N.D. Cal. July 22, 2019) .................................................................15

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) ................................14

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ........................12

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ................................................21

*In re Portal Software, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 88886 (N.D. Cal. Nov. 26, 2007)..................................................................................17

*In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) ..............16

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597 (9th Cir. 2018) ......................................................22

*Keegan v. Am. Honda Motor Co.*, No. 10-09508-MMM, 2014 WL 12551213 (C.D. Cal. Jan. 21, 2014)...........................................................17

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) ......................................13

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998) ............................19

*Milligan v. Toyota Motor Sales, U.S.A.*, No. 09-05418-RS, 2012 U.S. Dist. LEXIS 189782 (N.D. Cal. Jan. 6, 2012) ............................................22

*In Re MyFord Touch Consumer Litigation*, 2019 WL 1411510 (N.D. Cal. March 28, 2019).............................................................23

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982) ...................13

*Robbins v. Hyundai Motor America, Inc.*, 2015 WL 304142 (C.D. Cal. Jan. 14, 2015)..................................................................17

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009) ..................................... 13, 16

*Sadowska v. Volkswagen Group of America*, No. 11-00665-BRO, 2013 WL 9500948 (C.D. Cal. Sep. 25, 2013)......................................................14

*Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673 (N.D. Cal. 2016)...............23

*Smith v. Am. Greetings Corp.*, No. 14-cv-02577, 2016 WL 362395 (N.D. Cal. Jan. 29, 2016) .............................................................19

*Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980 (N.D. Cal. 2010).....................................15

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................19

*Stockinger v. Toyota Motor Sales, U.S.A., Inc.*, 2020 WL 1289549 (C.D. Cal. Mar. 3, 2020).................................................................15

*Warner v. Toyota Motor Sales U.S.A.*, No. 15-02171-FMO (C.D. Cal. May

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

21, 2017) ................................................................................................ 14

*Zakskorn v. Am. Honda Motor Co.*, No. 11-02610-KJM, 2015 WL 3622990

   (E.D. Cal. June 9, 2015) ...................................................................... 14

**FEDERAL STATUTES**

Fed. R. Civ. P. 23 ........................................................................... *passim*

**STATE STATUTES**

Cal. Civ. Code § 1793.2(d)(2)(C) ........................................................ 19

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs submit this memorandum in support of their Motion for Final Approval of the Class Action Settlement,[1] for final certification of the Settlement Class, and for final approval and appointment of the Settlement Class representatives, settlement Class Counsel and the settlement Claims Administrator. The proposed Settlement—to which no Class Member has objected, and which contains excellent benefits—resolves allegations that certain vehicles distributed by Defendant Volkswagen Group of America, Inc. ("VWGoA") were sold with a transmission defect that could result in a rattling noise, a jerking/hesitation, and/or an oil leak.

The Court has previously found that the Settlement satisfies all of the criteria for preliminary settlement approval because immediate, valuable benefits based on the Settlement Class Vehicle year and model. (ECF 81; *see also* ECF 87-2.) The time to object to or opt-out of the Settlement has expired, and no class members has objected to the Settlement. In addition, only a minuscule number of Class Members (60 out of 650,992, or 0.009%) have filed timely requests for exclusion. As detailed below, Plaintiffs now request that the Court finally approve the Settlement Agreement, as the terms are fair and reasonable, providing substantial benefits to Settlement Class Members, and because the proposed Settlement Class satisfies the requirements of Rule 23.

## II.   FACTS AND PROCEDURE

This nationwide class action involves claims of an alleged defect in model year 2019 VW Jetta vehicles identified in the VIN list attached as Exhibit A to the Settlement Agreement (ECF 78-2, Ex. A), and model year 2018-2020 VW Tiguan vehicles, that were imported and distributed by VWGoA for sale or lease in the United States or Puerto Rico. Plaintiffs allege that the subject vehicles contain a transmission defect that may cause , *inter alia*, problems in shifting, hesitation, jerking, and/or grinding/rattling noises. Defendant

---

[1] Unless indicated otherwise, all capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

VWGoA denies that the vehicles' transmissions were defective and maintains that they were propely designed, manufactured, marketed, distributed and sold, and function properly. VWGoA further maintains that no express or implied warranties were breached, and no consumer statutes or common law statutes were violated.

### A. Overview of the Litigation and Settlement Negotiations

Plaintiffs filed their initial complaint on June 10, 2019, asserting claims against VWGoA arising from transmission defects for, *inter alia*, alleged violation of the consumer statutes of their states of residence, including the Consumers Legal Remedies Act (CLRA), Unfair Competition Law (UCL), breach of warranty under the Song-Beverly Warranty Act and the Magnuson-Moss Warranty Act, and unjust enrichment. (Declaration of Tarek H. Zohdy ["Zohdy Decl."] ¶ 2.) Plaintiff Dominique Parrish, a resident of Irvine, California, is the owner of a 2019 Volkswagen Jetta who alleged a transmission rattling which was not repaired by a VW dealer. Plaintiff Ludwig Combrinck, a resident of Livermore, California, leased a new 2018 Volkswagen Tiguan and alleged a transmission oil leak which had to be repaired under warranty, and a "hard" shifting from first to second gear, which he claims was not repaired. Plaintiff Trine Utne, a resident of Salt Lake City, Utah, leased a new 2019 Volkswagen Tiguan and alleged transmission hesitation issues, which she asserts were not repaired.

Plaintiffs filed a First Amended Class Action Complaint on July 3, 2019. (*Id.* at ¶ 3.) After several amendments to the Complaint (ECF 18, 35, 43, 72), Motions to Dismiss the Amended Complaints (ECF 36, 47), and a Decision and Order dated May 7, 2020 granting in part and denying in part Defendant's Motion to Dismiss the Third Amended Complaint (ECF 71), Plaintiffs filed their operative Fourth Amended Class Action Complaint on June 3, 2020 (ECF 72). (*Id.* at ¶¶4.) VWGoA filed its Answer on June 17, 2020 (ECF 73), disputing the material allegations and asserting numerous defenses to Plaintiffs' allegations and claims.

Following the Parties' negotiation and filing of a Joint Rule 26(f) Report (ECF 59) and stipulated protective order, substantial discovery began. The Parties conferred

1   regularly over the subsequent months, and simultaneous with their discovery and litigation

2   activities, the Parties began negotiating a potential Class Settlement. After exchanges of

3   information, and months of vigorous, arm's length settlement negotiations which did not

4   yet result in agreement, the Parties participated in a mediation on March 8, 2021 before

5   Bradley A. Winters, Esq., a highly respected and experienced class action Mediator with

6   JAMS. (Zohdy Decl. at ¶ 5.) With Mr. Winters' guidance and efforts at mediation, the

7   Parties were eventually able to negotiate the class Settlement herein. (*Id.* at ¶ 6; *see*

8   *generally* Declaration of Bradley A. Winters ["Winters Decl."], ECF 78-6.) The Settlement

9   terms are set forth in detail in the Settlement Agreement ("S.A."). (*Id.* at ¶ 7, ECF 78-2.)

10          **B.    This Court Granted Preliminary Approval**

11          On January 27, 2022, after carefully reviewing and considering Plaintiffs'

12  Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF 78), and

13  holding a hearing, this Court granted preliminary approval of the Settlement. (ECF 78 &

14  81.) In its Order Granting Preliminary Approval, this Court determined that the Settlement

15  Class, as defined, satisfies the requirements of Federal Rules of Civil Procedure 23(a) and

16  23(b)(3) for preliminafry approval. (ECF 81 at 1-3.) The Court provisionsally designated

17  Plaintiffs as Representatives of the Settlement Class, and Capstone Law APC and Berger

18  Montague PC as Settlement Class Counsel. (*Id.* at 3.)

19          Further, this Court found that "the Settlement Agreement is fair, reasonable, and

20  adequate," and that "[t]he proceedings that occurred before the Parties reached a resolution

21  of this matter gave counsel the opportunity to adequately assess this case's strengths,

22  weaknesses, and the risks to each Party." (*Id.* at 1.) The Court further concluded the

23  settlement "was entered into by experienced counsel and after arm's length negotiations

24  that included the participation of an experienced and neutral third-party mediator." (*Id.*)

25  Additionally, the Court approved the parties' Class Notice Plan and notice form to be

26  disseminated to Class Members and uploaded to the Settlement website. *Id.* at 4-5.

27          On October 14, 2022, the Court issued an Order Granting Stipulation to Modify and

28  Amend Settlement, Class Notice and Associated Timetable *Nunc Pro Tunc* Concerning

This Preliminarily Approved Class Action Settlement. (ECF 87-2.) This Order modified the definition of Settlement Class Vehicle in the Settlement Agreement to accurately reflect that only those 2019 VW Jetta vehicles identified by VIN in Exhibit A to the Settlement Agreement are encompassed in the Settlement, and amended the timetable accordingly. (*Id.*)

## III.    MATERIAL TERMS OF THE CLASS SETTLEMENT

Plaintiffs' Counsel negotiated a Settlement with several tiers of benefits to provide substantial benefits to Settlement Class Members. The Settlement Class consists of all persons and entities who purchased or leased a model year 2019 VW Jetta vehicle identified by VIN in Exhibit A to the Settlement Agreement (ECF 78-2, Ex. A), and model year 2018-2020 VW Tiguan vehicles, imported and distributed by VWGoA for sale or lease in the United States or Puerto Rico.

Through detailed investigation, analysis, and information exchanged in this action, Class Counsel determined that three alleged separate and distinct transmission issues exist, each relative to a certain segment of the Settlement Class Vehicles: (1) certain model year 2019 VW Jetta Settlement Class Vehicles may experience a transmission rattling noise, (2) certain model year 2019 VW Jetta Settlement Class Vehicles may exhibit a transmission oil leak from the cooler seal rings (S.A., ¶ I.G., I.H.), and (3) model year 2018, 2019, and 2020 VW Tiguan Settlement Class Vehicles may experience transmission hesitation or jerking. (S.A., ¶ I.I.). Having narrowed the issues, the Parties were able to negotiate and fashion an appropriate Class Settlement that directly addresses these discrete transmission issues and provides Settlement Class Members with substantial benefits in the respective Settlement Class Vehicle categories. As detailed below, the Settlement provides multiple benefits, which are broken down by the Settlement Class applicable to each category. The settlement benefits remain are fair, reasonable, and adequate and also take into account and complement certain prior actions that were taken by VWGoA to address these distinct potential issues:

A. **2019 Volkswagen Jetta Settlement Class Vehicles Settlement Benefits for Alleged Transmission Rattling Noise**

1. **All Current Owners and Lessees – Free TCM Software Update and Installation of Damper Weight**

Effective on the Notice Date, VWGoA issued a Technical Service Bulletin to its authorized dealers providing that each Class Member who currently owns or leases a 2019 VW Jetta Settlement Class Vehicle identified by VIN in Exhibit A to the Settlement Agreement, and presents the vehicle to an authorized VW dealer with a diagnosed and confirmed transmission rattling noise, may obtain an update of the vehicle's transmission control module software and installation of a damper weight on the drive shaft, free of charge. (*See* S.A., II.A.1.a.) This will be made available up to one year after the Notice Date (*id.*) and will address the transmission rattling noise issue that is one subject of this case.

2. **All Current and Former Owners and Lessees - Reimbursement**

All Settlement Class Members who are current or former owners or lessees of a 2019 VW Jetta Settlement Class Vehicle identified by VIN in Exhibit A to the Settlement Agreement may submit a claim for reimbursement of past out-of-pocket expenses that were incurred and paid prior to the Notice Date and within 72,000-miles from the vehicle's In-Service Date (the mileage limitation of the vehicle's original New Vehicle Limited Warranty), for a Past Covered Transmission Rattling Noise Repair (a repair to address a diagnosed transmission rattling noise in said 2019 VW Jetta Settlement Class Vehicle). (*See* S.A., II.A.1.b.)  Reimbursement may be provided of the full amount of the paid invoice amount (parts and labor) for the Past Covered Transmission Rattling Noise Repair, subject to certain proof and other requirements set forth in the Claim Form, and limitations discussed in Section III of the Class Notice. (*Id.*)  The settlement website contains a VIN Lookup Portal which enables Settlement Class Members to verify, by their vehicle's VIN, whether their vehicle was equipped with the applicable transmission and is covered by this reimbursement program.

If the past repair was performed by a service center or facility that is not an

authorized Volkswagen dealer, the Settlement Class Member must also submit documentation (such as a written estimate or invoice), or if documents are not available after a good-faith effort to obtain them, provide a declaration[2] signed under penalty of perjury, demonstrating that prior to that repair, they first attempted to have the repair performed by an authorized VW dealer under the warranty, but the dealer either declined or was unable to perform the repair free of charge. (*Id.*) The Parties believe that is fair and reasonable, since the vehicle at that time would have still been covered under its original express warranty, and therefore the Settlement Class Member would have been entitled to a free repair. In addition, reimbursement for a Past Covered Transmission Rattling Noise Repair performed by a service entity or facility that is not an authorized VW dealer shall not exceed a maximum reimbursement amount of $3,500. (*Id.*)

**B.      2019 Volkswagen Jetta Settlement Class Vehicles Settlement Benefits for Alleged Transmission Oil Leak**

**1.      Warranty Extension for Current Owners and Lessees**

Effective on the Notice Date, VWGoA extended its New Vehicle Limited Warranties applicable to certain specified 2019 VW Jetta Settlement Class Vehicles whose VINs are listed in Exhibit A to the S.A., to cover repairs by an authorized Volkswagen dealer to address a diagnosed and confirmed oil leak caused by the transmission oil cooler seal rings (or "O-rings") on the transmission oil cooler of the Settlement Class Vehicle performed during a period of 12-months or 12,000-miles (whichever occurs first) from the date that the Settlement Class Vehicle's original New Vehicle Limited Warranty period applicable to the transmission expires. The Warranty Extension is conditioned upon either (i) Service Action 38C5 (entitled "Transmission Oil Cooler Seals", issued by VWGoA on March 25, 2020) having been performed on the vehicle prior to said repair, or (ii) the Settlement Class Member providing a declaration (that VWGoA's records do not otherwise contradict), attesting that he/she/it was not previously notified of the availability

---

[2] The pre-printed declaration forms are clear and straightforward and are available on the settlement website.

1  of Service Action 38C5, and that he/she/it had the Service Action performed on that vehicle

2  within thirty (30) days after the Notice Date. (*See* S.A., II.A.2.a.)[3]

3          The settlement website contains a VIN Lookup Portal which enables Settlement

4  Class Members to verify, by their vehicle's VIN, whether their vehicle was equipped with

5  the applicable O-rings and is covered by this warranty extension and the reimbursement

6  program described in the next section 2 below. (*Id.*) The warranty extension is subject to

7  the terms and conditions of the Settlement Class Vehicle's original New Vehicle Limited

8  Warranty and the limitations set forth in Section III of the Class Notice. (*Id.*) Further, the

9  warranty extension is transferable to subsequent owners. (*Id.*)

10         **2.     All Current and Former Owners and Lessees - Reimbursement**

11         Any current or past owner/lessee of the same specified 2019 Vw Jetta Settlement

12  Class Vehicles (identified by VIN in Exhibit A to the S.A.) may submit a claim for

13  reimbursement of past out-of-pocket expenses incurred and paid prior to the Notice Date,

14  and during a period of 12-months or 12,000-miles (whichever occurred first) from the date

15  that the Settlement Class Vehicle's original New Vehicle Limited Warranty period

16  applicable to the transmission expired, for a Past Covered Transmission Oil Leak Repair

17  (a repair to address a diagnosed transmission oil leak which involved replacement of the

18  O-rings on the transmission oil cooler). (*See* S.A., II.A.2.b.) Reimbursement may be

19  provided of the full amount of the paid invoice (parts and labor) for the Past Covered

20  Transmission Oil Leak Repair, subject to certain requirements set forth in the Claim Form,

21  and limitations discussed in Section III of the Class Notice.

22         This reimbursement program properly takes into account that, as explained above,

23  Service Action 38C5 was issued by VWGoA on March 25, 2020, and directed

24  owners/lessees of these Settlement Class Vehicles to have the O-rings replaced by an

25

26  _____
    [3] This condition is fair and reasonable because, on March 25, 2020, VWGoA
27  voluntarily issued a Service Action (38C5), applicable to these Settlement Class Members,
    which directed the same Settlement Class Members to have the transmission's O-rings (the
28  source of the potential oil leak) to be replaced with newly designed O-rings by an
    authorized Vw dealer free of charge. *See* S.A., Exhibit C.

authorized VWGoA dealer free of charge. *See* S.A., Exhibit C. Thus, for any Past Covered Transmission Oil Leak Repair that was performed prior to July 1, 2020—approximately three months after Service Action 38C5 was issued—the Settlement Class Member shall be entitled to receive reimbursement of the full amount of the paid invoice cost of the Past Covered Transmission Oil Leak Repair (parts and labor).

If, however, the Past Covered Transmission Oil Leak Repair was performed on or after July 1, 2020, then in order to qualify for reimbursement, the Settlement Class Member must also submit either (a) proof that Service Action 38C5 was performed on the vehicle prior to that repair, or (b) if Service Action 38C5 was not performed on the vehicle, a declaration attesting, under penalty of perjury, that he/she/it was not notified of that Service Action prior to the repair and VWGoA's records do not show otherwise. (*Id.*)

If the Past Covered Transmission Oil Leak Repair was performed by a service entity or facility that is not an authorized VW dealer, then the Settlement Class Member must also submit documentation (such as a written estimate or invoice), or if documents are not available after a good-faith effort to obtain them, a declaration signed under penalty of perjury confirming that prior to the repair the Settlement Class Member first attempted to have it performed by an authorized VW dealer, but the dealer declined or was unable to perform the repair free of charge. (*Id.*) In addition, reimbursement for a Past Covered Transmission Oil Leak Repair performed by a service entity or facility that is not an authorized VW dealer shall not exceed a maximum reimbursement amount (parts and labor) of $500. (*Id.*)

**C.    2018, 2019 and 2020 Volkswagen Tiguan Settlement Class Vehicles**

**1.    Warranty Extension for Current Owners and Lessees**

Effective on the Notice Date, VWGoA extended its New Vehicle Limited Warranties applicable to 2018-2020 VW Tiguan Settlement Class Vehicles to cover repairs, by an authorized VW dealer, to address a diagnosed condition of transmission hesitation or jerking performed during a period of 12-months or 12,000-miles (whichever occurs first) from the date that said Settlement Class Vehicle's original New Vehicle

Limited Warranty period applicable to the transmission expires, provided that Recall 24GB (entitled "Engine and Transmission Control Module (ECM/TCM" issued by VWGoA on September 16, 2020) was previously performed on the applicable vehicle prior to the extended warranty repair.[4] (*See* S.A., II.B.1.)

This warranty extension is subject to the terms and conditions of the vehicle's original New Vehicle Limited Warranty and the limitations set forth in Section III of the Class Notice. (*Id.*) This extended warranty shall be transferable to subsequent owners to the extent it has not expired. (*Id.*)

### 2.    All Current and Former Owners and Lessees - Reimbursement

In addition, Settlement Class Members may be entitled to submit a claim for reimbursement of certain past out-of-pocket expenses that were incurred and paid, prior to the Notice Date and during a period of 12-months or 12,000 miles (whichever occurred first) from the date that the settlement Class Vehicle's original New Vehicle Limited Warranty period applicable to the transmission expired, for a Past Covered Transmission Hesitation/Jerking Repair (a repair to address a diagnosed condition of transmission hesitation or transmission jerking in 2018-2020 VW Tiguan Settlement Class Vehicles).

If the Past Covered Transmission Hesitation/Jerking Repair was performed prior to December 1, 2020 (2-1/2 months after the aforementioned Recall 24GB [which addressed this issue] was instituted), then reimbursement may be provided of the full amount (100%) of the paid invoice amount (parts and labor) for the Past Covered Transmission Hesitation/Jerking Repair, subject to certain proof and other requirements set forth in the Claim Form, and limitations discussed in Section III of the Class Notice. If said repair was

---

[4] The Parties believe that this is fair and reasonable because, on September 16, 2020, VWGoA had voluntarily issued a Recall (24GB entitled "Engine and Transmission Control Module (ECM/TCM)" applicable to the 2018-2020 VW Tiguan Settlement Class Vehicles which, among other things, provided for owners and lessees of these vehicles to have a free software update performed on the TCM, by an authorized Vw dealer, to improve driveability. *See* S.A., Exhibit D. Performance of that Recall would have addressed the alleged potential transmission hesitation/jerking issue regarding those vehicles, so the same goes for the reimbursement for past repair remedy, discussed *infra.*

performed on or after December 1, 2020, then the Settlement Class Member may still be entitled to said 100% reimbursement if either: (i) Recall 24GB was, in fact, performed on the Settlement Class Vehicle prior to the repair, or (ii) the Settlement Class Member submits a declaration (not otherwise contradicted by VWGoA's records) showing that he/she/it was not notified of that Recall prior to said repair (*See* S.A., II.B.2).

If the Past Covered Transmission Hesitation/Jerking Repair was performed by a service entity or facility that is not an authorized VW dealer, then the Settlement Class Member must also submit documentation (such as a written estimate or invoice), or if documents are not available after a good-faith effort to obtain them, a declaration signed under penalty of perjury, confirming that prior to the repair, he/she/it first attempted to have the repair performed by an authorized VW dealer, but the dealer declined or was unable to perform the repair free of charge under the existing warranty. (*Id.*)

In addition, reimbursement for a Past Covered Transmission Hesitation/Jerking Repair performed by a service entity or facility that is not an authorized VW dealer shall not exceed a maximum reimbursement amount (parts and labor) of $3,000. (*Id.*)

The Settlement provides a reasonable period of 75 days after the Notice Date for Class Members to submit claims for reimbursement to the Claim Administrator. S.A. ¶ II.D(1), and Ex. A thereto (Claim Form). As discussed *infra*, the Class Notice contains robust information about the case, the proposed Settlement, the Class Members' rights and options, deadlines, how to call or email the Claim Administrator with any questions about the Settlement or requests for assistance, and when and how to submit a reimbursement claim and the information and documentation needed to do so. In addition, the Claim Form, which accompaned the mailing of the Class Notice, sets forth in detail exactly what information and documentation is needed for a valid claim for reimbursement.

### D.    Release of Liability

In consideration of the Settlement benefits, VWGoA and its related entities and affiliates (the "Released Parties," as defined in the S.A., ¶ I.R.) will receive a release of claims and potential claims related to the transmissions in the Settlement Class Vehicles

1    that are the subject of this litigation and Settlement (the "Released Claims," as defined in

2    S.A. ¶ I.Q.). Claims which were or could have been asserted in the litigation are likewise

3    released. (*Id.*) The release excludes personal injury and claims for property damage (other

4    than damage to the Settlement Class Vehicle related to their transmissions). (*Id.*) Therefore,

5    the scope of the release properly reflects the issues in this case and the proposed Settlement.

6            **E.    Claim Submission**

7            The Parties agreed to retain Rust Consulting, Inc. as the Settlement Claim

8    Administrator. (S.A. ¶ I.B.) The Claim Administrator has timely and properly

9    implemented the notice plan, disseminated the CAFA notice, distributed the Class Notice,

10   administered any requests for exclusion and objections (there were no objections), and is

11   continuing to administer the claim process including the review and determination of

12   reimbursement claims, and distribution of payments to eligible Claimants whose claims

13   are complete and have been approved under the Settlement terms. (*Id.* at ¶ III.A., III.B.,

14   IV; *see* Declaration of Jason Stinehart ["Stinehart Decl."]). Pursuant to the Settlement,

15   VWGoA will pay all class notice and claim administrative costs, (S.A. ¶ III.A.), separate

16   and apart from any benefits to which the Settlement Class Members may be entitled. Thus,

17   no Settlement Administration costs will be borne by the Class Members in any way.

18           As we informed the Court on preliminary approval, the Settlement provides for a

19   fair, equitable and straightforward claims process for Settlement Class Members. For each

20   complete claim that is approved, the Claim Administrator will mail a reimbursement check

21   to the Settlement Class Member within the later of 100 days after submission of the

22   completed Claim, or 100 days after the Effective Date of the Settlement. (S.A. ¶ III.B.)

23   Significantly, the Settlement provides that if a claim and/or its supporting documentation is

24   incomplete or deficient, the Claim Administrator will mail the Settlement Class Member a

25   letter or notice outlining the deficiencies and affording a 30-day period to cure them. (*Id.*)

26   In addition, any Settlement Class Member that disagrees with the ultimate denial of

27   his/her/its/their reimbursement claim, in whole or in part, may request an "attorney review"

28   of that decision within 14 days of such denial. (*Id.*, ¶ II.C.(5).) If an attorney review is

1  requested, Class Counsel and Defense Counsel will confer and make a good faith effort to

2  resolve the disputed denial. (*Id.*)

3        Finally, as discussed above, the Class Notice, its accompanying Claim Form, and the

4  settlement website all provide the necessary details, including how and by when a

5  reimbursement claim must be submitted, the information and documentary proof needed

6  for a valid claim, and how to contact the Claim Administrator or Class Counsel with any

7  questions or requests for assistance with respect to a claim. Indeed, the Class Notice and

8  settlement website provide the mailing and email address, and a toll-free telephone

9  number, for Class Members to contact the Claim Administrator. The content of the Class

10  Notice was approved by this Court subject to several modifications that were made.

11        **F.**    **Notice to the Settlement Class was Timely and Properly Disseminated**

12        Before approving a class settlement, "[t]he court must direct notice in a reasonable

13  manner to all class members who would be bound by the proposal." Fed. R. Civ. P.

14  23(e)(1). Where the settlement class is certified under Rule 23(b)(3), the notice must also

15  be the "best notice that is practicable under the circumstances, including individual notice

16  to all members who can be identified through reasonable effort." Fed. R. Civ. P.

17  23(c)(2)(B).

18        Pursuant to the Settlement Agreement, the Order Granting Preliminary Approval,

19  and the Order Granting Stipulation to Modify and Amend Settlement, the Claims

20  Administrator successfully implemented the Class Notice Plan. On November 29, 2022,

21  the Claims Administrator mailed the Class Notice, which was approved by the Court, to

22  650,992 potential Class Members identified based on the Settlement Class Vehicles' VIN

23  numbers and use of the services of Polk/IHS Markit. (Stinehart Decl. ¶¶ 3-5.) These

24  established services obtain vehicle ownership histories through state title and registration

25  records, thereby identifying the names and addresses of record of the Settlement Class

26  Members. (*Id.*) On November 29, 2022, the Claims Administrator also made available an

27  interactive, case-specific Settlement Website, www.transmissionclasssettlement.com,

28  which contains substantial information including instructions on how and by when to

submit a claim for reimbursement, answers to FAQs, instructions on how to contact the Claims Administrator and Class Counsel for assistance, applicable dates and deadlines including for objecting, opting-out and submitting a claim and date, time and location of the Final Fairness Hearing, and links to important case documents, including but not limited to the Claim Form, the Class Notice, the Settlement Agreement, the Preliminary Approval Order and other related filings. (Stinehart Decl. at ¶ 6.) The approved Class Notice also provided, *inter alia*, the Settlement website address, the telephone number and e-mail address of the Claim Administrator, the name and address of Class Counsel, and the deadlines, procedures and requirements for objecting, opting-out, and submitting a claim for reimbursement under the Settlement. (*Id.* at ¶¶ 6-8.)

The deadline for opting-out of or objecting to the Settlement expired on December 29, 2022. **There are no objections to the Settlement, and only 60 timely Requests for Exclusion (representing only 0.009% of the Class)**. (Stinehart Decl. at ¶¶10-11.) The deadline to submit claims for reimbursement is February 23, 2023.

### G. Proposed Class Counsel Fees, Litigation Expenses, And Class Representative Service Award

Subject to the Court's approval, and only after having reached agreement on the material terms of the class Settlement, the Parties separately negotiated, at arm's length, maximum amounts for reasonable Class Counsel fees and expenses, and class representative service awards, up to which VWGoA will not object. These are the subject of a separate fee motion that was filed on November 29, 2022, pursuant to the schedule set forth in the Order Granting Stipulation to Modify and Amend Settlement ( ECF 87-2.)

## IV. ARGUMENT

### A. Class Certification Requirements Are Met

The Court certified the Class for settlement purposes upon Preliminary Approval, finding that the Rule 23(a) and Rule 23(b)(3) requirements are satisfied. (*See* ECF 81, at 1-3.) Nothing has changed that would affect the Court's ruling on class certification. *See Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) (reconfirming the

certification set forth in the preliminary approval order "[b]ecause the circumstances have
not changed" since that order); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556
(9th Cir. 2019) (en banc) (courts must apply the criteria for class certification "differently in
litigation classes and settlement classes"). Therefore, the Court should grant final
certification of the settlement class.

### B.    The Court Should Grant Final Approval of the Class Settlement

Final approval should be granted when, as here, the proposed Settlement is
"fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,
1026 (9th Cir. 1998). In evaluating the Settlement, the Court is guided by several important
policies. First, federal courts favor settlements, particularly in class actions, where the costs,
delays and risks of continued litigation might otherwise overwhelm any potential benefit
the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276
(9th Cir. 1992) (noting the "strong policy that favors settlements, particularly where
complex class action litigation is concerned"). Second, for settlements reached through
arms'-length negotiations, courts are to give:

> [P]roper deference to the private consensual decision of the parties.
> . . . [T]he court's intrusion upon what is otherwise a private consensual
> agreement negotiated between the parties to a lawsuit must be limited to
> the extent necessary to reach a reasoned judgment that the agreement is
> not the product of fraud or overreaching by, or collusion between, the
> negotiating parties, and that the settlement, taken as a whole, is fair,
> reasonable and adequate to all concerned.

*Hanlon*, 150 F.3d at 1027.

Guided by these policies, the court then may consider some or all of the following
factors in evaluating settlement reasonableness: (1) the strength of the plaintiff's case and
the risk, expense, complexity, and likely duration of further litigation; (2) the risk of
maintaining class action status throughout trial; (3) the amount offered in settlement; (4)
the extent of discovery completed and the stage of proceedings; (5) the participation of a
governmental participant; (6) the experience and views of counsel; and (7) the reaction of
class members. *See Hanlon*, 150 F.3d at 1026 ("*Hanlon* factors").

Rule 23 directs the Court to consider a similar list of factors, including whether: (A) Class Representatives and Class Counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including payment timing; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. FED. R. CIV. P. 23(e)(2). The Advisory Committee's notes clarify such factors do not "displace" the *Hanlon* factors, "but instead aim to focus the court and attorneys on 'the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-04883, 2019 WL 3290770, at *6 (N.D. Cal. July 22, 2019) (quoting FED. R. CIV. P. 23(e)(2) advisory committee's note to 2018 amendment).

Additionally, for class action settlements prior to contested certification, the Ninth Circuit further requires that the Court scrutinize the settlement applying the so-called *Bluetooth* factors.[5] *See Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015). As shown below, all of the applicable criteria for final approval are met here.

### 3. Class Representatives and Plaintiffs' Counsel Have Adequately Represented the Class and the Settlement Was Negotiated at Arms'-Length

Under Rule 23(e)(2)(A)-(B), the Court considers whether Plaintiffs and Plaintiffs' Counsel adequately represented the class and whether the proposed settlement was negotiated at arm's length. Both factors are satisfied here. There is no conflict between the Class Representatives and Plaintiffs' Counsel on the one hand, and Class Members on the other. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (conflict cannot be "speculative" or "trivial" but must go to "the heart of the litigation"). Plaintiffs

---

[5] *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 938 (9th Cir. 2011).

and Plaintiffs' Counsel have vigorously and diligently pursued the claims on behalf of the Class, adducing important facts regarding the claims, and negotiated a very valuable Settlement which is fair, reasonable and adequate, and provides immediate and substantial benefits to the Class. (Zohdy Decl. ¶ 8.)  This is further shown by the fact that no Class Member has objected to the settlement.

Rule 23(e)(2)(B) is also satisfied, as the Settlement is the product of vigorous arm's length negotiations with the assistance of Bradley A. Winters, Esq., a highly respected and experienced class action Mediator with JAMS. (Zohdy Decl. ¶ 9; *see generally* Winters Decl., ECF 78-6.)

### 4.   The Settlement Provides Valuable Benefits to the Class

Under Rule 23(e)(2)(C), the Court must examine the relief to the Class in light of the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, including the method of processing claims, the terms of any proposed award of attorney's fees, including timing of payment; and any agreement required to be identified. This overlaps with first three *Hanlon* factors. In evaluating these considerations, a court assesses "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]." *Adoma v. Univ. of Phoenix, Inc.,* 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012). However, there is "no single formula" to be applied. *Rodriguez v. West Pub. Corp.*, 463 F.3d 948, 965 (9th Cir. 2009).

In assessing the Settlement, courts are instructed to take into account that "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted). And the Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive negotiated resolution, and ha[s] **never prescribed a particular formula** by which that outcome must be tested." *Rodriguez*, 563 F.3d at 965 (internal citations omitted; emphasis added). The Court "need not include a specific finding of fact as to the potential recovery for each of the plaintiffs' causes of action." *Lane v.*

1  *Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012). Indeed, *Lane* expressly rejected any

2  requirement that district courts calculate the value of the claims—explaining that "not only

3  would such a requirement be onerous, it would often be impossible [since] the amount of

4  damages of a given plaintiff (or class of plaintiffs) has suffered in a question of fact that

5  must be proved at trial." *Id.* [6]

6            **(a)    The Settlement Benefit Provided for the Class Is Fair, Adequate,
         and Reasonable, Especially Considering the Costs, Risks, and**
7                   **Delay of Trial and Appeal if this Matter is Litigated to Conclusion**

8          As discussed above, the Settlement offers substantial benefits to Class Members

9  based on the categories of the Settlement Class Vehicles they own(ed) or lease(d) to

10  address the alleged issues applicable to their vehicles. The Settlement is eminently fair,

11  adequate, and reasonable, and is especially so when weighed against the substantial risks

12  of further litigation. While Plaintiffs believe in the merits of their claims, VWGoA has

13  raised substantive defenses that present serious risks to Plaintiffs' case. These defenses

14  include, among others, that no transmission defect exists, or that, even if an issue were

15  found, Plaintiffs would not be able to show that it will manifest or constitute a safety

16  concern., or that it would lead to legal liability under federal or state statutes. *See*, *e.g*.,

17  *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 991-92 (N.D. Cal. 2010) (granting

18  defendant's motion for summary judgment and finding no safety risk), *aff'd*, 462 F. App'x

19  660 (9th Cir. 2011). Plaintiffs would have to establish violations of individual state and

20  federal consumer protection and warranty statutes.

21          Moreover, there are multiple other defenses under applicable state laws, such as

22

23          ————————————

[6] Accordingly, in evaluating automotive class settlements, courts do not require

24  plaintiff to present speculative measures of the maximum value of the action upon a

successful trial. *See*, *e.g*., *Warner v. Toyota Motor Sales U.S.A.*, No. 15-02171-FMO (C.D.

25  Cal. May 21, 2017), ECF 140, at *13; *Corson v. Toyota Motor Sales U.S.A.*, No. 12-8499-

JGB, 2016 WL 1375838, *7 (C.D. Cal. Apr. 4, 2016); *Chambers*, 214 F. Supp. 3d at 888-

26  89); *Zakskorn v. Am. Honda Motor Co*., No. 11-02610-KJM, 2015 WL 3622990, at *8

(E.D. Cal. June 9, 2015) ); *Sadowska v. Volkswagen Group of America*, No. 11-00665-

27  BRO, 2013 WL 9500948, *4 (C.D. Cal. Sep. 25, 2013). And this is especially true when,

as discussed *infra*, the case involves disputed claims and substantial risks of non-

28  certification, non-recovery or substantially reduced and delayed recovery.

privity, manifestation, lack of a duty to disclose, and the like, that could prevent or substantially reduce a putative class member's recovery, if any, if this matter were to be litigated. There is also risk that if the litigation proceeds, class certification may not be granted or maintained through trial and appeal. VWGoA would have raised a number of defenses to class certification, including many predominating individual issues such as each putative class member's purchase or leasing decision-making; what information, if any, was viewed and/or relied upon prior to purchase/lease; and the inherently individualized issues concerning each putative class member and subject vehicle such as each owner's vehicle and transmission maintenance, each owner's use and manner of driving, and additional factors, all of which may significantly affect the performance of any vehicle's transmission. Other inherently individualized issues include whether, and if so, to what extent, any putative class vehicle has, or would ever, experience any of the alleged transmission-related issues; what issue, if anything, any given owner may have presented to any dealership under the vehicle's warranty; whether any applicable warranty was breached under each putative class member's specific circumstances; and also, the myriad differences among state laws, including burdens of proof, with respect to the various legal claims asserted, that would preclude certification of a nationwide class in the litigation context. *See Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012).

While Plaintiffs would vigorously dispute these issues, consumers bringing automotive defect actions are frequently denied class certification due to lack of common proof.[7] *See, e.g., Stockinger v. Toyota Motor Sales, U.S.A., Inc.,* 2020 WL 1289549, at *6 (C.D. Cal. Mar. 3, 2020) (finding plaintiffs failed to satisfy Rule 23's commonality and predominance requirements in a similar automotive defect action alleging material omissions and breaches of the implied warranty of merchantability).

Recent case law demonstrates that, had the case continued, "plaintiffs [would] face[]

---

[7] *See, e.g., Grodzitsky v. Am. Honda Motor Co.,* 2014 U.S. Dist. LEXIS 24599 (C.D. Cal. Feb. 19, 2014);*Cholakyan v. Mercedes-Benz USA, LLC,* 281 F.R.D. 534, 553 (C.D. Cal. 2012).

a substantial risk of incurring the expense of a trial without any recovery." *In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 451 (C.D. Cal. 2014). Indeed, the risks, delays and expense of continuing litigation here weigh heavily in favor of settlement. *Rodriguez*, 463 F.3d at 966. An automotive class action such as this, where Plaintiffs allege that hundreds of thousands of vehicles suffer from a transmission defect, has the strong potential to engulf plaintiffs and attorneys in protracted court battles, including a "battle of competing experts" on issues of defect, liability, damages, and class certification, where the outcome is uncertain. *See, e.g., Coba v. Ford Motor Co.*, No. 12-1622-KM, 2017 WL 3332264 (D.N.J. Aug. 4, 2017) (granting summary judgment to defendant after protracted litigation); *Aarons v. BMW of N. Am. LLC*, No. 11-7667, 2014 U.S. Dist. LEXIS 118442, at *29-31 (C.D. Cal. Apr. 29, 2014) (approving a settlement for repairs/reimbursement of transmission defect and observing that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." [citation omitted]). This proposed Settlement resolves such uncertainties in favor of Class Members, who will be eligible for prompt and very substantial relief.

Finally, even if this matter were successfully litigated through class certification, dispositive motions, trial and appeal,[8] potential recovery would be further dimished by off-sets due to use, wear and tear, and depreciation of their vehicles during that time. *See, e.g., t*he CA Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1793.2(d)(2)(C), and the Magnuson-Moss Warranty Act. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008).

Given the substantial risks of continued litigation, including maintaining class certification through the litigation, trial and appeal, non-recovery and/or substantially reduced or delayed recovery, and the significant benefits that this Settlement secured for

---

[8] The inherent risks of proceeding to trial weigh in favor of settlement. *See In re Portal Software, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 88886, *7-8 (N.D. Cal. Nov. 26, 2007) "inherent risks of proceeding to… trial and appeal also support the settlement").

1   the Class, we respectfully submit that the Settlement is clearly a fair, reasonable, and

2   adequate compromise that satisfies rule 23 in all respects.

3                **(b) The Method of Distribution, Attorneys' Fees, and Other Agreements**

4           Under Rule 23(e)(2)(C)(ii)-(iv), the Court is to review the method of distribution,

5   attorneys' fees, and the existence of other agreements. As set forth above, claims for

6   reimbursement for repairs are submitted using the Settlement's user-friendly claim forms

7   which were mailed with the Class Notice, and the easy documentary proof requirements

8   such as repair records and payment receipts, are standard and routinely approved by Courts

9   in automotive class settlements such as this. *See, e.g., Keegan, v. Am. Honda Motor Co.*,

10  No. 10-09508-MMM, 2014 WL 12551213, *15 (C.D. Cal. Jan. 21, 2014) ("Courts

11  frequently approve settlements that require class members to submit receipts or other

12  documentation."). Indeed, there are no objections to any aspect of this settlement including

13  the basic and very reasonable proof requirements for a valid reimbursement claim.

14          For the reasons discussed in greater detail in Plaintiffs' separately filed Motion for

15  Attorneys' Fees, Costs, and a Class Representative Service Awards (ECF 89), Plaintiffs

16  seek reasonable attorneys' fees and costs in the amount of $900,000, and Service Awards

17  of $5,000 each. Neither the Parties' "clear sailing" agreement regarding reasonable

18  attorneys' fees/expenses, nor anything else, raises any concerns under *Bluetooth*. The issue

19  of fees and expenses was not even discussed, let alone agreed, until after the Parties had

20  reached agreement on the material terms of the Settlement. Moreover, Plaintiffs' Counsel

21  do not seek a disproportionate share of fees and there is no "reverter" of unclaimed funds

22  to VWGoA, as the Settlement here does not provide for a common fund. Rather, the

23  Settlement was negotiated vigorously and at arm's-length after mediation before a highly

24  respected and experienced neutral, and the "clear sailing" fee/expense agreement,

25  negotiated thereafter, avoids a potential "second major litigation" on attorneys' fees and its

26  attendant burdens upon the parties and Court. *See Hensley v. Eckerhart*, 461 U.S. 424, 437

27  (1983) ("A request for attorney's fees should not result in a second major litigation.").

28  Finally, as discussed *supra*, reasonable Class Counsel fees and expenses will not reduce,

1    or in any way affect, the benefits available to the Settlement Class.

2    **5.    The Settlement Treats Class Members Equitably**

3    The Rule 23(e)(2) factor turns on whether the proposed settlement "treats class

4    members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern

5    could include whether the apportionment of relief among class members takes appropriate

6    account of differences among their claims, and whether the scope of the release may affect

7    class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P.

8    23(e)(2)(D), Advisory Committee's Notes.

9    Here, the Settlement treats all Class Members equitably and, indeed, the same as to

10    eligibility for the prospective and retrospective benefits applicable to the aforesaid

11    categories of Settlement Class Vehicles. The same is true for the class release, which does

12    not vary by class member or subset of the class. As a result, the Settlement treats all class

13    members equitably. And finally, the $5,000 service award for the Plaintiffs-Class

14    Representatives is in recognition for their service performed on behalf of the Class, and the

15    Ninth Circuit has approved such awards.[9]

16    **6.    The Extent of Discovery Completed Supports Final Approval**

17    Courts may also consider the extent of discovery and the current stage of the

18    litigation to evaluate whether parties have sufficient information to make an informed

19    decision to settle the action. *See Linney v. Cellular Alaska Partnership*, 151 F.3d 1234,

20    1239 (9th Cir. 1998). A settlement negotiated at an earlier stage in the litigation will not be

21    denied so long as sufficient investigation has been conducted. *Eisen v. Porsche Cars N.*

22    *Am.*, No. 11-09405-CAS, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) (finding that counsel

23    had "ample information and opportunity to assess the strengths and weaknesses of their

24    claims" despite "discovery [being] limited because the parties decided to pursue settlement

25

26    _____

    [9] *Boyd v. Bank of Am. Corp.*, No. 13-cv-0561-DOC, 2014 WL 6473804, at *7 (C.D.

27    Cal. Nov. 18, 2014) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 976-77 (9th Cir. 2003)).
    The awards here are comparable to the "typical incentive awards in the Ninth Circuit,

28    where $5,000 is presumptively reasonable." *Smith v. Am. Greetings Corp.*, No. 14-cv-
    02577, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016).

1   discussions early on.").

2          Both before and after the action was filed, Plaintiffs' Counsel thoroughly
3   investigated and researched these claims to better evaluate both the design and
4   functionality of the subject transmissions as well as evaluate VWGoA's representations
5   and omissions concerning the alleged transmission defect in the case. (Zohdy Decl. ¶ 10.)
6   Among other tasks, Plaintiffs' Counsel fielded numerous inquiries from putative class
7   members and investigated many of their reported claims. (*Id.* ¶ 11.) Plaintiffs also
8   researched publicly available materials as well as consumer complaints and discussions of
9   transmission-related problems in articles and forums online, in addition to various manuals
10  and technical service bulletins ("TSBs") discussing the alleged defect. (*Id.* ¶ 12.)  Finally,
11  they conducted research into the various causes of actions and other similar automotive
12  actions. (*Id.* ¶ 13.)

13         As to discovery, in response to Plaintiffs' written discovery efforts, Plaintiffs
14  received approximately 1,500 documents consisting of thousands of pages of relevant
15  information, including spreadsheets with thousands of rows of data, owners' manuals,
16  maintenance and warranty manuals, internal VWGoA investigation reports, Technical
17  Service Bulletins, field reports, warranty data, etc. (*Id.* ¶ 14.)  Informal information was
18  also provided by Defendant. All of this discovery and information was thoroughly and
19  meticulously reviewed and analyzed by Class Counsel, enabling accurate assessment of
20  the issues and potential claims and the strengths and weaknesses of the Parties' respective
21  positions. (*Id.* ¶ 15).

22         In addition, over the course of litigation, Plaintiffs responded to numerous Class
23  Members who contacted Class Counsel to report issues with their Class Vehicles and seek
24  relief. (*Id.* ¶ 16.) Class Counsel also conducted detailed interviews with Class Members
25  regarding their pre-purchase research, their purchasing decisions, and their repair histories,
26  and Class Counsel developed a plan for litigation and settlement based in part on Class
27  Members' reported experiences with their Class Vehicles and with VWGoA dealers. (*Id.*
28  ¶ 17.)

**7.    The Views of Experienced Counsel Should Be Accorded Substantial Weight**

The fact that sophisticated parties with experienced counsel have agreed to settle their dispute should be given considerable weight by courts, since "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, the Parties achieved a settlement after thorough review of relevant documents and testimony, as well as rigorous analysis of the Parties' claims and defenses. The expectations of all Parties are embodied by the Settlement, which, as set forth above, is non-collusive, being the product of vigorous arms'-length negotiations of highly disputed claims that were finalized with the assistance of an experienced mediator. The Parties were represented by experienced class action counsel possessing significant experience in automotive defect and class action matters. (*See* ECF 89-1; ECF 89-4). Likewise, VWGoA's counsel, Herzfeld & Rubin, P.C., is a renowned defense firm with significant experience in automotive class action litigation. The Parties' recommendation to approve this Settlement should therefore "be given great weight." *Eisen v. Porsche*, 2014 WL 439006, at *5 (crediting the experience and views of counsel in approving a settlement resolving automotive defect allegations).

**8.    The Reaction of Class Members to the Proposed Settlement[10]**

As discussed above, out of 650,992 Settlement Class Members, ***no objections have been lodged***, which is remarkable in a settlement of this size, and the Claims Administrator has received only 61 requests for Exclusion, of which 60 are timely (only 0.009% of the Settlement Class). (Zohdy Decl. ¶ 18.) The complete lack of objections and minuscule percentage of exclusion requests demonstrate resoundingly that Class Members have reacted favorably to the Settlement, supporting final approval. *See, e.g., Eisen,* 2014 WL 439006, at *5 ("Although 235,152 class notices were sent, 243 class members have asked to be excluded …."); *Milligan v. Toyota Motor Sales, U.S.A.*, No. 09-05418-RS, 2012 U.S.

---

[10] There is no governmental participant in this case, and so this factor is neutral.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    Dist. LEXIS 189782, at *25 (N.D. Cal. Jan. 6, 2012) (finding favorable reaction where

2    0.06% of noticed class members opted out); *Browne*, 2010 U.S. Dist. LEXIS 14575, at *49

3    (finding favorable reaction where 0.65% of noticed class members opted out).

4    **C.    The Settlement Satisfies the *Bluetooth* Factors**

5    Finally, pre-certification settlements require further inquiry as to whether "more

6    subtle signs" of potential collusion exists between Class Counsel and defendant. *In re*

7    *Bluetooth*, 654 F.3d at 946-47. There was no collusion here, subtle or otherwise (ECF 81,

8    ¶ 10). As discussed, this settlement does not bear the hallmarks of collusion, such as when

9    class counsel "receive a disproportionate distribution of the settlement" or when the "class

10   receives no monetary distribution but class counsel are amply rewarded." *Bluetooth*, 654

11   F.3d at 947. Plaintiff's Counsel do not seek a disproportionate share of fees and there is no

12   "reverter" of unclaimed funds to VWGoA as the Settlement does not provide for a common

13   fund. Rather, the settlement was negotiated vigorously, at arm's-length and after mediation

14   before a highly respected and experienced neutral. The Settlement is not collusive under the

15   first *Bluetooth* factor.

16   The *Hyundai Fuel Economy* case is instructive. In *Hyundai*, the settlement delivered

17   roughly $100 million in benefits (much of which is also attributable to a voluntary program

18   created by automakers in response to an EPA investigation), had a clear sailing provision

19   for several but not all of the firms serving as class counsel, and no reverter. On those facts,

20   the Ninth Circuit en banc panel found that it bore "none of the typical signs of collusion."

21   *Hyundai*, 926 F.3d at 569. The en banc panel distinguished its facts from *Bluetooth*, in

22   which "the settlement paid the class zero dollars," a clear-sailing provision where

23   defendants agreed not to contest "an award of attorneys' fees totaling eight times the *cy*

24   *pres* award," and a kicker clause on fees. *Id.*

25   Even though the Parties agreed to settle Plaintiffs' claims for attorneys' fees and

26   litigation costs, the en banc court in *Hyundai* held that such a "clear sailing provision" was

27   not problematic, since "[t]he settling parties agreed on the amount of class compensation"

28   well before negotiating, "'over multiple mediation sessions with a respected and

experienced mediator,' the 'reasonable attorney's fees provided in the settlement agreement.'" *Hyundai*, 926 F.3d at 569-70. The en banc panel emphasized that the Ninth Circuit had "previously approved such an approach," as it "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Id*. (citation omitted). That fees were separately awarded under the lodestar method, with a multiplier, also supports a finding that the settlement was not collusive. *Id*. at 571-72.

Under *Hyundai*, therefore, a "clear-sailing" provision is not inherently problematic, so long as the fees do not dwarf the class benefits and the fees were negotiated separately, with the assistance of an experienced mediator. This is in accord with pre-*Hyundai* cases. *See, e.g In Re MyFord Touch Consumer Litigation*, 2019 WL 1411510, *7 (N.D. Cal. March 28, 2019) (approving settlement with a "clear-sailing provision" partly because agreement reached under the auspices of an experienced mediator); *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016) (clear-sailing provision does not signal collusion when the agreed-upon fees are reasonable and the class relief is favorable). Indeed, the U.S. Supreme Court had instructed parties to "settle the amount of a fee" to avoid uncertainty, risk, and the potential of a resource-draining "second major litigation" on fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Thus, nothing regarding the Settlement, including the clear-sailing provision, is, or could even remotely be, deemed collusive under the second *Bluetooth* factor. Finally, the third *Bluetooth* factor is also absent, as there is no reversion to VWGoA. Quite simply, no badges of collusion exist. As such, this Court should find that the Settlement is not the product of collusion and is fair, reasonable and adequate, meriting final approval.

## V.    CONCLUSION

Based on the foregoing, Plaintiffs move the Court to enter the Final Order and Judgment granting final approval of the Settlement Agreement and grant such other and additional relief as the Court may deem appropriate.

1    Dated:  January 20, 2023                Respectfully submitted,

2

3                                    By: /s Tarek H. Zohdy
                                         Tarek H. Zohdy
4                                        Cody R. Padgett
                                         Laura E. Goolsby
5                                        **CAPSTONE LAW APC**

6                                        Russell D. Paul (pro hac vice)
                                         Amey J. Park (pro hac vice)
7                                        **BERGER MONTAGUE PC**

8                                        Attorneys for Plaintiffs Dominique Parrish,
9                                        Ludwig Combrinck and Trine E. Utne

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28